## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

FINANCIAL FEDERAL CREDIT INC. §
§
§
VS. § C.A. No. _____
§
ROBERT C. JEFFRIES and §
DEBRA L. JEFFRIES §

## PLAINTIFF'S ORIGINAL COMPLAINT

**COMES NOW** FINANCIAL FEDERAL CREDIT INC., a Texas corporation, hereinafter called Plaintiff, complaining of **ROBERT C. JEFFRIES,** an individual residing in the State of Illinois, and **DEBRA L. JEFFRIES,** an individual residing in the State of Illinois, and in support thereof would respectfully show the Court as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction under 28 U.S.C. 1332(a)(2) in that this is a civil action between citizens or subjects of different states and the matter in controversy exceeds seventy-five thousand dollars, exclusive of costs and interest.

2.      Venue is proper in the United States District Court for the Southern District of Texas under 28 U.S.C. 1391 (a) and (c) in that it is founded upon written contracts expressly providing for venue in, and performable in, this District.

## PARTIES

3.      Plaintiff is a corporation organized and existing under the laws of the State of Texas with its principal place of business in the State of Texas.

4.      Defendant **ROBERT C. JEFFRIES** is an individual residing in the State of Illinois, and may be served with process in this case at his last known address of 208 Larigo Lane, Cambridge, IL 61238.

5.      Defendant **DEBRA L. JEFFRIES** is an individual residing in the State of Illinois, and may be served with process in this case at his last known address of 208 Larigo Lane, Cambridge, IL 61238.

## BACKGROUND

6.      Plaintiff provided financing to CHARLES JEFFRIES & SON TRUCKING, INC. ("TRUCKING") for the acquisition and/or purchase of equipment and/or working capital. ROBERT C. JEFFRIES and DEBRA L. JEFFRIES guaranteed payment and performance of all of the obligations of TRUCKING to Plaintiff.   TRUCKING, ROBERT C. JEFFRIES, and DEBRA L. JEFFRIES have defaulted on their obligations to Plaintiff by failing to make monthly installments when due.

7.      TRUCKING filed a petition under Chapter 11 of the U.S. Bankruptcy Code on January 29, 2010, under Case No. 10-80257 in the United States Bankruptcy Court for the Central District of Illinois, Peoria Division, and, therefore, TRUCKING has not been included as a party to this case.

## OBLIGATIONS

8.      On or about January 8, 2007, TRUCKING executed and delivered to Plaintiff a Promissory Note in the original amount of $146,850.00 ("Note No. 1").  Note No. 1 was to be paid in monthly installments, as more fully set forth in Note No. 1, commencing on February 20, 2007, and continuing on the same day of each month

thereafter until paid in full. Note No. 1 was secured by a Security Agreement ("Security Agreement No. 1") executed simultaneously therewith wherein TRUCKING granted Plaintiff a security interest in all that certain equipment more particularly described on Schedule "A" to the Security Agreement ("Equipment No. 1"), including all attachments and accessories, as well as a blanket security interest in all assets of TRUCKING (the "Blanket Collateral"). Plaintiff perfected its interest Equipment No. 1 and the Blanket Collateral by filing UCC financing statements in all appropriate locations, and by recording its lien on the titles to Equipment No. 1. Note No. 1 and Security Agreement No. 1 provide for acceleration of all indebtedness due under the terms of Note No. 1 in the event of default by TRUCKING under any of its obligations to Plaintiff. True and correct copies of Note No. 1 and Security Agreement No. 1 are attached hereto and incorporated herein marked as Exhibit "A."

9.     On or about November 12, 2007, TRUCKING executed and delivered to Plaintiff a Promissory Note in the original amount of $132,198.00 ("Note No. 2"). Note No. 2 was to be paid in monthly installments, as more fully set forth in Note No. 2, commencing on December 27, 2007, and continuing on the same day of each month thereafter until paid in full. Note No. 2 was secured by a Security Agreement ("Security Agreement No. 2") executed simultaneously therewith wherein TRUCKING granted Plaintiff a security interest in all that certain equipment more particularly described on Schedule "A" to the Security Agreement ("Equipment No. 2"), including all attachments and accessories, as well as a blanket security interest in the Blanket Collateral. Plaintiff perfected its interest Equipment No. 2 and the Blanket Collateral by filing UCC financing

statements in all appropriate locations, and by recording its lien on the titles to Equipment No. 2. Note No. 2 and Security Agreement No. 2 provide for acceleration of all indebtedness due under the terms of Note No. 2 in the event of default by TRUCKING under any of its obligations to Plaintiff. True and correct copies of Note No. 2 and Security Agreement No. 2 are attached hereto and incorporated herein marked as Exhibit "B."

10. On or about May 16, 2008, TRUCKING executed and delivered to Plaintiff a Promissory Note in the original amount of $141,930.00 ("Note No. 3"). Note No. 3 was to be paid in monthly installments, as more fully set forth in Note No. 3, commencing on July 8, 2008, and continuing on the same day of each month thereafter until paid in full. Note No. 3 was secured by a Security Agreement ("Security Agreement No. 3") executed simultaneously therewith wherein TRUCKING granted Plaintiff a security interest in all that certain equipment more particularly described on Schedule "A" to the Security Agreement ("Equipment No. 3"), including all attachments and accessories, as well as a blanket security interest in the Blanket Collateral. Plaintiff perfected its interest Equipment No. 3 and the Blanket Collateral by filing UCC financing statements in all appropriate locations, and by recording its lien on the titles to Equipment No. 3. Note No. 3 and Security Agreement No. 3 provide for acceleration of all indebtedness due under the terms of Note No. 3 in the event of default by TRUCKING under any of its obligations to Plaintiff. True and correct copies of Note No. 3 and Security Agreement No. 3 are attached hereto and incorporated herein marked as Exhibit "C."

11. By Rider to Promissory Note dated September 24, 2008, Note No. 3 was modified as follows:

> Commencing with the installment due on October 8, 2008, the schedule of remaining installments due under the terms of the Note is hereby modified as follows: Twenty-seven (27) installments, each in the amount of $3,750.00.

A true and correct copy of the Rider is attached hereto and incorporated herein marked as Exhibit "D."

12. On or about May 16, 2008, TRUCKING executed and delivered to Plaintiff a Promissory Note in the original amount of $142,260.00 ("Note No. 4"). Note No. 4 was to be paid in monthly installments, as more fully set forth in Note No. 4, commencing on July 15, 2008, and continuing on the same day of each month thereafter until paid in full. Note No. 4 was secured by a Security Agreement ("Security Agreement No. 4") executed simultaneously therewith wherein TRUCKING granted Plaintiff a security interest in all that certain equipment more particularly described on Schedule "A" to the Security Agreement ("Equipment No. 4"), including all attachments and accessories, as well as a blanket security interest in the Blanket Collateral. Plaintiff perfected its interest Equipment No. 4 and the Blanket Collateral by filing UCC financing statements in all appropriate locations, and by recording its lien on the titles to Equipment No. 4. Note No. 4 and Security Agreement No. 4 provide for acceleration of all indebtedness due under the terms of Note No. 4 in the event of default by TRUCKING under any of its obligations to Plaintiff. True and correct copies of Note No.

4 and Security Agreement No. 4 are attached hereto and incorporated herein marked as Exhibit "E."

13. On or about September 11, 2008, TRUCKING executed and delivered to Plaintiff a Promissory Note in the original amount of $64,182.00 ("Note No. 5"). Note No. 5 was to be paid in monthly installments, as more fully set forth in Note No. 5, commencing on September 11, 2008, and continuing on November 1, 2008, and continuing on the same day of each month thereafter until paid in full. Note No. 5 was secured by a Security Agreement ("Security Agreement No. 5") executed simultaneously therewith wherein TRUCKING granted Plaintiff a security interest in all that certain equipment more particularly described on Schedule "A" to the Security Agreement ("Equipment No. 5"), including all attachments and accessories, as well as a blanket security interest in the Blanket Collateral. Plaintiff perfected its interest Equipment No. 5 and the Blanket Collateral by filing UCC financing statements in all appropriate locations, and by recording its lien on the titles to Equipment No. 5. Note No. 5 and Security Agreement No. 5 provide for acceleration of all indebtedness due under the terms of Note No. 5 in the event of default by TRUCKING under any of its obligations to Plaintiff. True and correct copies of Note No. 5 and Security Agreement No. 5 are attached hereto and incorporated herein marked as Exhibit "F."

14. On or about October 9, 2008, TRUCKING executed and delivered to Plaintiff a Promissory Note in the original amount of $138,331.20 ("Note No. 6"). Note No. 6 was to be paid in monthly installments, as more fully set forth in Note No. 6, commencing on October 9, 2008, and continuing on November 23, 2008, and

continuing on the same day of each month thereafter until paid in full. Note No. 6 was secured by a Security Agreement ("Security Agreement No. 6") executed simultaneously therewith wherein TRUCKING granted Plaintiff a security interest in all that certain equipment more particularly described on Schedule "A" to the Security Agreement ("Equipment No. 6"), including all attachments and accessories, as well as a blanket security interest in the Blanket Collateral. Plaintiff perfected its interest Equipment No. 6 and the Blanket Collateral by filing UCC financing statements in all appropriate locations, and by recording its lien on the titles to Equipment No. 6. Note No. 6 and Security Agreement No. 6 provide for acceleration of all indebtedness due under the terms of Note No. 6 in the event of default by TRUCKING under any of its obligations to Plaintiff. True and correct copies of Note No. 6 and Security Agreement No. 6 are attached hereto and incorporated herein marked as Exhibit "G."

15. On or about November 10, 2008, TRUCKING executed and delivered to Plaintiff a Promissory Note in the original amount of $71,700.00 ("Note No. 7"). Note No. 7 was to be paid in monthly installments, as more fully set forth in Note No. 7, commencing on December 10, 2008, and continuing on the same day of each month thereafter until paid in full. Note No. 7 was secured by a Security Agreement ("Security Agreement No. 7") executed simultaneously therewith wherein TRUCKING granted Plaintiff a security interest in all that certain equipment more particularly described on Schedule "A" to the Security Agreement ("Equipment No. 7"), including all attachments and accessories, as well as a blanket security interest in the Blanket Collateral. Plaintiff perfected its interest Equipment No. 7 and the Blanket Collateral by filing UCC financing

statements in all appropriate locations, and by recording its lien on the titles to Equipment No. 7. Note No. 7 and Security Agreement No. 7 provide for acceleration of all indebtedness due under the terms of Note No. 7 in the event of default by TRUCKING under any of its obligations to Plaintiff. True and correct copies of Note No. 7 and Security Agreement No. 7 are attached hereto and incorporated herein marked as Exhibit "H."

16.    Note Nos. 1, 2, 3, 4, 5, 6, and 7 are sometimes hereinafter collectively referred to as the "Notes." Security Agreement Nos. 1, 2, 3, 4, 5, 6, and 7 are sometimes hereinafter collectively referred to as the "Security Agreements." Equipment Nos. 1, 2, 3, 4, 5, 6, and 7 are sometimes hereinafter collectively referred to as the "Equipment."

17.    The Notes and the Security Agreements are cross-defaulted and cross-collateralized.

## GUARANTIES

18.    On or about August 27, 2003, ROBERT C. JEFFRIES executed and delivered to Plaintiff a personal guaranty of the obligations of TRUCKING (the "RCJ Guaranty"). The RCJ Guaranty formed part of the consideration for Plaintiff accepting and funding the Notes, and Plaintiff relied on the RCJ Guaranty in doing so. The RCJ Guaranty is a continuing guaranty. A true and correct copy of the RCJ Guaranty is attached hereto and incorporated herein marked as Exhibit "I."

19.    On or about November 13, 2003, DEBRA L. JEFFRIES executed and delivered to Plaintiff a personal guaranty of the obligations of TRUCKING (the "DLJ

Guaranty"). The DLJ Guaranty formed part of the consideration for Plaintiff accepting and funding the Notes, and Plaintiff relied on the DLJ Guaranty in doing so. The DLJ Guaranty is a continuing guaranty. A true and correct copy of the DLJ Guaranty is attached hereto and incorporated herein marked as Exhibit "J."

20. The RCJ Guaranty and the DLJ Guaranty are sometimes hereinafter collectively referred to as the "Guaranties."

21. Each of the Guaranties provides that the Guarantor named therein agrees to be directly and unconditionally liable to Plaintiff, without reduction by reason of any defense, setoff or counterclaim, for the due payment and performance of all obligations of TRUCKING to Plaintiff. Each of the Guaranties further provides that the liability of the respective Guarantor to Plaintiff is direct and unconditional and may be enforced against the Guarantor without prior resort to any other right, remedy or security and shall continue notwithstanding any repossession or other disposition of security regardless of whether same may be an election of remedies against TRUCKING, that the liability of the Guarantor to Plaintiff shall not be released, impaired or satisfied for any reason until all obligations of TRUCKING to Plaintiff have been fully paid and performed, with interest, and that the Guarantor will pay Plaintiff's reasonable attorneys' fees if the Guaranties are referred to an attorney for enforcement, together with any and all court costs and expenses. All notices to which ROBERT C. JEFFRIES and DEBRA L. JEFFRIES, as the Guarantors, may be entitled, including, but not limited to, presentment, demand, notice of intent to accelerate, notice of acceleration and protest, are expressly waived by the terms of the Guaranties.

## DEFAULT

22.    Plaintiff is the owner and holder of the Notes, the Security Agreements and each of the Guaranties and is the party entitled to payment thereof. Plaintiff fully performed all of its duties and obligations under the terms of the Notes, the Security Agreements and each of the Guaranties.

23.    TRUCKING has failed to make payments as promised in Note No. 1 and defaulted in payment of the monthly installments which fell due November 20, 2009, and thereafter. As a result, as of March 23, 2010, there is past due and owing from TRUCKING on Note No. 1 the amount of $11,125.00, plus late charges and other fees. Plaintiff has exercised its option to accelerate the unpaid balance of the indebtedness due under Note No. 1 for a total indebtedness of $73,147.63 as of March 23, 2010, together with additional interest, late charges, costs and attorneys' fees that continue to accrue.

24.    TRUCKING has failed to make payments as promised in Note No. 2 and defaulted in payment of the monthly installments which fell due November 27, 2009, and thereafter. As a result, as of March 23, 2010, there is past due and owing from TRUCKING on Note No. 2 the amount of $8,012.00, plus late charges and other fees. Plaintiff has exercised its option to accelerate the unpaid balance of the indebtedness due under Note No. 2 for a total indebtedness of $85,902.06 as of March 23, 2010, together with additional interest, late charges, costs and attorneys' fees that continue to accrue.

25. TRUCKING has failed to make payments as promised in Note No. 3 and defaulted in payment of the monthly installments which fell due November 8, 2009, and thereafter. As a result, as of March 23, 2010, there is past due and owing from TRUCKING on Note No. 3 the amount of $18,750.00, plus late charges and other fees. Plaintiff has exercised its option to accelerate the unpaid balance of the indebtedness due under Note No. 3 for a total indebtedness of $55,312.50 as of March 23, 2010, together with additional interest, late charges, costs and attorneys' fees that continue to accrue.

26. TRUCKING has failed to make payments as promised in Note No. 4 and defaulted in payment of the monthly installments which fell due October 15, 2009, and thereafter. As a result, as of March 23, 2010, there is past due and owing from TRUCKING on Note No. 4 the amount of $28,452.00, plus late charges and other fees. Plaintiff has exercised its option to accelerate the unpaid balance of the indebtedness due under Note No. 4 for a total indebtedness of $75,422.80 as of March 23, 2010, together with additional interest, late charges, costs and attorneys' fees that continue to accrue.

27. TRUCKING has failed to make payments as promised in Note No. 5 and defaulted in payment of the monthly installments which fell due November 1, 2009, and thereafter. As a result, as of March 23, 2010, there is past due and owing from TRUCKING on Note No. 5 the amount of $4,540.00, plus late charges and other fees. Plaintiff has exercised its option to accelerate the unpaid balance of the indebtedness due under Note No. 5 for a total indebtedness of $47,462.64 as of March 23, 2010,

together with additional interest, late charges, costs and attorneys' fees that continue to accrue.

28. TRUCKING has failed to make payments as promised in Note No. 6 and defaulted in payment of the monthly installments which fell due November 23, 2009, and thereafter. As a result, as of March 23, 2010, there is past due and owing from TRUCKING on Note No. 6 the amount of $9,655.00, plus late charges and other fees. Plaintiff has exercised its option to accelerate the unpaid balance of the indebtedness due under Note No. 6 for a total indebtedness of $100,483.26 as of March 23, 2010, together with additional interest, late charges, costs and attorneys' fees that continue to accrue.

29. TRUCKING has failed to make payments as promised in Note No. 7 and defaulted in payment of the monthly installments which fell due November 10, 2009, and thereafter. As a result, as of March 23, 2010, there is past due and owing from TRUCKING on Note No. 7 the amount of $5,975.00, plus late charges and other fees. Plaintiff has exercised its option to accelerate the unpaid balance of the indebtedness due under Note No. 7 for a total indebtedness of $56,831.66 as of March 23, 2010, together with additional interest, late charges, costs and attorneys' fees that continue to accrue.

30. ROBERT C. JEFFRIES and DEBRA L. JEFFRIES, as Guarantors, are liable to Plaintiff for all sums owing under the terms of the Notes, the Security Agreements, and each of the Guaranties. Plaintiff is entitled to judgment against ROBERT C. JEFFRIES and DEBRA L. JEFFRIES, jointly and severally, in the

aggregate amount of $494,562.55 as of March 23, 2010, together with additional interest, late charges, costs and attorneys' fees that continue to accrue in accordance with the terms of the Notes, the Security Agreements and each of the Guaranties.

## INTEREST

31.     The Notes, the Security Agreements and each of the Guaranties expressly provide that, upon the occurrence of an event of default, interest shall accrue on the balance due at the maximum rate allowed by law.  The maximum rate allowed by law is eighteen percent (18%) per annum.

32.     ROBERT C. JEFFRIES and DEBRA L. JEFFRIES, as Guarantors, are responsible for all sums due under the terms of the Notes, the Security Agreements and each of the Guaranties, including interest as set forth above, for which Plaintiff here sues.

## ATTORNEYS' FEES

33.     The Notes, the Security Agreements and each of the Guaranties expressly provide that Plaintiff is entitled to recover its attorneys' fees, for which attorneys' fees Plaintiff here sues.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Court that Defendants, ROBERT C. JEFFRIES and DEBRA L. JEFFRIES, be cited to appear and file answer herein, and on final hearing hereof, that Plaintiff, FINANCIAL FEDERAL CREDIT INC., does have and recover of and from Defendants, ROBERT C. JEFFRIES and DEBRA L. JEFFRIES, jointly and severally, as follows:

a) Judgment in the amount of $494,562.55;

b) Interest thereon at the rate of eighteen percent (18%) per annum from and after March 23, 2010, until the date of judgment;

c) reasonable attorneys' fees;

d) post-judgment interest as provided by law;

e) all costs of court;

and for such other and further relief to which Plaintiff may show itself to be justly entitled.

FINANCIAL FEDERAL CREDIT INC.

Robert Grawl, Jr., Assistant General Counsel
State Bar No: 08313400 / SDOT No. 14141
1300 Post Oak Blvd., Suite 1300
Houston, Texas 77056
Telephone:   (713) 439-1177
Telecopier:   (713) 386-0337

OF COUNSEL:

Douglas R. Little
Law Offices of Douglas R. Little
440 Louisiana, Suite 1525
Houston, Texas 77002
Telephone:   (713) 229-9922
Telecopier:   (713) 229-8461

EXHIBIT A

# PROMISSORY NOTE

| $146,850.00 | Cambridge | IL | January 8, 2007 |
|---|---|---|---|
| (Total of Note) | (City) | (State) | (Date) |

FOR VALUE RECEIVED, **Charles Jeffries & Son Trucking, Inc.** ("Maker") promises to pay to the order of **Financial Federal Credit Inc.** ("Holder"), at **4225 Naperville Road, Suite 265, Lisle, IL 60532**, or such other place as Holder may, from time to time, designate in writing, the amount of **One Hundred Forty-Six Thousand Eight Hundred Fifty Dollars and No Cents ($146,850.00)**, payable in consecutive **monthly** installments, as follows:

| 66 | installments, each in the amount of | $ 2,225.00 | ; then |
|---|---|---|---|
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then· |
| | installments, each in the amount of | $ | |

Said consecutive **monthly** installments shall commence on the **20th** day of **February, 2007**, and continue on **March 20, 2007** and on the same day of each **month** thereafter until the indebtedness evidenced hereby is paid in full. The Total of Note includes precomputed interest (at the "non-default interest rate") from the date hereof on the unpaid principal amount outstanding from time to time through the maturity of each installment (assuming that each installment will be received on its respective due date) (but in no event shall the rate of interest exceed any maximum permitted by applicable law). Maker shall also pay to Holder on demand, on each installment (of principal and/or interest) not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire indebtedness (whether by acceleration or otherwise), Maker shall pay, on demand, interest on the unpaid indebtedness (excluding accrued and unpaid interest and late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full. Unless prohibited by applicable law, during any period of time when Maker is in default under the terms of this Note, Maker shall pay interest on the unpaid principal amount outstanding from time to time at the maximum lawful daily rate, not to exceed 0.0666% per day, in place of the non-default interest rate set forth or implied in this Note, until the default is cured. Interest shall be calculated on the basis of a 360 day year and for the actual number of days elapsed, unless such calculation would cause the effective interest rate under this Note to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. Maker agrees to an effective rate of interest which is the rate stated or implied in this Note plus any additional sums or charges provided for herein or incident to the transaction of which this Note forms a part which are or may be deemed to be interest under applicable law, but not more than the maximum amount permissible under applicable law.

Upon nonpayment when due of any amount owing hereunder, or if default occurs under any other obligation of Maker to Holder or under any security agreement, pledge, assignment, deed of trust, or any other instrument or document executed to evidence, secure, guarantee, govern or in any way pertain to the loan evidenced by this Note or any other obligation of Maker to Holder, Holder may, at its option, without notice or demand, accelerate the maturity of the accrued and unpaid indebtedness then outstanding under this Note and declare same to be at once due and payable whereupon it shall be and become immediately due and payable. Maker, all endorsers, guarantors and any other party liable on this Note also promise and agree to pay Holder's costs, expenses and reasonable attorneys' fees incurred in enforcing and/or collecting this Note. Maker, all endorsers, guarantors and any other party liable on this Note waive presentment for payment, demand, protest, notice of protest and notice of nonpayment, default and dishonor, notice of intent to accelerate, notice of acceleration, and further, to the extent allowed by law, waive all benefits of valuation, appraisement and exemption laws. Holder may, without notice, extend the time of payment of this Note, postpone the enforcement hereof, grant any other indulgence, add or release any party primarily or secondarily liable hereon and/or release or change any collateral securing this Note without affecting or diminishing Holder's right of recourse against Maker, all endorsers, guarantors and other parties liable on this Note, which right is hereby expressly reserved. As used in this Note, the term "Holder" includes any future holder of this Note. If more than one party signs this Note as Maker, the obligations of each of them shall be joint and several.

As a material inducement to Holder to advance funds or otherwise provide financial accommodations to or for the benefit of Maker and/or in consideration of Holder having previously done so, Maker agrees that in the event of any prepayment of any of Maker's indebtedness for borrowed money now or hereafter owing to Holder (whether evidenced hereby or otherwise), whether voluntary or involuntary, Maker shall simultaneously pay a prepayment premium equal to the sum of (a) fifteen hundredths percent (0.15%) of the principal amount then being prepaid multiplied by the number of calendar months between the date of such prepayment and the scheduled final maturity date of the indebtedness being prepaid, plus (b) two percent (2%) of the principal amount of the indebtedness then being prepaid, but not more than the maximum amount permitted by law. The principal amount of any partial prepayment shall be applied to the scheduled installments of the indebtedness then being prepaid in the reverse order of their respective maturities, so that the amount and due date of only the latest maturing installment(s) shall be affected thereby.

Notwithstanding anything to the contrary in this Note or any related writing, all agreements between Maker and Holder, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by Holder exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise been earned on the date of such acceleration, and Holder does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstance whatsoever, interest would otherwise be payable to Holder in excess of the maximum lawful amount, the interest payable to Holder shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Holder shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any

excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal hereof, such excess shall be refunded to Maker. All interest paid or agreed to be paid to Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Maker and Holder.

The proceeds from the loan evidenced by this Note are to be used for business purposes only, and no part thereof is to be used for primarily consumer, personal, family or household purposes. Maker acknowledges and agrees that Maker's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Maker in favor of Holder, whether now existing or hereafter executed.

**THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. THIS NOTE MAY NOT BE CHANGED OR TERMINATED ORALLY.**

MAKER _____     MAKER   <u>Charles Jeffries & Son Trucking, Inc.</u>

By: _____     By: _____
Name: _____ Title _____     Name: _____ Title _____

_____
(Witness for all Makers)

## ENDORSEMENT

The undersigned do each (jointly and severally) unconditionally guarantee the prompt payment of the within Note at maturity or any time thereafter, or on default prior thereto, hereby waiving presentment for payment, demand, protest, notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of every kind and nature, and accepting all of its provisions and authorizing Holder, without notice to any one or more or all of us, to substitute debtors, and/or to grant one or more extensions in whole or in part, and/or to receive security or additional security for the payment hereof and/or to surrender, release or substitute any such security.

If any payment on this Note is not paid when due, then the remaining unpaid indebtedness shall, without notice or demand, become immediately due and payable, at the option of Holder, and may be recovered in any suit brought by the Holder of this Note against any one or more or all of us, at the option of Holder, whether such suit has been commenced against Maker or not, and in any such suit Maker may be joined with one or more or all of us, at the option of Holder.

The Holder of this Note shall not be required to look to any security given or held for the payment of this Note, but may proceed against any one or more or all of us immediately upon a default in payment or otherwise. Any execution may be immediately levied upon any real or personal property of the undersigned, all rights of the undersigned to have personal property last taken and sold under such execution being hereby expressly waived.

_____
(Endorser)

_____
(Endorser)

_____
(Endorser)

COPYRIGHT 2005 FINANCIAL FEDERAL CREDIT INC.                                    FFCI SA/PN24 (03/06)

# SECURITY AGREEMENT

This Security Agreement dated **January 8, 2007**, is executed by **Charles Jeffries & Son Trucking, Inc.** ("Debtor") whose principal office (or residence) address is **13256 Highway 81 East, Cambridge, IL, 61238** in favor of **Financial Federal Credit Inc.** ("Secured Party") whose address is **4225 Naperville Road, Suite 265, Lisle, IL, 60532.**

1. To secure the payment and performance of all indebtedness, obligations and liabilities of Debtor to Secured Party of whatever kind, whether previously, contemporaneously, or subsequently incurred or created, whether direct or acquired from third parties, whether contingent or fixed, and whether of the same or different classes (including, without limiting the generality of the foregoing, all indebtedness, obligations and liabilities arising out of or relating to (i) advances, payments, loans, endorsements, guaranties, extensions of credit, financial accommodations and/or benefits granted or extended by Secured Party to or for the account of Debtor, (ii) notes, security agreements, lease agreements, rental agreements, installment sale contracts, bailment agreements, guaranties, and/or any other present or future agreements between Debtor and Secured Party, and/or (iii) expenses, charges, commissions and/or interest owing by Debtor to Secured Party or chargeable to Debtor by Secured Party), and all extensions, renewals and/or modifications of the foregoing (collectively, the "Obligations"), Debtor does hereby assign, transfer, pledge and grant to Secured Party a security interest/lien in/upon all property listed on any Schedule to this Agreement (the "Property"), and in all goods, inventory, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessions of and/or to all of the foregoing (collectively, including the Property, the "Collateral"). Debtor and Secured Party acknowledge that Secured Party may (but shall not be obligated to) make future loans or extensions of credit to or guaranteed by Debtor, refinance existing Obligations of or guaranteed by Debtor, or purchase from third parties loans or indebtedness of or guaranteed by Debtor, and Secured Party and Debtor agree that the Collateral shall be security for any and all such indebtedness.

2. Debtor hereby represents and warrants to Secured Party and covenants and agrees with Secured Party as follows: (a) All information supplied and statements made to Secured Party by or on behalf of Debtor relating to the Obligations or the Collateral are and shall be true, complete and accurate, whether supplied or made prior to, contemporaneously with or subsequent to the execution of this Agreement; (b) Debtor has good and marketable title to the Collateral, free and clear of any liens, security interests or encumbrances of any kind or nature whatsoever (except any claimed by Secured Party) and Debtor will warrant and defend the Collateral against all claims; (c) all Collateral listed on any Schedule to this Agreement is in Debtor's possession at the location shown above, unless a different location is disclosed on such Schedule for a particular item, and shall at all times remain in Debtor's possession and control; (d) Debtor shall not change (i) its name, (ii) the location of any Collateral, or (iii) the location of (as applicable) Debtor's residence, principal place of business, executive office or the place where Debtor keeps its business records, without thirty (30) days prior written notice to Secured Party; (e) Debtor has full, unrestricted and lawful power and authority to sell and assign the Collateral, to grant Secured Party a security interest/lien therein/thereon as herein provided and to execute and perform this Agreement and all other instruments and agreements executed by Debtor in favor of Secured Party; (f) if a corporation, a partnership, or a limited liability company, Debtor is (as applicable): (i) duly formed, organized, validly existing and in good standing in the state of its incorporation or organization, (ii) duly qualified and in good standing in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) authorized by all requisite action of its stockholders and directors, partners or managers to execute, deliver and perform this Agreement; (g) Debtor shall cause Secured Party to have a security interest and lien in/upon the Collateral which at all times shall be duly perfected, enforceable and superior to any liens, encumbrances and interests other than Secured Party's, and Debtor shall not permit the Collateral or any portion thereof to be removed from the Continental United States, nor to be or become subject to any lien or encumbrance of any kind or nature whatsoever (except in favor of Secured Party), nor shall Debtor sell, pledge, grant any security interest in, encumber, assign, rent, lease, lend, destroy or otherwise transfer or dispose of, or permit the filing of a financing statement with respect to (except in favor of Secured Party) any Collateral, nor shall Debtor guarantee any obligation of any other person or entity except in favor of Secured Party, without the prior written consent of Secured Party in each instance; (h) Debtor shall comply (to the extent necessary to protect the Collateral and Secured Party's interest therein) with the provisions of all leases, mortgages, deeds of trust or other contracts affecting any premises where any Collateral is or may be located and with any rules, laws, orders, ordinances or statutes of any state, county, municipality or other authority having jurisdiction relating to such premises and/or the conduct of business thereon and/or use thereof; (i) Debtor shall, at Debtor's sole cost and expense, keep and maintain all Collateral in good condition and repair, and shall use and maintain the Collateral in accordance with all applicable manufacturer's specifications and warranties; (j) all Collateral shall at all times remain personalty and shall not become part of any realty to which it may be attached so that Secured Party shall have the unrestricted right (subject only to the terms of this Agreement) to remove all or any portion thereof from any premises where it may be located, and Debtor will obtain and deliver to Secured Party (in a form acceptable to Secured Party) waivers from all landlords, mortgagees and owners of such premises; (k) Debtor shall (at Debtor's expense) upon request by Secured Party, obtain, execute and deliver all assignments, certificates, financing statements or other documents, give further assurances and do all other acts and things as may be necessary to fully perfect Secured Party's interest in the Collateral and to protect, enforce or otherwise effectuate the terms of this Agreement; and (l) Secured Party has no obligation to lend or advance funds unless and until all representations, warranties, conditions and requirements contained herein have been satisfied including without limitation receipt by Secured Party of proof of ownership of the Collateral satisfactory to Secured Party in its sole discretion, and any applicable subordinations and/or lien releases as may be required by, and in a form acceptable to, Secured Party in its sole discretion. Debtor hereby irrevocably designates and appoints Secured Party as Debtor's agent and attorney-in-fact to sign and deliver all such assignments, certificates, financing statements and other documents necessary to perfect, protect, continue and/or enforce Secured Party's interest in the Collateral and to file same with the appropriate office(s). Debtor hereby authorizes Secured Party to file one or more financing statements in all appropriate locations.

3. Debtor hereby acknowledges the validity of and affirms all of the Obligations, agrees that they are and shall be secured by this Agreement and absolutely and unconditionally promises and agrees to punctually and fully pay and perform all Obligations. Debtor shall pay to Secured Party on demand, on any installment of the Obligations not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire unpaid indebtedness (whether by acceleration or otherwise) of any one or more of the Obligations, Debtor shall pay, on demand, interest on such matured indebtedness (excluding unpaid late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full.

4. Debtor shall insure the Collateral against all risks of loss or damage from every cause (including without limitation fire, theft, vandalism, accident, flood, earthquake and extended coverage) for not less than the full replacement value as determined by Secured Party in its sole discretion, and shall carry liability and property damage insurance covering the Collateral. All insurance shall be in form and amount and with licensed, solvent companies approved by Secured Party, and shall name Secured Party as sole loss payee. Debtor shall pay the premiums therefor and deliver said policies or duplicates to Secured Party. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Secured Party to give Secured Party 30 days prior written notice before the policy shall be modified or canceled and that Secured Party's coverage shall not be diminished or invalidated by any negligence, act or omission of Debtor. The proceeds of such insurance, at the option of Secured Party, shall be applied toward the replacement or repair of the Collateral or toward payment of the Obligations. Debtor hereby irrevocably appoints Secured Party as its attorney-in-fact and agent to make claim for, adjust, compromise, settle, receive payment of, and to sign all documents, checks and/or drafts in payment of or relating to any claim for loss of or damage to the Collateral and for any returned premiums. If any required insurance expires, is canceled or modified, or is otherwise not in full force and effect, Secured Party may but need not obtain replacement insurance. Secured Party may but need not pay the premiums for insurance and/or replacement insurance and the amount of all premiums so paid by Secured Party shall be added to Debtor's obligations hereunder and shall be reimbursed to Secured Party on demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law) from the date paid by Secured Party until fully reimbursed by Debtor.

5. Secured Party shall have the right, at any reasonable time, to inspect all or any portion of the Collateral and/or Debtor's books and records. Debtor shall assist Secured Party in making any such inspection and Debtor shall reimburse Secured Party for its costs and expenses of making up to four such inspections per year. Upon request, Debtor shall, from time to time, furnish a current financial statement to Secured Party in form and content satisfactory to Secured Party, and shall provide annual certified financial statements within five (5) days of Secured Party's request therefor.

6. If Debtor shall fail to fully and timely pay, perform and fulfill any of its Obligations, covenants or agreements to or with Secured Party and/or if Debtor shall breach any of its warranties to Secured Party under this Agreement or otherwise, Secured Party shall have the option, in its sole discretion and without any obligation, to pay, perform, fulfill or cause the payment, performance or fulfillment of same on behalf of Debtor; and all costs and expenses incurred by Secured Party in connection therewith (including but not limited to attorneys' fees, bond premiums, court costs, costs of retaking, storing, preserving, selling and/or realizing on any Collateral) shall be added to the Obligations hereby secured and shall be payable by Debtor to Secured Party upon demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law), from the date advanced by Secured Party until fully repaid. Secured Party shall have no obligation to make any demand upon or give any notice to Debtor prior to the exercise of any of its rights under this paragraph; and neither the exercise nor the failure to exercise any such rights by Secured Party shall relieve Debtor of any default or constitute a waiver of Secured Party's right to enforce strict compliance with the terms of this Agreement at any time.

7. Debtor assumes all liability and risk of loss and agrees to defend, indemnify and hold Secured Party harmless from and against all claims, liabilities, causes of action and damages of any kind, including but not limited to injury to or death of any person(s) and for loss, damage or destruction of any property and for any fines, penalties, costs, expenses and charges in any way arising out of or related to the Obligations, this Agreement, the Collateral or its use, possession, storage, maintenance, repair, transportation or operation (including without limitation all costs and expenses of investigation, all attorneys' fees, court costs, arbitration expenses and costs, and all special, consequential, compensatory and punitive damages). Debtor, at its own cost and expense, shall use, operate, maintain, repair, transport and store the Collateral in a safe and careful manner in compliance with all applicable laws, rules and regulations (including without limitation those regulating hazardous substances, the environment and public health or safety), industry standards, insurance requirements and manufacturer's specifications and service bulletins. Debtor also assumes and agrees to indemnify, pay and hold harmless Secured Party and its directors, officers, employees and agents from all expenses, losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees that Secured Party may incur or sustain in obtaining or enforcing payment or performance of any of the Obligations or exercising its rights and remedies under this Agreement or in connection with any action, proceeding or appeal arising out of or related to this Agreement, the Obligations and/or the Collateral, whether brought by Debtor or any third party. The obligations of Debtor under this paragraph shall survive termination of this Agreement.

8. If any Event of Default exists, Secured Party without notice or demand may do one or more of the following, in any order, and such remedies shall be cumulative (none of which shall be exclusive but each is in addition to any other remedy available to Secured Party): (a) Secured Party may accelerate the maturity of the Obligations and declare same to be at once due and payable whereupon they shall be immediately due and payable; (b) Secured Party may require Debtor to pay all accrued interest, late charges, collection charges, reimbursement for any and all expenses incurred by Secured Party in enforcing any of the Obligations or this Agreement and reasonable attorneys' fees; (c) Secured Party may require Debtor to deliver any or all of the Collateral at Debtor's expense to such place or places as Secured Party may designate; (d) Secured Party may repossess/take possession of any or all of the Collateral wherever found, voluntarily or involuntarily, without notice, demand or legal process (Debtor, if permitted by applicable law, hereby waiving any right to notice or a hearing), and Secured Party may enter the premises where any or all Collateral are located and disconnect, render unusable, and remove any or all Collateral without liability to Debtor arising out of such entry, taking of possession or removal, and may use such premises without charge to store or show the Collateral for sale or other disposition; (e) Secured Party may sell the Collateral by public or private sale, hold, retain the Collateral in full or partial satisfaction of the indebtedness due to Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any claims or rights of Debtor; and/or (f) Secured Party may sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether or not stated herein. Failure or delay on the part of Secured Party to exercise any right or remedy hereunder shall not operate as a waiver thereof. Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are

COPYRIGHT 2004 FINANCIAL FEDERAL CREDIT INC.

FFCI SA/SA 1 (02/05)

sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale, plus all costs, expenses and damages incurred by Secured Party including but not limited to all legal fees whether or not suit is filed, allocable costs of in-house counsel, costs related to the repossession, reconditioning and disposition of the Collateral, and all incidental and consequential damages. No action taken by Secured Party shall release Debtor from any of its obligations to Secured Party. Debtor acknowledges and agrees that in any action or proceeding brought by Secured Party to obtain possession of any Collateral, Secured Party shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Debtor and if Debtor contests Secured Party's right to possession of any Collateral in any action or proceeding Debtor shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Debtor's unpaid obligations to Secured Party, whichever is less. The proceeds of any sale shall first be applied to the costs and expenses of Secured Party including but not limited to recovering, transporting, storing, refurbishing, and/or selling the items sold, attorneys' fees, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions. Secured Party may without prior notice to or demand upon Debtor and with or without the exercise of any of Secured Party's other rights or remedies, apply toward the payment of Debtor's obligations (at any time owing to Secured Party) any checks, drafts, notes, balances, reserves, accounts and sums belonging to or owing to Debtor and coming into Secured Party's possession and for such purpose may endorse Debtor's name on any instrument or document payable to Debtor (whether for deposit, collection, discount or negotiation). Without notice to Debtor, Secured Party may make such applications or change applications of sums previously paid and/or to be paid to Secured Party, to such Obligations as Secured Party in its sole discretion may choose. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies.

9. Protest and all demands and notices of any action taken by Secured Party under this Agreement, or in connection with any Collateral, except as otherwise provided in this Agreement, are hereby waived by Debtor, and any indulgence of Secured Party, substitution for, exchange of or release of any person liable on the Obligations is hereby consented to. Debtor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest; waives notice of the amount of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations or any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its sole discretion, without notice to Debtor. In performing any act under this Agreement or any of the Obligations, time shall be of the essence and Secured Party's acceptance of partial or delinquent payments or performance, or failure or delay to exercise any right or remedy, shall not be a waiver of any obligation of Debtor or right of Secured Party nor constitute a waiver of any subsequent default.

10. This Agreement, Secured Party's rights hereunder and/or any of the Obligations may be assigned from time to time by Secured Party, and in any such case the assignee shall be entitled to all of the rights, privileges and remedies herein granted to Secured Party, and Debtor hereby waives and agrees not to assert against any assignee any defense, setoff, claim, recoupment or counterclaim Debtor may have against Secured Party or any prior assignee. Debtor shall not assign this Agreement nor any of Debtor's rights or obligations hereunder.

11. Debtor shall be in default hereunder upon the occurrence of any of the following (each an "Event of Default"): (a) Debtor or any endorser, guarantor, surety, accommodation party or other person liable for the payment or performance of any of the Obligations ("Other Liable Party") fails to pay when due any sum due to Secured Party (whether hereunder or under any other Obligation to Secured Party) or to timely perform any obligation, covenant, term or provision of this Agreement or any other instrument and/or agreement now or hereafter existing between the parties, or there exists any Event of Default thereunder; (b) any warranty, representation or statement made to Secured Party by or on behalf of Debtor or any Other Liable Party is false in any respect when made or thereafter becomes false or is breached; (c) Debtor's or any Other Liable Party's death, dissolution, termination of existence, insolvency, business failure, assignment for the benefit of creditors, bulk transfer, proceeding under any bankruptcy or insolvency law, being declared judicially incompetent, voluntary or involuntary consent to the appointment of a receiver, trustee, conservator, liquidator or legal guardian for them or any or all of their property; (d) a default under any indebtedness of Debtor or any Other Liable Party or any event permitting the holder of any such indebtedness to accelerate the maturity thereof, whether or not such event is cured; (e) the Collateral becomes, in the sole judgment of Secured Party, unsatisfactory or insufficient in character or value; (f) Secured Party in good faith believes that the prospect of payment or performance of any of the Obligations or this Agreement is impaired; (g) any change in the management, operation, ownership or control of Debtor or any Other Liable Party; (h) any attachment, levy or execution against Debtor and/or any Other Liable Party that is not released within 48 hours; (i) Debtor's or any Other Liable Party's affairs so change as to, in Secured Party's sole discretion, increase the credit risk involved and Secured Party thereby becomes insecure as to the performance of this Agreement or any other agreement with Debtor or such Other Liable Party; (j) Debtor shall incur, create, assume, cause or suffer to exist any mortgage, trust, lien, security interest, pledge, hypothecation or other encumbrance (other than Secured Party's interest therein) or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral, this Agreement, or any of Secured Party's interests under this Agreement or any of the Obligations; (k) Debtor shall sell, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral; (l) failure of Debtor to obtain or maintain insurance on the Collateral satisfactory to Secured Party in its sole discretion; or (m) any of the Obligations, this Agreement, the security interest or any provision hereof for any reason attributable to Debtor ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Debtor or Debtor shall deny that it has any further liability or obligation thereunder.

12. The term "Debtor" as used in this Agreement shall be construed as the singular or plural to correspond with the number of persons executing this instrument as Debtor. "Secured Party" and "Debtor" as used in this Agreement include the heirs, executors or administrators, successors, legal representatives, receivers, and assigns of those parties. If more than one person executes this Agreement as Debtor, their obligations under this Agreement shall be joint and several. Unless the context otherwise requires, terms used in this Agreement which are defined in the Uniform Commercial Code are used with the meaning as therein defined. THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. No termination, modification, waiver or amendment of or to this Agreement shall be effective unless in writing signed by Debtor and an officer (assistant vice president or higher) of Secured Party. If any provision of this Agreement is rendered or declared invalid, illegal or ineffective by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision shall only invalidate such provision to the extent so rendered or declared invalid, illegal or ineffective and shall not impair, invalidate or nullify the remainder of this Agreement which shall remain in full force and effect. THE PARTIES INTEND THAT THIS AGREEMENT AND EACH OF ITS TERMS BE VALID AND ENFORCEABLE AS WRITTEN AND, ACCORDINGLY, AGREE THAT THE VALIDITY AND ENFORCEABILITY OF THIS AGREEMENT AND EACH OF ITS TERMS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DEBTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS AGREEMENT WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF SECURED PARTY'S LOCATION AS SET FORTH IN THIS AGREEMENT.

13. Any notice or demand to Debtor hereunder or in connection herewith may be given and shall conclusively be deemed and considered to have been given and received upon the deposit thereof in the U.S. Mail, in writing, duly stamped and addressed to Debtor at the address set forth in this Agreement or at such other address of Debtor as Debtor shall have designated by notice in writing delivered to Secured Party. Actual notice to Debtor, however given or received, shall always be effective. DEBTOR, AS A MATERIAL INDUCEMENT FOR SECURED PARTY TO MAKE LOANS OR OTHER FINANCIAL ACCOMMODATIONS AVAILABLE TO DEBTOR, HEREBY: IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR DEBTOR AND IN DEBTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY MATTER ARISING HEREUNDER, PROVIDED THAT SECURED PARTY MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION; WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO DEBTOR AT DEBTOR'S ADDRESS AS PROVIDED HEREIN. THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL OF ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, CROSS-CLAIM, DEFENSE OR OFFSET INVOLVING DEBTOR, SECURED PARTY OR ANY PERSON CLAIMING ANY RIGHT OR INTEREST ACQUIRED FROM, THROUGH OR UNDER ANY OF THEM; AND DEBTOR FURTHER HEREBY WAIVES ANY AND ALL SPECIAL, EXEMPLARY, PUNITIVE AND CONSEQUENTIAL DAMAGES IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE ACTS OR OMISSIONS OF SECURED PARTY OR ANY ASSIGNEE.

14. If Secured Party is for any reason compelled to surrender any payment received pursuant to any of the Obligations, because such payment is determined to be void or voidable as a preference, fraudulent transfer, impermissible set off or recoupment, a diversion of trust funds, or for any other reason, then such Obligation(s) shall be reinstated, if necessary and shall continue in full force notwithstanding any contrary action which Secured Party or Debtor may have taken in reliance upon such payment. Any such contrary action so taken shall be without prejudice to Secured Party's rights under the Obligations and hereunder and shall be deemed to have been conditioned upon such payment having become final and irrevocable. The terms of paragraphs 1, 7, 10, 12, 13, 14 and 15 shall survive termination of this Agreement.

15. All agreements between Debtor and Secured Party, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall any interest contracted for, charged or received by Secured Party exceed the maximum amount permissible under applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to Secured Party in excess of the maximum lawful amount, the interest payable to Secured Party shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Secured Party shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of any principal and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of any principal, such excess shall be refunded to Debtor. All interest paid or agreed to be paid to Secured Party shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of any principal (including the period of any renewal or extension) so that the interest for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Debtor and Secured Party.

| WITNESS (Attest if a corporation): | DEBTOR: | Charles Jeffries & Son Trucking, Inc. | |
|---|---|---|---|
| _____ (Title) | BY: | _____ Name: | _____ Pres. (Title) |
| Subscribed and sworn to before me, the undersigned notary public, on the date above written. | BY: | | |
| _____ Notary public | | _____ Name: | _____ (Title) |

COPYRIGHT 2004 FINANCIAL FEDERAL CREDIT INC.

FFCI SA/SA 1 (02/05)

# SCHEDULE "A"

This schedule is attached to and becomes part of a certain Security Agreement dated January 8, 2007.

| QUANTITY | YEAR | MODEL | DESCRIPTION OF COLLATERAL | SERIAL NUMBER |
|---|---|---|---|---|
| One (1) | 2007 | | Utility 53` Refrigerated Trailer with Thermo King SB310 Refrigeration Unit, SN:6001007856 | 1UYVS25377U042619 |
| One (1) | 2007 | | Utility 53` Refrigerated Trailer with Thermo King SB310 Refrigeration Unit, SN:6001008606 | 1UYVS25377U042605 |

Including all attachments, accessions and accessories to, and all proceeds of, all of the foregoing, including without limitation all insurance proceeds and all rental proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof.

This schedule is hereby verified correct and the undersigned acknowledge receipt of a copy.

Secured Party :
**Financial Federal Credit Inc.**

Debtor :
**Charles Jeffries & Son Trucking, Inc.**

By: _____
    Name and Title:

By: _Robert C. Jeffries_ _Pres_
    Name and Title:

Debtor :

By: _____
    Name and Title:

Common/ScASpec (11/04)

EXHIBIT B

# PROMISSORY NOTE

| $132,198.00 | Cambridge | IL | November 12, 2007 |
|---|---|---|---|
| (Total of Note) | (City) | (State) | (Date) |

FOR VALUE RECEIVED, **Charles Jeffries & Son Trucking, Inc.** ("Maker") promises to pay to the order of **Financial Federal Credit Inc.** ("Holder"), at 4225 Naperville Road Suite 265, Lisle, IL 60532, or such other place as Holder may from time to time designate in writing, the amount of **One Hundred Thirty-Two Thousand One Hundred Ninety-Eight Dollars and No-Cents ($132,198.00),** payable in consecutive **monthly** installments, as follows:

| 66 | installments, each in the amount of | $ 2,003.00 | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | |

Said consecutive **monthly** installments shall commence on the **27th** day of **December, 2007,** and continue on **January 27, 2008** and on the same day of each **month** thereafter until the indebtedness evidenced hereby is paid in full. The Total of Note includes precomputed interest (at the "non-default interest rate") from the date hereof on the unpaid principal amount outstanding from time to time through the maturity of each installment (assuming that each installment will be received on its respective due date) (but in no event shall the rate of interest exceed any maximum permitted by applicable law). Maker shall also pay to Holder on demand, on each installment (of principal and/or interest) not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire indebtedness (whether by acceleration or otherwise), Maker shall pay, on demand, interest on the unpaid indebtedness (excluding accrued and unpaid interest and late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full. Unless prohibited by applicable law, during any period of time when Maker is in default under the terms of this Note, Maker shall pay interest on the unpaid principal amount outstanding from time to time at the maximum lawful daily rate, not to exceed 0.0666% per day, in place of the non-default interest rate set forth or implied in this Note, until the default is cured. Interest shall be calculated on the basis of a 360 day year and for the actual number of days elapsed, unless such calculation would cause the effective interest rate to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. Maker agrees to an effective rate of interest which is the rate stated or implied in this Note plus any additional sums or charges provided for herein or incident to the transaction of which this Note forms a part which are or may be deemed to be interest under applicable law, but not more than the maximum amount permissible under applicable law.

Upon nonpayment when due of any amount owing hereunder, or if default occurs under any other obligation of Maker to Holder or, under any security agreement, pledge, assignment, deed of trust, or any other instrument or document executed to evidence, secure, guarantee, govern or in any way pertain to the loan evidenced by this Note or any other obligation of Maker to Holder, Holder may, at its option, without notice or demand, accelerate the maturity of the accrued and unpaid indebtedness then outstanding under this Note and declare same to be at once due and payable whereupon it shall be and become immediately due and payable. Maker, all endorsers, guarantors and any other party liable on this Note also promise and agree to pay Holder's costs, expenses and reasonable attorneys' fees incurred in enforcing and/or collecting this Note. Maker, all endorsers, guarantors and any other party liable on this Note waive presentment for payment, demand, protest, notice of protest and notice of nonpayment, default and dishonor, notice of intent to accelerate, notice of acceleration, and further, to the extent allowed by law, waive all benefits of valuation, appraisement and exemption laws. Holder may, without notice, extend the time of payment of this Note, postpone the enforcement hereof, grant any other indulgence, add or release any party primarily or secondarily liable hereon and/or release or change any collateral securing this Note without affecting or diminishing Holder's right of recourse against Maker, all endorsers, guarantors and other parties liable on this Note, which right is hereby expressly reserved. As used in this Note, the term "Holder" includes any future holder of this Note. If more than one party signs this Note as Maker, the obligations of each of them shall be joint and several.

As a material inducement to Holder to advance funds or otherwise provide financial accommodations to or for the benefit of Maker and/or in consideration of Holder having previously done so, Maker agrees that in the event of any prepayment of any of Maker's indebtedness for borrowed money now or hereafter owing to Holder (whether evidenced hereby or otherwise), whether voluntary or involuntary, Maker shall simultaneously pay a prepayment premium equal to the sum of (a) two tenths percent (0.2%) of the principal amount then being prepaid multiplied by the number of calendar months between the date of such prepayment and the scheduled final maturity date of the indebtedness being prepaid, plus (b) three percent (3%) of the principal amount of the indebtedness then being prepaid, but not more than the maximum amount permitted by law. Any partial prepayment shall be applied first to accrued and unpaid late charges, then to any other fees or expenses payable hereunder, then to accrued and unpaid interest, with the remainder applied to reduction of principal; the amount and due date of the remaining scheduled installments shall not be affected, but the number of remaining installments will be reduced as a result of said partial prepayment.

Notwithstanding anything to the contrary in this Note or any related writing, all agreements between Maker and Holder, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall the interest contracted for, charged or received by Holder exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise been earned on the date of such acceleration, and Holder does not intend to charge or collect any unearned interest in the event of

acceleration. If, from any circumstance whatsoever, interest would otherwise be payable to Holder in excess of the maximum lawful amount, the interest payable to Holder shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Holder shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal hereof, such excess shall be refunded to Maker. All interest paid or agreed to be paid to Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Maker and Holder.

The proceeds from the loan evidenced by this Note are to be used for business purposes only, and no part thereof is to be used for primarily consumer, personal, family or household purposes. Maker acknowledges and agrees that Maker's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Maker in favor of Holder, whether now existing or hereafter executed.

**THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. THIS NOTE MAY NOT BE CHANGED OR TERMINATED ORALLY.**

MAKER _____

MAKER  **Charles Jeffries & Son Trucking, Inc.** _____

By: _____
Name: _____  Title _____

By: _____ *Robert Jeffries* _____ *Pres* ____
Name: _____  Title _____

_____ (Witness for all Makers) _____

## ENDORSEMENT

The undersigned do each (jointly and severally) unconditionally guarantee the prompt payment of the within Note at maturity or any time thereafter, or on default prior thereto, hereby waiving presentment for payment, demand, protest, notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of every kind and nature, and accepting all of its provisions and authorizing Holder, without notice to any one or more or all of us, to substitute debtors, and/or to grant one or more extensions in whole or in part, and/or to receive security or additional security for the payment hereof and/or to surrender, release or substitute any such security.

If any payment on this Note is not paid when due, then the remaining unpaid indebtedness shall, without notice or demand, become immediately due and payable, at the option of Holder, and may be recovered in any suit brought by the Holder of this Note against any one or more or all of us, at the option of Holder, whether such suit has been commenced against Maker or not, and in any such suit Maker may be joined with one or more or all of us, at the option of Holder.

The Holder of this Note shall not be required to look to any security given or held for the payment of this Note, but may proceed against any one or more or all of us immediately upon a default in payment or otherwise. Any execution may be immediately levied upon any real or personal property of the undersigned, all rights of the undersigned to have personal property last taken and sold under such execution being hereby expressly waived.

_____
(Endorser)

_____
(Endorser)

_____
(Endorser)

©COPYRIGHT 2005, 2007 FINANCIAL FEDERAL CREDIT INC.

# SECURITY AGREEMENT

This Security Agreement dated **November 12, 2007** , is executed by **Charles Jeffries & Son Trucking, Inc.** ("Debtor") whose principal office (or residence) address is **13256 Highway 81 East, Cambridge, IL, 61238** in favor of **Financial Federal Credit Inc.** ("Secured Party") whose address is **4225 Naperville Road Suite 285, Lisle, IL, 60532.**

1. To secure the payment and performance of all indebtedness, obligations and liabilities of Debtor to Secured Party of whatever kind, whether previously, contemporaneously, or subsequently incurred or created, whether direct or acquired from third parties, whether contingent or fixed, and whether of the same or different classes (including, without limiting the generality of the foregoing, all indebtedness, obligations and liabilities arising out of or relating to (i) advances, payments, loans, endorsements, guaranties, extensions of credit, financial accommodations and/or benefits granted or extended by Secured Party to or for the account of Debtor, (ii) notes, security agreements, lease agreements, rental agreements, installment sale contracts, bailment agreements, guaranties, and/or any other present or future agreements between Debtor and Secured Party, and/or (iii) expenses, charges, commissions and/or interest owing by Debtor to Secured Party or chargeable to Debtor by Secured Party), and all extensions, renewals and/or modifications of the foregoing (collectively, the "Obligations"), Debtor does hereby assign, transfer, pledge and grant to Secured Party a security interest/lien in/upon all property listed on any Schedule to this Agreement (the "Property"), and in all goods, inventory, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessions of and/or to all of the foregoing (collectively, including the Property, the "Collateral"). Debtor and Secured Party acknowledge that Secured Party may (but shall not be obligated to) make future loans or extensions of credit to or guaranteed by Debtor, refinance existing Obligations of or guaranteed by Debtor, or purchase from third parties loans or indebtedness of or guaranteed by Debtor, and Secured Party and Debtor agree that the Collateral shall be security for any and all such indebtedness.

2. Debtor hereby represents and warrants to Secured Party and covenants and agrees with Secured Party as follows: (a) All information supplied and statements made to Secured Party by or on behalf of Debtor relating to the Obligations or the Collateral are and shall be true, complete and accurate, whether supplied or made prior to, contemporaneously with or subsequent to the execution of this Agreement; (b) Debtor has good and marketable title to the Collateral, free and clear of any liens, security interests or encumbrances of any kind or nature whatsoever (except any claimed by Secured Party) and Debtor will warrant and defend the Collateral against all claims; (c) all Collateral listed on any Schedule to this Agreement is in Debtor's possession at the location shown above, unless a different location is disclosed on such Schedule for a particular item and shall at all times remain in Debtor's possession and control; (d) Debtor shall not change (i) its name, (ii) the location of any Collateral, or (iii) the location of (as applicable) Debtor's residence, principal place of business, executive office or the place where Debtor keeps its business records, without thirty (30) days prior written notice to Secured Party; (e) Debtor has full, unrestricted and lawful power and authority to sell and assign the Collateral, to grant Secured Party a security interest/lien therein/thereof as herein provided and to execute and perform this Agreement and all other instruments and agreements executed by Debtor in favor of Secured Party; (f) if a corporation, a partnership, or a limited liability company, Debtor is (as applicable): (i) duly formed, organized, validly existing and in good standing in the state of its incorporation or organization, (ii) duly qualified and in good standing in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) authorized by all requisite action of its stockholders and directors, partners or managers to execute, deliver and perform this Agreement; (g) Debtor shall cause Secured Party to have a security interest and lien in/upon the Collateral which at all times shall be duly perfected, enforceable and superior to any liens, encumbrances and interests other than Secured Party's, and Debtor shall not permit the Collateral or any portion thereof to be removed from the Continental United States, nor to be or become subject to any lien or encumbrance of any kind or nature whatsoever (except in favor of Secured Party), nor shall Debtor sell, pledge, grant any security interest in, encumber, assign, rent, lease, lend, destroy or otherwise transfer or dispose of, or permit the filing of a financing statement with respect to (except in favor of Secured Party) any Collateral, nor shall Debtor guarantee any obligation of any other person or entity except in favor of Secured Party, without the prior written consent of Secured Party in each instance; (h) Debtor shall comply (to the extent necessary to protect the Collateral and Secured Party's interest therein) with the provisions of all leases, mortgages, deeds of trust or other contracts affecting any premises where any Collateral is or may be located and with any rules, laws, orders, ordinances or statutes of any state, county, municipality or other authority having jurisdiction relating to such premises and/or the conduct of business thereon and/or use thereof; (i) Debtor shall, at Debtor's sole cost and expense, keep and maintain all Collateral in good condition and repair, and shall use and maintain the Collateral in accordance with all applicable manufacturer's specifications and warranties; (j) all Collateral shall at all times remain personalty and shall not become part of any realty to which it may be attached so that Secured Party shall have the unrestricted right (subject only to the terms of this Agreement) to remove all or any portion thereof from any premises where it may be located, and Debtor will obtain and deliver to Secured Party (in a form acceptable to Secured Party) waivers from all landlords, mortgagees and owners of such premises; (k) Debtor shall (at Debtor's expense) upon request by Secured Party, obtain, execute and deliver all assignments, certificates, financing statements or other documents, give further assurances and do all other acts and things as may be necessary to fully perfect Secured Party's interest in the Collateral and to protect, enforce or otherwise effectuate the terms of this Agreement; and (l) Secured Party has no obligation to lend or advance funds unless and until all representations, warranties, conditions and requirements contained herein have been satisfied including without limitation receipt by Secured Party of proof of ownership of the Collateral satisfactory to Secured Party in its sole discretion, and any applicable subordinations and/or lien releases as may be required by, and in a form acceptable to, Secured Party in its sole discretion. Debtor hereby irrevocably designates and appoints Secured Party as Debtor's agent and attorney-in-fact to sign and deliver all such assignments, certificates, financing statements and other documents necessary to perfect, protect, continue and/or enforce Secured Party's interest in the Collateral and to file same with the appropriate office(s). Debtor hereby authorizes Secured Party to file one or more financing statements in all appropriate locations.

3. Debtor hereby acknowledges the validity of and affirms all of the Obligations, agrees that they are and shall be secured by this Agreement and absolutely and unconditionally promises and agrees to punctually and fully pay and perform all Obligations. Debtor shall pay to Secured Party on demand, on any installment of the Obligations not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire unpaid indebtedness (whether by acceleration or otherwise) of any one or more of the Obligations, Debtor shall pay, on demand, interest on such matured indebtedness (excluding unpaid late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full.

4. Debtor shall insure the Collateral against all risks of loss or damage from every cause (including without limitation fire, theft, vandalism, accident, flood, earthquake and extended coverage) for not less than the full replacement value as determined by Secured Party in its sole discretion, and shall carry liability and property damage insurance covering the Collateral. All insurance shall be in form and amount and with licensed, solvent companies approved by Secured Party, and shall name Secured Party as sole loss payee. Debtor shall pay the premiums therefor and deliver said policies or duplicates to Secured Party. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Secured Party to give Secured Party 30 days prior written notice before the policy shall be modified or canceled and that Secured Party's coverage shall not be diminished or invalidated by any negligence, act or omission of Debtor. The proceeds of such insurance, at the option of Secured Party, shall be applied toward the replacement or repair of the Collateral or toward payment of the Obligations. Debtor hereby irrevocably appoints Secured Party as its attorney-in-fact and agent to make claim for, adjust, compromise, settle, receive payment of, and to sign all documents, checks and/or drafts in payment of or relating to any claim for loss or damage to the Collateral and for any returned premiums. If any required insurance expires, is canceled or modified, or is otherwise not in full force and effect, Secured Party may but need not obtain replacement insurance. Secured Party may but need not pay the premiums for insurance and/or replacement insurance and the amount of all premiums so paid by Secured Party shall be added to Debtor's obligations hereunder and shall be reimbursed to Secured Party on demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law) from the date paid by Secured Party until fully reimbursed by Debtor.

5. Secured Party shall have the right, at any reasonable time, to inspect all or any portion of the Collateral and/or Debtor's books and records. Debtor shall assist Secured Party in making any such inspection and Debtor shall reimburse Secured Party for its costs and expenses of making up to four such inspections per year. Upon request, Debtor shall, from time to time, furnish a current financial statement to Secured Party in form and content satisfactory to Secured Party, and shall provide annual certified financial statements within five (5) days of Secured Party's request therefor.

6. If Debtor shall fail to fully and timely pay, perform and fulfill any of its Obligations, covenants or agreements to or with Secured Party and/or if Debtor shall breach any of its warranties to Secured Party under this Agreement or otherwise, Secured Party shall have the option, in its sole discretion and without any obligation, to pay, perform, fulfill or cause the payment, performance or fulfillment of same on behalf of Debtor; and all costs and expenses incurred by Secured Party in connection therewith (including but not limited to attorneys' fees, bond premiums, court costs, costs of retaking, storing, preserving, selling and/or realizing on any Collateral) shall be added to the Obligations hereby secured and shall be payable by Debtor to Secured Party upon demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law), from the date advanced by Secured Party until fully repaid. Secured Party shall have no obligation to make any demand upon or give any notice to Debtor prior to the exercise of any of its rights under this paragraph; and neither the exercise nor the failure to exercise any such rights by Secured Party shall relieve Debtor of any default or constitute a waiver of Secured Party's right to enforce strict compliance with the terms of this Agreement at any time.

7. Debtor assumes all liability and risk of loss and agrees to defend, indemnify and hold Secured Party harmless from and against all claims, liabilities, causes of action and damages of any kind, including but not limited to injury to or death of any person(s) and for loss, damage or destruction of any property and for any fines, penalties, costs, expenses and charges in any way arising out of or related to the Obligations, this Agreement, the Collateral or its use, possession, storage, maintenance, repair, transportation or operation (including without limitation all costs and expenses of investigation, all attorneys' fees, court costs, arbitration expenses and costs, and all special, consequential, compensatory and punitive damages). Debtor, at its own cost and expense, shall use, operate, maintain, repair, transport and store the Collateral in a safe and careful manner in compliance with all applicable laws, rules and regulations (including without limitation those regulating hazardous substances, the environment and public health or safety), industry standards, insurance requirements and manufacturer's specifications and service bulletins. Debtor also assumes and agrees to indemnify, pay and hold harmless Secured Party and its directors, officers, employees and agents from all expenses, losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees that Secured Party may incur or sustain in obtaining or enforcing payment or performance of any of the Obligations or exercising its rights and remedies under this Agreement or in connection with any action, proceeding or appeal arising out of or related to this Agreement, the Obligations and/or the Collateral, whether brought by Debtor or any third party. The obligations of Debtor under this paragraph shall survive termination of this Agreement.

8. If any Event of Default exists, Secured Party without notice or demand may do one or more of the following, in any order, and such remedies shall be cumulative (none of which shall be exclusive but each is in addition to any other remedy available to Secured Party): (a) Secured Party may accelerate the maturity of the Obligations and declare same to be at once due and payable whereupon they shall be immediately due and payable; (b) Secured Party may require Debtor to pay all accrued interest, late charges, collection charges, reimbursement for any and all expenses incurred by Secured Party in enforcing any of the Obligations or this Agreement and reasonable attorneys' fees; (c) Secured Party may require Debtor to deliver any or all of the Collateral at Debtor's expense to such place or places as Secured Party may designate; (d) Secured Party may repossess/take possession of any or all of the Collateral wherever found, voluntarily or involuntarily, without notice, demand or legal process (Debtor, if permitted by applicable law, hereby waiving any right to notice or a hearing), and Secured Party may enter the premises where any or all Collateral are located and disconnect, render unusable, and remove any or all Collateral without liability to Debtor arising out of such entry, taking of possession or removal, and may use such premises without charge to store or show the Collateral for sale or other disposition; (e) Secured Party may sell the Collateral by public or private sale, hold, retain the Collateral in full or partial satisfaction of the indebtedness due to Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any claims or rights of Debtor; and/or (f) Secured Party may sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether or not stated herein. Failure or delay on the part of Secured Party to exercise any right or remedy hereunder shall not operate as a waiver thereof. Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are

COPYRIGHT 2004 FINANCIAL FEDERAL CREDIT INC.

FFCI SA/SA 1 (02/05)

sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale, plus all costs, expenses and damages incurred by Secured Party including but not limited to all legal fees whether or not suit is filed, allocable costs of in-house counsel, costs related to the repossession, reconditioning and disposition of the Collateral, and all incidental and consequential damages. No action taken by Secured Party shall release Debtor from any of its obligations to Secured Party. Debtor acknowledges and agrees that in any action or proceeding brought by Secured Party to obtain possession of any Collateral, Secured Party shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Debtor and if Debtor contests Secured Party's right to possession of any Collateral in any action or proceeding Debtor shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Debtor's unpaid obligations to Secured Party, whichever is less. The proceeds of any sale shall first be applied to the costs and expenses of Secured Party including but not limited to recovering, transporting, storing, refurbishing, and/or selling the items sold, attorneys' fees, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions. Secured Party may without prior notice to or demand-upon Debtor and with or without the exercise of any of Secured Party's other rights or remedies, apply toward the payment of Debtor's obligations (at any time owing to Secured Party), any checks, drafts, notes, balances, reserves, accounts and sums belonging to or owing to Debtor and coming into Secured Party's possession and for such purpose may endorse Debtor's name on any instrument or document payable to Debtor (whether for deposit, collection, discount or negotiation). Without notice to Debtor, Secured Party may make such applications or change applications of sums previously paid and/or to be paid to Secured Party, to such Obligations as Secured Party in its sole discretion may choose. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies.

9. Protest and all demands and notices of any action taken by Secured Party under this Agreement, or in connection with any Collateral, except as otherwise provided in this Agreement, are hereby waived by Debtor, and any indulgence of Secured Party, substitution for, exchange of or release of any person liable on the Obligations is hereby consented to. Debtor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest; waives notice of the amount of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations or any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its sole discretion, without notice to Debtor. In performing any act under this Agreement or any of the Obligations, time shall be of the essence and Secured Party's acceptance of partial or delinquent payments or performance, or failure or delay to exercise any right or remedy, shall not be a waiver of any obligation of Debtor or right of Secured Party nor constitute a waiver of any subsequent default.

10. This Agreement, Secured Party's rights hereunder and/or any of the Obligations may be assigned from time to time by Secured Party, and in any such case the assignee shall be entitled to all of the rights, privileges and remedies herein granted to Secured Party, and Debtor hereby waives and agrees not to assert against any assignee any defense, setoff, claim, recoupment or counterclaim Debtor may have against Secured Party or any prior assignee. Debtor shall not assign this Agreement nor any of Debtor's rights or obligations hereunder.

11. Debtor shall be in default hereunder upon the occurrence of any of the following (each an "Event of Default"): (a) Debtor or any endorser, guarantor, surety, accommodation party or other person liable for the payment or performance of any of the Obligations ("Other Liable Party") fails to pay when due any sum due to Secured Party (whether hereunder or under any other Obligation to Secured Party) or to timely perform any obligation, covenant, term or provision of this Agreement or any other instrument and/or agreement now or hereafter existing between the parties, or there exists any Event of Default thereunder; (b) any warranty, representation or statement made to Secured Party by or on behalf of Debtor or any Other Liable Party is false in any respect when made or thereafter becomes false or is breached; (c) Debtor's or any Other Liable Party's death, dissolution, termination of existence, insolvency, business failure, assignment for the benefit of creditors, bulk transfer, proceeding under any bankruptcy or insolvency law, being declared judicially incompetent, voluntary or involuntary consent to the appointment of a receiver, trustee, conservator, liquidator or legal guardian for them or any or all of their property; (d) a default under any indebtedness of Debtor or any Other Liable Party or any event permitting the holder of any such indebtedness to accelerate the maturity thereof, whether or not such event is cured; (e) the Collateral becomes, in the sole judgment of Secured Party, unsatisfactory or insufficient in character or value; (f) Secured Party in good faith believes that the prospect of payment or performance of any of the Obligations or this Agreement is impaired; (g) any change in the management, operation, ownership or control of Debtor or any Other Liable Party; (h) any attachment, levy or execution against Debtor and/or any Other Liable Party that is not released within 48 hours; (i) Debtor's or any Other Liable Party's affairs so change as to, in Secured Party's sole discretion, increase the credit risk involved and Secured Party thereby becomes insecure as to the performance of this Agreement or any other agreement with Debtor or such Other Liable Party; (j) Debtor shall incur, create, assume, cause or suffer to exist any mortgage, trust, lien, security interest, pledge, hypothecation or other encumbrance (other than Secured Party's interest therein) or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral, this Agreement, or any of Secured Party's interests under this Agreement or any of the Obligations; (k) Debtor shall sell, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral; (l) failure of Debtor to obtain or maintain insurance on the Collateral satisfactory to Secured Party in its sole discretion; or (m) any of the Obligations, this Agreement, the security interest or any provision hereof for any reason attributable to Debtor ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Debtor or Debtor shall deny that it has any further liability or obligation thereunder.

12. The term "Debtor" as used in this Agreement shall be construed as the singular or plural to correspond with the number of persons executing this instrument as Debtor. "Secured Party" and "Debtor" as used in this Agreement include the heirs, executors or administrators, successors, legal representatives, receivers, and assigns of those parties. If more than one person executes this Agreement as Debtor, their obligations under this Agreement shall be joint and several. Unless the context otherwise requires, terms used in this Agreement which are defined in the Uniform Commercial Code are used with the meaning as therein defined. THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. No termination, modification, waiver or amendment of or to this Agreement shall be effective unless in writing signed by Debtor and an officer (assistant vice president or higher) of Secured Party. If any provision of this Agreement is rendered or declared invalid, illegal or ineffective by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision shall only invalidate such provision to the extent so rendered or declared invalid, illegal or ineffective and shall not impair, invalidate or nullify the remainder of this Agreement which shall remain in full force and effect. THE PARTIES INTEND THAT THIS AGREEMENT AND EACH OF ITS TERMS BE VALID AND ENFORCEABLE AS WRITTEN AND, ACCORDINGLY, AGREE THAT THE VALIDITY AND ENFORCEABILITY OF THIS AGREEMENT AND EACH OF ITS TERMS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DEBTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS AGREEMENT WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF SECURED PARTY'S LOCATION AS SET FORTH IN THIS AGREEMENT.

13. Any notice or demand to Debtor hereunder or in connection herewith may be given and shall conclusively be deemed and considered to have been given and received upon the deposit thereof in the U.S. Mail, in writing, duly stamped and addressed to Debtor at the address set forth in this Agreement or at such other address of Debtor as Debtor shall have designated by notice in writing delivered to Secured Party. Actual notice to Debtor, however given or received, shall always be effective. DEBTOR, AS A MATERIAL INDUCEMENT FOR SECURED PARTY TO MAKE LOANS OR OTHER FINANCIAL ACCOMMODATIONS AVAILABLE TO DEBTOR, HEREBY: IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR DEBTOR AND IN DEBTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY MATTER ARISING HEREUNDER, PROVIDED THAT SECURED PARTY MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION; WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO DEBTOR AT DEBTOR'S ADDRESS AS PROVIDED HEREIN. THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL OF ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, CROSS-CLAIM, DEFENSE OR OFFSET INVOLVING DEBTOR, SECURED PARTY OR ANY PERSON CLAIMING ANY RIGHT OR INTEREST ACQUIRED FROM, THROUGH OR UNDER ANY OF THEM; AND DEBTOR FURTHER HEREBY WAIVES ANY AND ALL SPECIAL, EXEMPLARY, PUNITIVE AND CONSEQUENTIAL DAMAGES IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE ACTS OR OMISSIONS OF SECURED PARTY OR ANY ASSIGNEE.

14. If Secured Party is for any reason compelled to surrender any payment received pursuant to any of the Obligations, because such payment is determined to be void or voidable as a preference, fraudulent transfer, impermissible set off or recoupment, a diversion of trust funds, or for any other reason, then such Obligation(s) shall be reinstated, if necessary and shall continue in full force notwithstanding any contrary action which Secured Party or Debtor may have taken in reliance upon such payment. Any such contrary action so taken shall be without prejudice to Secured Party's rights under the Obligations and hereunder and shall be deemed to have been conditioned upon such payment having become final and irrevocable. The terms of paragraphs 1, 7, 10, 12, 13, 14 and 15 shall survive termination of this Agreement.

15. All agreements between Debtor and Secured Party, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall any interest contracted for, charged or received by Secured Party exceed the maximum amount permissible under applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to Secured Party in excess of the maximum lawful amount, the interest payable to Secured Party shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Secured Party shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of any principal and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of any principal, such excess shall be refunded to Debtor. All interest paid or agreed to be paid to Secured Party shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of any principal (including the period of any renewal or extension) so that the interest for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Debtor and Secured Party.

WITNESS (Attest if a corporation)

_____ (Title)

Subscribed and sworn to before me, the undersigned notary public, on the date above written.

_____
Notary public

DEBTOR: Charles Jeffries & Son Trucking, Inc.

BY: _____  Robert Jeffin  _____ Pres.
Name: _____ (Title)

BY: _____
Name: _____ (Title)

COPYRIGHT 2004 FINANCIAL FEDERAL CREDIT INC.

## SCHEDULE "A"

This schedule is attached to and becomes part of a certain Security Agreement dated November 12, 2007.

| QUANTITY | YEAR | MODEL | DESCRIPTION OF COLLATERAL | SERIAL NUMBER |
|---|---|---|---|---|
| One (1) | 2008 | | Wabash 53x102 Refrigerated Trailer with an attached Carrier Niagara X-2100A Refrigeration Unit, S/N: LAN91026525 | 1JJV532W88L062452 |
| One (1) | 2008 | | Wabash 53x102 Refrigerated Trailer with an attached Carrier Niagara X-2100A Refrigeration Unit, S/N: LAN91026526 | 1JJV532WX8L062453 |

Including all attachments, accessions and accessories to, and all proceeds of, all of the foregoing, including without limitation all insurance proceeds and all rental proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof.

This schedule is hereby verified correct and the undersigned acknowledge receipt of a copy.

Secured Party :
**Financial Federal Credit Inc.**

Debtor :
**Charles Jeffries & Son Trucking, Inc.**

By: _____
Name and Title:

By: _~Robert Jeffries~_ Pres _____
Name and Title:

Debtor :

By: _____
Name and Title:

Page 1 of 1                    Common/ScASpec (11/04)

EXHIBIT C

# PROMISSORY NOTE

| $141,930.00 | Cambridge | IL | May 16, 2008 |
|---|---|---|---|
| (Total of Note) | (City) | (State) | (Date) |

FOR VALUE RECEIVED, Charles Jeffries & Son Trucking, Inc. ("Maker") promises to pay to the order of Financial Federal Credit Inc. ("Holder"), at 4225 Naperville Road Suite 265, Lisle, IL 60532, or such other place as Holder may from time to time designate in writing, the amount of One Hundred Forty-One Thousand Nine Hundred Thirty Dollars and No Cents ($141,930.00), payable in consecutive monthly installments, as follows:

| 30 | installments, each in the amount of | $ 4,731.00 | ; then |
|---|---|---|---|
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | |

Said consecutive monthly installments shall commence on the 8th day of July, 2008, and continue on August 8, 2008 and on the same day of each month thereafter until the indebtedness evidenced hereby is paid in full. The Total of Note includes precomputed interest (at the "non-default interest rate") from the date hereof on the unpaid principal amount outstanding from time to time through the maturity of each installment (assuming that each installment will be received on its respective due date) (but in no event shall the rate of interest exceed any maximum permitted by applicable law). Maker shall also pay to Holder on demand, on each installment (of principal and/or interest) not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire indebtedness (whether by acceleration or otherwise), Maker shall pay, on demand, interest on the unpaid indebtedness (excluding accrued and unpaid interest and late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full. Unless prohibited by applicable law, during any period of time when Maker is in default under the terms of this Note, Maker shall pay interest on the unpaid principal amount outstanding from time to time at the maximum lawful daily rate, not to exceed 0.0666% per day, in place of the non-default interest rate set forth or implied in this Note, until the default is cured. Interest shall be calculated on the basis of a 360 day year and for the actual number of days elapsed, unless such calculation would cause the effective interest rate to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. Maker agrees to an effective rate of interest which is the rate stated or implied in this Note plus any additional sums or charges provided for herein or incident to the transaction of which this Note forms a part which are or may be deemed to be interest-under applicable law, but not more than the maximum amount permissible under applicable law.

Upon nonpayment when due of any amount owing hereunder, or if default occurs under any other obligation of Maker to Holder or under any security agreement, pledge, assignment, deed of trust, or any other instrument or document executed to evidence, secure, guarantee, govern or in any way pertain to the loan evidenced by this Note or any other obligation of Maker to Holder, Holder may, at its option, without notice or demand, accelerate the maturity of the accrued and unpaid indebtedness then outstanding under this Note and declare same to be at once due and payable whereupon it shall be and become immediately due and payable. Maker, all endorsers, guarantors and any other party liable on this Note also promise and agree to pay Holder's costs, expenses and reasonable attorneys' fees incurred in enforcing and/or collecting this Note. Maker, all endorsers, guarantors and any other party liable on this Note waive presentment for payment, demand, protest, notice of protest and notice of nonpayment, default and dishonor, notice of intent to accelerate, notice of acceleration, and further, to the extent allowed by law, waive all benefits of valuation, appraisement and exemption laws. Holder may, without notice, extend the time of payment of this Note, postpone the enforcement hereof, grant any other indulgence, add or release any party primarily or secondarily liable hereon and/or release or change any collateral securing this Note without affecting or diminishing Holder's right of recourse against Maker, all endorsers, guarantors and other parties liable on this Note, which right is hereby expressly reserved. As used in this Note, the term "Holder" includes any future holder of this Note. If more than one party signs this Note as Maker, the obligations of each of them shall be joint and several.

As a material inducement to Holder to advance funds or otherwise provide financial accommodations to or for the benefit of Maker and/or in consideration of Holder having previously done so, Maker agrees that in the event of any prepayment of any of Maker's indebtedness for borrowed money now or hereafter owing to Holder (whether evidenced hereby or otherwise), whether voluntary or involuntary, Maker shall simultaneously pay a prepayment premium equal to the sum of (a) two tenths percent (0.2%) of the principal amount then being prepaid multiplied by the number of calendar months between the date of such prepayment and the scheduled final maturity date of the indebtedness being prepaid, plus (b) three percent (3%) of the principal amount of the indebtedness then being prepaid, but not more than the maximum amount permitted by law. Any partial prepayment shall be applied first to accrued and unpaid late charges, then to any other fees or expenses payable hereunder, then to accrued and unpaid interest, with the remainder applied to reduction of principal; the amount and due date of the remaining scheduled installments shall not be affected, but the number of remaining installments will be reduced as a result of said partial prepayment.

Notwithstanding anything to the contrary in this Note or any related writing, all agreements between Maker and Holder, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall the interest contracted for, charged or received by Holder exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise been earned on the date of such acceleration, and Holder does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstance whatsoever, interest would otherwise be payable to Holder in excess of the maximum lawful amount, the

©COPYRIGHT 2005, 2007 FINANCIAL FEDERAL CREDIT INC. [TEXT CONTINUED ON REVERSE] FFCI SA/PN24 (04/07)

interest payable to Holder shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Holder shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal, such excess shall be refunded to Maker. All interest paid or agreed to be paid to Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Maker and Holder.

The proceeds from the loan evidenced by this Note are to be used for business purposes only, and no part thereof is to be used for primarily consumer, personal, family or household purposes. Maker acknowledges and agrees that Maker's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Maker in favor of Holder, whether now existing or hereafter executed.

THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. THIS NOTE MAY NOT BE CHANGED OR TERMINATED ORALLY.

MAKER _____        MAKER   Charles Jeffries & Son Trucking, Inc.

By: _____          By: _Robert C. Jeffries_____
Name: _____ Title             Name: _____ Title

_____
(Witness for all Makers)

## ENDORSEMENT

The undersigned do each (jointly and severally) unconditionally guarantee the prompt payment of the within Note at maturity or any time thereafter, or on default prior thereto, hereby waiving presentment for payment, demand, protest, notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of every kind and nature, and accepting all of its provisions and authorizing Holder, without notice to any one or more or all of us, to substitute debtors, and/or to grant one or more extensions in whole or in part, and/or to receive security or additional security for the payment hereof and/or to surrender, release or substitute any such security.

If any payment on this Note is not paid when due, then the remaining unpaid indebtedness shall, without notice or demand, become immediately due and payable, at the option of Holder, and may be recovered in any suit brought by the Holder of this Note against any one or more or all of us, at the option of Holder, whether such suit has been commenced against Maker or not, and in any such suit Maker may be joined with one or more or all of us, at the option of Holder.

The Holder of this Note shall not be required to look to any security given or held for the payment of this Note, but may proceed against any one or more or all of us immediately upon a default in payment or otherwise. Any execution may be immediately levied upon any real or personal property of the undersigned, all rights of the undersigned to have personal property last taken and sold under such execution being hereby expressly waived.

_____
(Endorser)

_____
(Endorser)

_____
(Endorser)

©COPYRIGHT 2005, 2007 FINANCIAL FEDERAL CREDIT INC.                    FFCI SA/PN24 (04/07)

# SECURITY AGREEMENT

This Security Agreement dated May 16, 2008, is executed by Charles Jeffries & Son Trucking, Inc. ("Debtor") whose principal office (or residence) address is 13256 Highway 81 East, Cambridge, IL, 61238 in favor of Financial Federal Credit Inc. ("Secured Party") whose address is 4225 Naperville Road Suite 265, Lisle, IL, 60532.

1. To secure the payment and performance of all indebtedness, obligations and liabilities of Debtor to Secured Party of whatever kind, whether previously, contemporaneously, or subsequently incurred or created, whether direct or acquired from third parties, whether contingent or fixed, and whether of the same or different classes (including, without limiting the generality of the foregoing, all indebtedness, obligations and liabilities arising out of or relating to (i) advances, payments, loans, endorsements, guaranties, extensions of credit, financial accommodations and/or benefits granted or extended by Secured Party to or for the account of Debtor, (ii) notes, security agreements, lease agreements, rental agreements, installment sale contracts, bailment agreements, guaranties, and/or any other present or future agreements between Debtor and Secured Party, and/or (iii) expenses, charges, commissions and/or interest owing by Debtor to Secured Party or chargeable to Debtor by Secured Party), and all extensions, renewals and/or modifications of the foregoing (collectively, the "Obligations"), Debtor does hereby assign, transfer, pledge and grant to Secured Party a security interest/lien in/upon all property listed on any Schedule to this Agreement (the "Property"), and in all goods, inventory, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all proceeds, insurance proceeds, substitutions; replacement parts, additions and accessions of and/or to all of the foregoing (collectively, including the Property, the "Collateral"). Debtor and Secured Party acknowledge that Secured Party may (but shall not be obligated to) make future loans or extensions of credit to or guaranteed by Debtor, refinance existing Obligations of or guaranteed by Debtor, or purchase from third parties loans or indebtedness of or guaranteed by Debtor, and Secured Party and Debtor agree that the Collateral shall be security for any and all such indebtedness.

2. Debtor hereby represents and warrants to Secured Party and covenants and agrees with Secured Party as follows: (a) All information supplied and statements made to Secured Party by or on behalf of Debtor relating to the Obligations or the Collateral are and shall be true, complete and accurate, whether supplied or made prior to, contemporaneously with or subsequent to the execution of this Agreement; (b) Debtor has good and marketable title to the Collateral, free and clear of any liens, security interests or encumbrances of any kind or nature whatsoever (except any claimed by Secured Party) and Debtor will warrant and defend the Collateral against all claims; (c) all Collateral listed on any Schedule to this Agreement is in Debtor's possession at the location shown above, unless a different location for a particular item is disclosed (i) on a certificate acknowledging delivery and acceptance thereof or (ii) on such Schedule, and shall at all times remain in Debtor's possession and control; (d) Debtor shall not change (i) its name, (ii) the location of any Collateral, or (iii) the location of (as applicable) Debtor's residence, principal place of business, executive office or the place where Debtor keeps its business records, without thirty (30) days prior written notice to Secured Party; (e) Debtor has full, unrestricted and lawful power and authority to sell and assign the Collateral, to grant Secured Party a security interest/lien therein/thereon as herein provided and to execute and perform this Agreement and all other instruments and agreements executed by Debtor in favor of Secured Party; (f) if an organization, Debtor is: (i) duly formed, organized, validly existing and in good standing in the state of its organization, (ii) duly qualified and in good standing in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) authorized by all requisite action of its stockholders, directors, partners, members and/or managers to execute, deliver and perform this Agreement; (g) Debtor shall cause Secured Party to have a security interest and lien in/upon the Collateral which at all times shall be duly perfected, enforceable and superior to any liens, encumbrances and interests other than Secured Party's, and Debtor shall not permit the Collateral or any portion thereof to be removed from the Continental United States, nor to be or become subject to any lien or encumbrance of any kind or nature whatsoever (except in favor of Secured Party), nor shall Debtor sell, pledge, grant any security interest in, encumber, assign, rent, lease, lend, destroy or otherwise transfer or dispose of, or permit the filing of a financing statement with respect to (except in favor of Secured Party) any Collateral, nor shall Debtor guarantee any obligation of any other person or entity except in favor of Secured Party, without the prior written consent of Secured Party in each instance; (h) Debtor shall comply (to the extent necessary to protect the Collateral and Secured Party's interest therein) with the provisions of all leases, mortgages, deeds of trust or other contracts affecting any premises where any Collateral is or may be located and with any rules, laws, orders, ordinances or statutes of any state, county, municipality or other authority having jurisdiction relating to such premises and/or the conduct of business thereon and/or use thereof; (i) Debtor shall, at Debtor's sole cost and expense, keep and maintain all Collateral in good condition and repair, and shall use and maintain the Collateral in accordance with all applicable manufacturer's specifications and warranties; (j) all Collateral shall at all times remain personalty and shall not become part of any realty to which it may be attached so that Secured Party shall have the unrestricted right (subject only to the terms of this Agreement) to remove all or any portion thereof from any premises where it may be located, and Debtor will obtain and deliver to Secured Party (in a form acceptable to Secured Party) waivers from all landlords, mortgagees and owners of such premises; (k) Debtor shall (at Debtor's expense) upon request by Secured Party, obtain, execute and deliver all assignments, certificates, financing statements or other documents, give further assurances and do all other acts and things as may be necessary to fully perfect Secured Party's interest in the Collateral and to protect, enforce or otherwise effectuate the terms of this Agreement; and (l) Secured Party has no obligation to lend or advance funds unless and until all representations, warranties, conditions and requirements contained herein have been satisfied including without limitation receipt by Secured Party of proof of ownership of the Collateral satisfactory to Secured Party in its sole discretion, and any applicable subordinations and/or lien releases as may be required by, and in a form acceptable to, Secured Party in its sole discretion. Debtor hereby irrevocably designates and appoints Secured Party as Debtor's agent and attorney-in-fact to sign and deliver all such assignments, certificates, financing statements and other documents necessary to perfect, protect, continue and/or enforce Secured Party's interest in the Collateral and to file same with the appropriate office(s). Debtor hereby authorizes Secured Party to file one or more financing statements in all appropriate locations.

3. Debtor hereby acknowledges the validity of and affirms all of the Obligations, agrees that they are and shall be secured by this Agreement and absolutely and unconditionally promises and agrees to punctually and fully pay and perform all Obligations. Debtor shall pay to Secured Party on demand, on any installment of the Obligations not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire unpaid indebtedness (whether by acceleration or otherwise) of any one or more of the Obligations, Debtor shall pay, on demand, interest on such matured indebtedness (excluding unpaid late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full.

4. Debtor shall insure the Collateral against all risks of loss or damage from every cause (including without limitation fire, theft, vandalism, accident, flood, earthquake and extended coverage) for not less than the full replacement value as determined by Secured Party in its sole discretion, and shall carry liability and property damage insurance covering the Collateral. All insurance shall be in form and amount and with licensed, solvent companies approved by Secured Party, and shall name Secured Party as sole loss payee. Debtor shall pay the premiums therefor and deliver said policies or duplicates to Secured Party. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Secured Party to give Secured Party 30 days prior written notice before the policy shall be modified or canceled and that Secured Party's coverage shall not be diminished or invalidated by any negligence, act or omission of Debtor. The proceeds of such insurance, at the option of Secured Party, shall be applied toward the replacement or repair of the Collateral or toward payment of the Obligations. Debtor hereby irrevocably appoints Secured Party as its attorney-in-fact and agent to make claim for, adjust, compromise, settle, receive payment of, and to sign all documents, checks and/or drafts in payment of or relating to any claim for loss of or damage to the Collateral and for any returned premiums. If any required insurance expires, is canceled or modified, or is otherwise not in full force and effect, Secured Party may but need not obtain replacement insurance. Secured Party may but need not pay the premiums for insurance and/or replacement insurance and the amount of all premiums so paid by Secured Party shall be added to Debtor's obligations hereunder and shall be reimbursed to Secured Party on demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law) from the date paid by Secured Party until fully reimbursed by Debtor.

5. Secured Party shall have the right, at any reasonable time, to inspect all or any portion of the Collateral and/or Debtor's books and records. Debtor shall assist Secured Party in making any such inspection and Debtor shall reimburse Secured Party for its costs and expenses of making up to four such inspections per year. Upon request, Debtor shall, from time to time, furnish a current financial statement to Secured Party in form and content satisfactory to Secured Party, and shall provide annual certified financial statements within five (5) days of Secured Party's request therefor.

6. If Debtor shall fail to fully and timely pay, perform and fulfill any of its Obligations, covenants or agreements to or with Secured Party and/or if Debtor shall breach any of its warranties to Secured Party under this Agreement or otherwise, Secured Party shall have the option, in its sole discretion and without any obligation, to pay, perform, fulfill or cause the payment, performance or fulfillment of same on behalf of Debtor; and all costs and expenses incurred by Secured Party in connection therewith (including but not limited to attorneys' fees, bond premiums, court costs, costs of retaking, storing, preserving, selling and/or realizing on any Collateral) shall be added to the Obligations hereby secured and shall be payable by Debtor to Secured Party upon demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law), from the date advanced by Secured Party until fully repaid. Secured Party have no obligation to make any demand upon or give any notice to Debtor prior to the exercise of any of its rights under this paragraph; and neither the exercise nor the failure to exercise any such rights by Secured Party shall relieve Debtor of any default or constitute a waiver of Secured Party's right to enforce strict compliance with the terms of this Agreement at any time.

7. Debtor assumes all liability and risk of loss and agrees to defend, indemnify and hold Secured Party harmless from and against all claims, liabilities, causes of action and damages of any kind, including but not limited to injury to or death of any person(s) and for loss, damage or destruction of any property and for any fines, penalties, costs, expenses and charges in any way arising out of or related to the Obligations, this Agreement, the Collateral or its use, possession, storage, maintenance, repair, transportation or operation (including without limitation all costs and expenses of investigation, all attorneys' fees, court costs, arbitration expenses and costs, and all special, consequential, compensatory and punitive damages). Debtor, at its own cost and expense, shall use, operate, maintain, repair, transport and store the Collateral in a safe and careful manner in compliance with all applicable laws, rules and regulations (including without limitation those regulating hazardous substances, the environment and public health or safety), industry standards, insurance requirements and manufacturer's specifications and service bulletins. Debtor also assumes and agrees to indemnify, pay and hold harmless Secured Party and its directors, officers, employees and agents from all expenses, losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees that Secured Party may incur or sustain in obtaining or enforcing payment or performance of any of the Obligations or exercising its rights and remedies under this Agreement or in connection with any action, proceeding or appeal arising out of or related to this Agreement, the Obligations and/or the Collateral, whether brought by Debtor or any third party. The obligations of Debtor under this paragraph shall survive termination of this Agreement.

8. If any Event of Default exists, Secured Party without notice or demand may do one or more of the following, in any order, and such remedies shall be cumulative (none of which shall be exclusive but each is in addition to any other remedy available to Secured Party): (a) Secured Party may accelerate the maturity of the Obligations and declare same to be at once due and payable whereupon they shall be immediately due and payable; (b) Secured Party may require Debtor to pay all accrued interest, late charges, collection charges, reimbursement for any and all expenses incurred by Secured Party in enforcing any of the Obligations or this Agreement and reasonable attorneys' fees; (c) Secured Party may require Debtor to deliver any or all of the Collateral at Debtor's expense to such place or places as Secured Party may designate; (d) Secured Party may repossess/take possession of any or all of the Collateral wherever found, voluntarily or involuntarily, without notice, demand or legal process (Debtor, if permitted by applicable law, hereby waiving any right to notice or a hearing), and Secured Party may enter the premises where any or all Collateral are located and disconnect, render unusable, and remove any or all Collateral without liability to Debtor arising out of such entry, taking of possession or removal, and may use such premises without charge to store or show the Collateral for sale or other disposition; (e) Secured Party may sell the Collateral by public or private sale, hold, retain the Collateral in full or partial satisfaction of the indebtedness due to Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any claims or rights of Debtor; and/or (f) Secured Party may sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether or not stated herein. Failure or delay on the part of Secured Party to exercise any right or remedy hereunder shall not operate as a waiver thereof. Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are

© COPYRIGHT 2004, 2007 FINANCIAL FEDERAL CREDIT INC.

FFCI SA/SA 1 (11/07)

sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale, plus all costs, expenses and damages incurred by Secured Party including but not limited to all legal fees whether or not suit is filed, allocable costs of in-house counsel, costs related to the repossession, reconditioning and disposition of the Collateral, and all incidental and consequential damages. No action taken by Secured Party shall release Debtor from any of its obligations to Secured Party. Debtor acknowledges and agrees that in any action or proceeding brought by Secured Party to obtain possession of any Collateral, Secured Party shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Debtor and if Debtor contests Secured Party's right to possession of any Collateral in any action or proceeding Debtor shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Debtor's unpaid obligations to Secured Party, whichever is less. The proceeds of any sale shall first be applied to the costs and expenses of Secured Party including but not limited to recovering, transporting, storing, refurbishing, and/or selling the items sold, attorneys' fees, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions. Secured Party may without prior notice to or demand upon Debtor and with or without the exercise of any of Secured Party's other rights or remedies, apply toward the payment of Debtor's obligations (at any time owing to Secured Party) any checks, drafts, notes, balances, reserves, accounts and sums belonging to or owing to Debtor and coming into Secured Party's possession and for such purpose may endorse Debtor's name on any instrument or document payable to Debtor (whether for deposit, collection, discount or negotiation). Without notice to Debtor, Secured Party may make such applications or change applications of sums previously paid and/or to be paid to Secured Party, to such Obligations as Secured Party in its sole discretion may choose. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies.

9.   Protest and all demands and notices of any action taken by Secured Party under this Agreement, or in connection with any Collateral, except as otherwise provided in this Agreement, are hereby waived by Debtor, and any indulgence of Secured Party, substitution for, exchange of or release of any person liable on the Obligations is hereby consented to.  Debtor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest; waives notice of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations or any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its sole discretion, without notice to Debtor. In performing any act under this Agreement or any of the Obligations, time shall be of the essence and Secured Party's acceptance of partial or delinquent payments or performance, or failure or delay to exercise any right or remedy, shall not be a waiver of any obligation of Debtor or right of Secured Party nor constitute a waiver of any subsequent default.

10.   This Agreement, Secured Party's rights hereunder and/or any of the Obligations may be assigned from time to time by Secured Party, and in any such case the assignee shall be entitled to all of the rights, privileges and remedies herein granted to Secured Party; and Debtor hereby waives and agrees not to assert against any assignee any defense, setoff, claim, racoupment or counterclaim Debtor may have against Secured Party or any prior assignee.  Debtor shall not assign this Agreement nor any of Debtor's rights or obligations hereunder.

11.   Debtor shall be in default hereunder upon the occurrence of any of the following (each an "Event of Default"): (a) Debtor or any endorser, guarantor, surety, accommodation party or other person liable for the payment or performance of any of the Obligations ("Other Liable Party") fails to pay when due any sum due to Secured Party (whether hereunder or under any other Obligation to Secured Party) or to timely perform any obligation, covenant, term or provision of this Agreement or any other instrument and/or agreement now or hereafter existing between the parties, or there exists any Event of Default thereunder; (b) any warranty, representation or statement made to Secured Party by or on behalf of Debtor or any Other Liable Party is false in any respect when made or thereafter becomes false or is breached; (c) Debtor's or any Other Liable Party's death, dissolution, termination of existence, insolvency, business failure, assignment for the benefit of creditors, bulk transfer, proceeding under any bankruptcy or insolvency law, being declared judicially incompetent, voluntary or involuntary consent to the appointment of a receiver, trustee, conservator, liquidator or legal guardian for them or any or all of their property; (d) a default under any indebtedness of Debtor or any Other Liable Party or any event permitting the holder of any such indebtedness to accelerate the maturity thereof, whether or not such event is cured; (e) the Collateral becomes, in the sole judgment of Secured Party, unsatisfactory or insufficient in character or value; (f) Secured Party in good faith believes the prospect of payment or performance of any of the Obligations or this Agreement is impaired; (g) any change in the management, operation, ownership or control of Debtor or any Other Liable Party; (h) any attachment, levy or execution against Debtor and/or any Other Liable Party that is not released within 48 hours; (i) Debtor's or any Other Liable Party's affairs so change as to, in Secured Party's sole discretion, increase the credit risk involved and Secured Party thereby becomes insecure as to the performance of this Agreement or any other agreement with Debtor or such Other Liable Party; (j) Debtor shall incur, create, assume, cause or suffer to exist any mortgage, trust, lien, security interest, pledge, hypothecation or other encumbrance (other than Secured Party's interest therein) or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral, this Agreement, or any of Secured Party's interests under this Agreement or any of the Obligations; (k) Debtor shall sell, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral; (l) failure of Debtor to obtain or maintain insurance on the Collateral satisfactory to Secured Party in its sole discretion; or (m) any of the Obligations, this Agreement, the security interest or any provision hereof for any reason attributable to Debtor ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Debtor or Debtor shall deny that it has any further liability or obligation thereunder.

12.   The term "Debtor" as used in this Agreement shall be construed as the singular or plural to correspond with the number of persons executing this instrument as Debtor. "Secured Party" and "Debtor" as used in this Agreement include the heirs, executors or administrators, successors, legal representatives, receivers, and assigns of those parties. If more than one person executes this Agreement as Debtor, their obligations under this Agreement shall be joint and several. Unless the context otherwise requires, terms used in this Agreement which are defined in the Uniform Commercial Code are used with the meaning as therein defined. THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. No termination, modification, waiver or amendment of or to this Agreement shall be effective unless in writing signed by Debtor and an officer (assistant vice president or higher) of Secured Party. If any provision of this Agreement is rendered or declared invalid, illegal or ineffective by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision shall only invalidate such provision to the extent so rendered or declared invalid, illegal or ineffective and shall not impair, invalidate or nullify the remainder of this Agreement which shall remain in full force and effect. THE PARTIES INTEND THAT THIS AGREEMENT AND EACH OF ITS TERMS BE VALID AND ENFORCEABLE AS WRITTEN AND, ACCORDINGLY, AGREE THAT THE VALIDITY AND ENFORCEABILITY OF THIS AGREEMENT AND EACH OF ITS TERMS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DEBTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS AGREEMENT WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF SECURED PARTY'S LOCATION AS SET FORTH IN THIS AGREEMENT.

13.   Any notice or demand to Debtor hereunder or in connection herewith may be given and shall conclusively be deemed and considered to have been given and received upon the deposit thereof in the U.S. Mail, in writing, duly stamped and addressed to Debtor at the address set forth in this Agreement or at such other address of Debtor as Debtor shall have designated by notice in writing delivered to Secured Party.  Actual notice to Debtor, however given or received, shall always be effective. DEBTOR, AS A MATERIAL INDUCEMENT FOR SECURED PARTY TO MAKE LOANS OR OTHER FINANCIAL ACCOMMODATIONS AVAILABLE TO DEBTOR, HEREBY: IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR DEBTOR AND IN DEBTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY DISPUTE WITH HOLDER OR ANY OF HOLDER'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, INCLUDING WITHOUT LIMITATION ANY MATTER RELATING TO OR ARISING UNDER THIS OR ANY OTHER EXISTING OR FUTURE AGREEMENT WITH HOLDER, PROVIDED THAT HOLDER MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION; WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO DEBTOR AT DEBTOR'S ADDRESS AS PROVIDED HEREIN. THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL OF ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, CROSS-CLAIM, DEFENSE OR OFFSET INVOLVING DEBTOR, SECURED PARTY OR ANY PERSON CLAIMING ANY RIGHT OR INTEREST ACQUIRED FROM, THROUGH OR UNDER ANY OF THEM; AND DEBTOR FURTHER HEREBY WAIVES ANY AND ALL SPECIAL, EXEMPLARY, PUNITIVE AND CONSEQUENTIAL DAMAGES IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE ACTS OR OMISSIONS OF SECURED PARTY OR ANY ASSIGNEE.

14.   If Secured Party is for any reason compelled to surrender any payment received pursuant to any of the Obligations, because such payment is determined to be void or voidable as a preference, fraudulent transfer, impermissible set off or recoupment, a diversion of trust funds, or for any other reason, then such Obligation(s) shall be reinstated, if necessary and shall continue in full force notwithstanding any contrary action which Secured Party or Debtor may have taken in reliance upon such payment. Any such contrary action so taken shall be without prejudice to Secured Party's rights under the Obligations and hereunder and shall be deemed to have been conditioned upon such payment having become final and irrevocable. The terms of paragraphs 1, 7, 10, 12, 13, 14 and 15 shall survive termination of this Agreement.

15.   All agreements between Debtor and Secured Party, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall any interest contracted for, charged or received by Secured Party exceed the maximum amount permissible under applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to Secured Party in excess of the maximum lawful amount, the interest payable to Secured Party shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Secured Party shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of any principal and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of any principal, such excess shall be refunded to Debtor. All interest paid or agreed to be paid to Secured Party shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of any principal (including the period of any renewal or extension) so that the interest for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Debtor and Secured Party.

WITNESS (Attest if a corporation)

_____ (Title)

Subscribed and sworn to before me, the undersigned notary public, on the date above written.

_____
Notary public

DEBTOR:   Charles Jeffries & Son Trucking, Inc.

BY: _____

Name: _____ (Title)

BY: _____

Name: _____ (Title)

© COPYRIGHT 2004, 2007 FINANCIAL FEDERAL CREDIT INC.          FFCI SA/SA 1 (11/07)

# SCHEDULE "A"

This schedule is attached to and becomes part of a certain Security Agreement dated May 16, 2008.

| QUANTITY | YEAR | MODEL | DESCRIPTION OF COLLATERAL | SERIAL NUMBER |
|----------|------|-------|--------------------------|---------------|
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 08467Z5386 | 1JJV532W15L940119 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 08467Z5387 | 1JJV532W85L940120 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 08467Z5388 | 1JJV532WX5L940121 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 08467Z5399 | 1JJV532W15L940122 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 11467Z0553 | 1JJV532W35L940123 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 10467Z8383 | 1JJV532W55L940124 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 10467Z8762 | 1JJV532W75L940125 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 10467Z8763 | 1JJV532W95L940126 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 10467Z8765 | 1JJV532W05L940127 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 10467Z9271 | 1JJV532W45L940129 |

Including all attachments, accessions and accessories to, and all proceeds of, all of the foregoing, including without limitation all insurance proceeds and all rental proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof.

This schedule is hereby verified correct and the undersigned acknowledge receipt of a copy.

Secured Party:
Financial Federal Credit Inc.

Debtor:
Charles Jeffries & Son Trucking, Inc.

By: _____
    Name and Title:

By: _~Robert C. Jeffrie~_____
    Name and Title:

Debtor:

By: _____
    Name and Title:

Common/ScASpec (11/04)

EXHIBIT D

# Rider to Promissory Note

**Date: September 24, 2008**

This Rider is attached to and made a part of that certain Promissory Note dated May 16, 2008, executed by Charles Jeffries & Son Trucking, Inc. as Maker and payable to Financial Federal Credit Inc. ("FFCI"). The Promissory Note is hereby modified as follows:

1. Commencing with the installment due on October 8, 2008, the schedule of remaining installments due under the terms of the Note is hereby modified as follows:

   **Twenty-Seven (27) installments, each in the amount of $3,750.00.**

2. Except as expressly set forth herein, all terms and conditions of the Promissory Note and all other agreements, instruments or documents executed by Maker in favor of FFCI remain in full force and effect, and are hereby ratified and confirmed.

**Charles Jeffries & Son Trucking, Inc.**

By: _Robert C. Jeffries_____
Name   Robert C. Jeffries
Title    President

Financial Federal Credit Inc.

By: _____
Name
Title

EXHIBIT E

# PROMISSORY NOTE

| $142,260.00 | Cambridge | IL | May 16, 2008 |
|---|---|---|---|
| (Total of Note) | (City) | (State) | (Date) |

FOR VALUE RECEIVED, Charles Jeffries & Son Trucking, Inc. ("Maker") promises to pay to the order of Financial Federal Credit Inc. ("Holder"), at 4225 Naperville Road Suite 265, Lisle, IL 60532, or such other place as Holder may from time to time designate in writing, the amount of One Hundred Forty-Two Thousand Two Hundred Sixty Dollars and No Cents ($142,260.00), payable in consecutive monthly installments, as follows:

| | | | |
|---|---|---|---|
| 30 | installments, each in the amount of | $ 4,742.00 | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | |

Said consecutive monthly installments shall commence on the 15th day of July, 2008, and continue on August 15, 2008 and on the same day of each month thereafter until the indebtedness evidenced hereby is paid in full. The Total of Note includes precomputed interest (at the "non-default interest rate") from the date hereof on the unpaid principal amount outstanding from time to time through the maturity of each installment (assuming that each installment will be received on its respective due date) (but in no event shall the rate of interest exceed any maximum permitted by applicable law). Maker shall also pay to Holder on demand, on each installment (of principal and/or interest) not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire indebtedness (whether by acceleration or otherwise), Maker shall pay, on demand, interest on the unpaid indebtedness (excluding accrued and unpaid interest and late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full. Unless prohibited by applicable law, during any period of time when Maker is in default under the terms of this Note, Maker shall pay interest on the unpaid principal amount outstanding from time to time at the maximum lawful daily rate, not to exceed 0.0666% per day, in place of the non-default interest rate set forth or implied in this Note, until the default is cured. Interest shall be calculated on the basis of a 360 day year and for the actual number of days elapsed, unless such calculation would cause the effective interest rate to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. Maker agrees to an effective rate of interest which is the rate stated or implied in this Note plus any additional sums or charges provided for herein or incident to the transaction of which this Note forms a part which are or may be deemed to be interest under applicable law, but not more than the maximum amount permissible under applicable law.

Upon nonpayment when due of any amount owing hereunder, or if default occurs under any other obligation of Maker to Holder or under any security agreement, pledge, assignment, deed of trust, or any other instrument or document executed to evidence, secure, guarantee, govern or in any way pertain to the loan evidenced by this Note or any other obligation of Maker to Holder, Holder may, at its option, without notice or demand, accelerate the maturity of the accrued and unpaid indebtedness then outstanding under this Note and declare same to be at once due and payable whereupon it shall be and become immediately due and payable. Maker, all endorsers, guarantors and any other party liable on this Note also promise and agree to pay Holder's costs, expenses and reasonable attorneys' fees incurred in enforcing and/or collecting this Note. Maker, all endorsers, guarantors and any other party liable on this Note waive presentment for payment, demand, protest, notice of protest and notice of nonpayment, default and dishonor, notice of intent to accelerate, notice of acceleration, and further, to the extent allowed by law, waive all benefits of valuation, appraisement and exemption laws. Holder may, without notice, extend the time of payment of this Note, postpone the enforcement hereof, grant any other indulgence, add or release any party primarily or secondarily liable hereon and/or release or change any collateral securing this Note without affecting or diminishing Holder's right of recourse against Maker, all endorsers, guarantors and other parties liable on this Note, which right is hereby expressly reserved. As used in this Note, the term "Holder" includes any future holder of this Note. If more than one party signs this Note as Maker, the obligations of each of them shall be joint and several.

As a material inducement to Holder to advance funds or otherwise provide financial accommodations to or for the benefit of Maker and/or in consideration of Holder having previously done so, Maker agrees that in the event of any prepayment of any of Maker's indebtedness for borrowed money now or hereafter owing to Holder (whether evidenced hereby or otherwise), whether voluntary or involuntary, Maker shall simultaneously pay a prepayment premium equal to the sum of (a) two tenths percent (0.2%) of the principal amount then being prepaid multiplied by the number of calendar months between the date of such prepayment and the scheduled final maturity date of the indebtedness being prepaid, plus (b) three percent (3%) of the principal amount of the indebtedness then being prepaid, but not more than the maximum amount permitted by law. Any partial prepayment shall be applied first to accrued and unpaid late charges, then to any other fees or expenses payable hereunder, then to accrued and unpaid interest, with the remainder applied to reduction of principal; the amount and due date of the remaining scheduled installments shall not be affected, but the number of remaining installments will be reduced as a result of said partial prepayment.

Notwithstanding anything to the contrary in this Note or any related writing, all agreements between Maker and Holder, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall the interest contracted for, charged or received by Holder exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise been earned on the date of such acceleration, and Holder does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstance whatsoever, interest would otherwise be payable to Holder in excess of the maximum lawful amount, the interest payable to Holder shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Holder shall ever

©COPYRIGHT 2005, 2007 FINANCIAL FEDERAL CREDIT INC. [TEXT CONTINUED ON REVERSE] FFCI SA/PN2M (04/07)

receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal, such excess shall be refunded to Maker. All interest paid or agreed to be paid to Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Maker and Holder.

The proceeds from the loan evidenced by this Note are to be used for business purposes only, and no part thereof is to be used for primarily consumer, personal, family or household purposes. Maker acknowledges and agrees that Maker's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Maker in favor of Holder, whether now existing or hereafter executed.

THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. THIS NOTE MAY NOT BE CHANGED OR TERMINATED ORALLY.

MAKER _____     MAKER   Charles Jeffries & Son Trucking, Inc. _____

By: _____        By: _Robert G. Jeffries_____
Name: _____ Title       Name: _____ Title

_____
(Witness for all Makers)

## ENDORSEMENT

The undersigned do each (jointly and severally) unconditionally guarantee the prompt payment of the within Note at maturity or any time thereafter, or on default prior thereto, hereby waiving presentment for payment, demand, protest, notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of every kind and nature, and accepting all of its provisions and authorizing Holder, without notice to any one or more or all of us, to substitute debtors, and/or to grant one or more extensions in whole or in part, and/or to receive security or additional security for the payment hereof and/or to surrender, release or substitute any such security.

If any payment on this Note is not paid when due, then the remaining unpaid indebtedness shall, without notice or demand, become immediately due and payable, at the option of Holder, and may be recovered in any suit brought by the Holder of this Note against any one or more or all of us, at the option of Holder, whether such suit has been commenced against Maker or not, and in any such suit Maker may be joined with one or more or all of us, at the option of Holder.

The Holder of this Note shall not be required to look to any security given or held for the payment of this Note, but may proceed against any one or more or all of us immediately upon a default in payment or otherwise. Any execution may be immediately levied upon any real or personal property of the undersigned, all rights of the undersigned to have personal property last taken and sold under such execution being hereby expressly waived.

_____
(Endorser)

_____
(Endorser)

_____
(Endorser)

©COPYRIGHT 2005, 2007 FINANCIAL FEDERAL CREDIT INC.

# SECURITY AGREEMENT

This Security Agreement dated May 16, 2008, is executed by Charles Jeffries & Son Trucking, Inc. ("Debtor") whose principal office (or residence) address is 13256 Highway 81 East, Cambridge, IL, 61238 in favor of Financial Federal Credit Inc. ("Secured Party") whose address is 4225 Naperville Road Suite 265, Lisle, IL, 60532.

1. To secure the payment and performance of all indebtedness, obligations and liabilities of Debtor to Secured Party of whatever kind, whether previously, contemporaneously, or subsequently incurred or created, whether direct or acquired from third parties, whether contingent or fixed, and whether of the same or different classes (including, without limiting the generality of the foregoing, all indebtedness, obligations and liabilities arising out of or relating to (i) advances, payments, loans, endorsements, guaranties, extensions of credit, financial accommodations and/or benefits granted or extended by Secured Party to or for the account of Debtor, (ii) notes, security agreements, lease agreements, rental agreements, installment sale contracts, bailment agreements, guaranties, and/or any other present or future agreements between Debtor and Secured Party, and/or (iii) expenses, charges, commissions and/or interest owing by Debtor to Secured Party or chargeable to Debtor by Secured Party), and all extensions, renewals and/or modifications of the foregoing (collectively, the "Obligations"), Debtor does hereby assign, transfer, pledge and grant to Secured Party a security interest in/upon all property listed on any Schedule to this Agreement (the "Property"), and in all goods, inventory, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessions of and/or to all of the foregoing (collectively, including the Property, the "Collateral"). Debtor and Secured Party acknowledge that Secured Party may (but shall not be obligated to) make future loans or extensions of credit to or guaranteed by Debtor, refinance existing Obligations of or guaranteed by Debtor, or purchase from third parties loans or indebtedness of or guaranteed by Debtor, and Secured Party and Debtor agree that the Collateral shall be security for any and all such indebtedness.

2. Debtor hereby represents and warrants to Secured Party and covenants and agrees with Secured Party as follows: (a) All information supplied and statements made to Secured Party by or on behalf of Debtor relating to the Obligations or the Collateral are and shall be true, complete and accurate, whether supplied or made prior to, contemporaneously with or subsequent to the execution of this Agreement; (b) Debtor has good and marketable title to the Collateral, free and clear of any liens, security interests or encumbrances of any kind or nature whatsoever (except any claimed by Secured Party) and Debtor will warrant and defend the Collateral against all claims; (c) all Collateral listed on any Schedule to this Agreement is in Debtor's possession at the location shown above, unless a different location for a particular item is disclosed (i) on a certificate acknowledging delivery and acceptance thereof or (ii) on such Schedule, and shall at all times remain in Debtor's possession and control; (d) Debtor shall not change (i) its name, (ii) the location of any Collateral, or (iii) the location of (as applicable) Debtor's residence, principal place of business, executive office or the place where Debtor keeps its business records, without thirty (30) days prior written notice to Secured Party; (e) Debtor has full, unrestricted and lawful power and authority to sell and assign the Collateral, to grant Secured Party a security interest/lien therein/thereon as herein provided and to execute and perform this Agreement and all other instruments and agreements executed by Debtor in favor of Secured Party; (f) if an organization, Debtor is: (i) duly formed, organized, validly existing and in good standing in the state of its organization, (ii) duly qualified and in good standing in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) authorized by all requisite action of its stockholders, directors, partners, members and/or managers to execute, deliver and perform this Agreement; (g) Debtor shall cause Secured Party to have a security interest and lien in/upon the Collateral which at all times shall be duly perfected, enforceable and superior to any liens, encumbrances and interests other than Secured Party's, and Debtor shall not permit the Collateral or any portion thereof to be removed from the Continental United States, nor to be or become subject to any lien or encumbrance of any kind or nature whatsoever (except in favor of Secured Party), nor shall Debtor sell, pledge, grant any security interest in, encumber, assign, rent, lease, lend, destroy or otherwise transfer or dispose of, or permit the filing of a financing statement with respect to (except in favor of Secured Party) any Collateral, nor shall Debtor guarantee any obligation of any other person or entity except in favor of Secured Party, without the prior written consent of Secured Party in each instance; (h) Debtor shall comply (to the extent necessary to protect the Collateral and Secured Party's interest therein) with the provisions of all leases, mortgages, deeds of trust or other contracts affecting any premises where any Collateral is or may be located and with any rules, laws, orders, ordinances or statutes of any state, county, municipality or other authority having jurisdiction relating to such premises and/or the conduct of business thereon and/or use thereof; (i) Debtor shall, at Debtor's sole cost and expense, keep and maintain all Collateral in good condition and repair, and shall use and maintain the Collateral in accordance with all applicable manufacturer's specifications and warranties; (j) all Collateral shall at all times remain personalty and shall not become part of any realty to which it may be attached so that Secured Party shall have the unrestricted right (subject only to the terms of this Agreement) to remove all or any portion thereof from any premises where it may be located, and Debtor will obtain and deliver to Secured Party (in a form acceptable to Secured Party) waivers from all landlords, mortgagees and owners of such premises; (k) Debtor shall (at Debtor's expense) upon request by Secured Party, obtain, execute and deliver all assignments, certificates, financing statements or other documents, give further assurances and do all other acts and things as may be necessary to fully perfect Secured Party's interest in the Collateral and to protect, enforce or otherwise effectuate the terms of this Agreement; and (l) Secured Party has no obligation to lend or advance funds unless and until all representations, warranties, conditions and requirements contained herein have been satisfied including without limitation receipt by Secured Party of proof of ownership of the Collateral satisfactory to Secured Party in its sole discretion, and any applicable subordinations and/or lien releases as may be required by, and in a form acceptable to, Secured Party in its sole discretion. Debtor hereby irrevocably designates and appoints Secured Party as Debtor's agent and attorney-in-fact to sign and deliver all such assignments, certificates, financing statements and other documents necessary to perfect, protect, continue and/or enforce Secured Party's interest in the Collateral and to file same with the appropriate office(s). Debtor hereby authorizes Secured Party to file one or more financing statements in all appropriate locations.

3. Debtor hereby acknowledges the validity of and affirms all of the Obligations, agrees that they are and shall be secured by this Agreement and absolutely and unconditionally promises and agrees to punctually and fully pay and perform all Obligations. Debtor shall pay to Secured Party on demand, on any installment of the Obligations not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire unpaid indebtedness (whether by acceleration or otherwise) of any one or more of the Obligations, Debtor shall pay, on demand, interest on such matured indebtedness (excluding unpaid late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full.

4. Debtor shall insure the Collateral against all risks of loss or damage from every cause (including without limitation fire, theft, vandalism, accident, flood, earthquake and extended coverage) for not less than the full replacement value as determined by Secured Party in its sole discretion, and shall carry liability and property damage insurance covering the Collateral. All insurance shall be in form and amount and with licensed, solvent companies approved by Secured Party, and shall name Secured Party as sole loss payee. Debtor shall pay the premiums therefor and deliver said policies or duplicates to Secured Party. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Secured Party to give Secured Party 30 days prior written notice before the policy shall be modified or canceled and that Secured Party's coverage shall not be diminished or invalidated by any negligence, act or omission of Debtor. The proceeds of such insurance, at the option of Secured Party, shall be applied toward the replacement or repair of the Collateral or toward payment of the Obligations. Debtor hereby irrevocably appoints Secured Party as its attorney-in-fact and agent to make claim for, adjust, compromise, settle, receive payment of, and to sign all documents, checks and/or drafts in payment of or relating to any claim for loss of or damage to the Collateral and for any returned premiums. If any required insurance expires, is canceled or modified, or is otherwise not in full force and effect, Secured Party may but need not obtain replacement insurance. Secured Party may but need not pay the premiums for insurance and/or replacement insurance and the amount of all premiums so paid by Secured Party shall be added to Debtor's obligations hereunder and shall be reimbursed to Secured Party on demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law) from the date paid by Secured Party until fully reimbursed by Debtor.

5. Secured Party shall have the right, at any reasonable time, to inspect all or any portion of the Collateral and/or Debtor's books and records. Debtor shall assist Secured Party in making any such inspection and Debtor shall reimburse Secured Party for its costs and expenses of making up to four such inspections per year. Upon request, Debtor shall, from time to time, furnish a current financial statement to Secured Party in form and content satisfactory to Secured Party, and shall provide annual certified financial statements within five (5) days of Secured Party's request therefor.

6. If Debtor shall fail to fully and timely pay, perform and fulfill any of its Obligations, covenants or agreements to or with Secured Party and/or if Debtor shall breach any of its warranties to Secured Party under this Agreement or otherwise, Secured Party shall have the option, in its sole discretion and without any obligation, to pay, perform, fulfill or cause the payment, performance or fulfillment of same on behalf of Debtor; and all costs and expenses incurred by Secured Party in connection therewith (including but not limited to attorneys' fees, bond premiums, court costs, costs of retaking, storing, preserving, selling and/or realizing on any Collateral) shall be added to the Obligations hereby secured and shall be payable by Debtor to Secured Party upon demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law), from the date advanced by Secured Party until fully repaid. Secured Party shall have no obligation to make any demand upon or give any notice to Debtor prior to the exercise of any of its rights under this paragraph; and neither the exercise nor the failure to exercise any such rights by Secured Party shall relieve Debtor of any default or constitute a waiver of Secured Party's right to enforce strict compliance with the terms of this Agreement at any time.

7. Debtor assumes all liability and risk of loss and agrees to defend, indemnify and hold Secured Party harmless from and against all claims, liabilities, causes of action and damages of any kind, including but not limited to injury to or death of any person(s) and for loss, damage or destruction of any property and for any fines, penalties, costs, expenses and charges in any way arising out of or related to the Obligations, this Agreement, the Collateral or its use, possession, storage, maintenance, repair, transportation or operation (including without limitation all costs and expenses of investigation, all attorneys' fees, court costs, arbitration expenses and costs, and all special, consequential, compensatory and punitive damages). Debtor, at its own cost and expense, shall use, operate, maintain, repair, transport and store the Collateral in a safe and careful manner in compliance with all applicable laws, rules and regulations (including without limitation those regulating hazardous substances, the environment and public health or safety), industry standards, insurance requirements and manufacturer's specifications and service bulletins. Debtor also assumes and agrees to indemnify, pay and hold harmless Secured Party and its directors, officers, employees and agents from all expenses, losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees that Secured Party may incur or sustain in obtaining or enforcing payment or performance of any of the Obligations or exercising its rights and remedies under this Agreement or in connection with any action, proceeding or appeal arising out of or related to this Agreement, the Obligations and/or the Collateral, whether brought by Debtor or any third party. The obligations of Debtor under this paragraph shall survive termination of this Agreement.

8. If any Event of Default exists, Secured Party without notice or demand may do one or more of the following, in any order, and such remedies shall be cumulative (none of which shall be exclusive but each is in addition to any other remedy available to Secured Party): (a) Secured Party may accelerate the maturity of the Obligations and declare same to be at once due and payable whereupon they shall be immediately due and payable; (b) Secured Party may require Debtor to pay all accrued interest, late charges, collection charges, reimbursement for any and all expenses incurred by Secured Party in enforcing any of the Obligations or this Agreement and reasonable attorneys' fees; (c) Secured Party may require Debtor to deliver any or all of the Collateral at Debtor's expense to such place or places as Secured Party may designate; (d) Secured Party may repossess/take possession of any or all of the Collateral wherever found, voluntarily or involuntarily, without notice, demand or legal process (Debtor, if permitted by applicable law, hereby waiving any right to notice or a hearing), and Secured Party may enter the premises where any or all Collateral are located and disconnect, render unusable, and remove any or all Collateral without liability to Debtor arising out of such entry, taking of possession or removal, and may use such premises without charge to store or show the Collateral for sale or other disposition; (e) Secured Party may sell the Collateral by public or private sale, hold, retain the Collateral in full or partial satisfaction of the indebtedness due to Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any claims or rights of Debtor; and/or (f) Secured Party may sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether or not stated herein. Failure or delay on the part of Secured Party to exercise any right or remedy hereunder shall not operate as a waiver thereof. Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are

© COPYRIGHT 2004, 2007 FINANCIAL FEDERAL CREDIT INC.

FFCI SA/SA 1 (11/07)

sold in bulk, singly, or in such lots as Secured Party may elect, (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale, plus all costs, expenses and damages incurred by Secured Party including but not limited to all legal fees whether or not suit is filed, allocable costs of in-house counsel, costs related to the repossession, reconditioning and disposition of the Collateral, and all incidental and consequential damages. No action taken by Secured Party shall release Debtor from any of its obligations to Secured Party. Debtor acknowledges and agrees that in any action or proceeding brought by Secured Party to obtain possession of any Collateral, Secured Party shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Debtor and if Debtor contests Secured Party's right to possession of any Collateral in any action or proceeding Debtor shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Debtor's unpaid obligations to Secured Party, whichever is less. The proceeds of any sale shall first be applied to the costs and expenses of Secured Party including but not limited to recovering, transporting, storing, refurbishing, and/or selling the items sold, attorneys' fees, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions. Secured Party may without prior notice to or demand upon Debtor and with or without the exercise of any of Secured Party's other rights or remedies, apply toward the payment of Debtor's obligations (at any time owing to Secured Party) any checks, drafts, notes, balances, reserves, accounts and sums belonging to or owing to Debtor and coming into Secured Party's possession and for such purpose may endorse Debtor's name on any instrument or document payable to Debtor (whether for deposit, collection, discount or negotiation). Without notice to Debtor, Secured Party may make such applications or change applications of sums previously paid and/or to be paid to Secured Party, to such Obligations as Secured Party in its sole discretion may choose. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies.

9. Protest and all demands and notices of any action taken by Secured Party under this Agreement, or in connection with any Collateral, except as otherwise provided in this Agreement, are hereby waived by Debtor, and any indulgence of Secured Party, substitution for, exchange of or release of any person liable on the Obligations is hereby consented to. Debtor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest, waives notice of the amount of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations or any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its sole discretion, without notice to Debtor. In performing any act under this Agreement or any of the Obligations, time shall be of the essence and Secured Party's acceptance of partial or delinquent payments or performance, or failure or delay to exercise any right or remedy, shall not be a waiver of any obligation of Debtor or right of Secured Party nor constitute a waiver of any subsequent default.

10. This Agreement, Secured Party's rights hereunder and/or any of the Obligations may be assigned from time to time by Secured Party, and in any such case the assignee shall be entitled to all of the rights, privileges and remedies herein granted to Secured Party; and Debtor hereby waives and agrees not to assert against any assignee any defense, setoff, claim, recoupment or counterclaim Debtor may have against Secured Party or any prior assignee. Debtor shall not assign this Agreement nor any of Debtor's rights or obligations hereunder.

11. Debtor shall be in default hereunder upon the occurrence of any of the following (each an "Event of Default"): (a) Debtor or any endorser, guarantor, surety, accommodation party or other person liable for the payment or performance of any of the Obligations ("Other Liable Party") fails to pay when due any sum due to Secured Party (whether hereunder or under any other Obligation to Secured Party) or to timely perform any obligation, covenant, term or provision of this Agreement or any other instrument and/or agreement now or hereafter existing between the parties, or there exists any Event of Default thereunder; (b) any warranty, representation or statement made to Secured Party by or on behalf of Debtor or any Other Liable Party is false in any respect when made or thereafter becomes false or is breached; (c) Debtor's or any Other Liable Party's death, dissolution, termination of existence, insolvency, business failure, assignment for the benefit of creditors, bulk transfer, proceeding under any bankruptcy or insolvency law, being declared judicially incompetent, voluntary or involuntary consent to the appointment of a receiver, trustee, conservator, liquidator or legal guardian for them or any or all of their property; (d) a default under any indebtedness of Debtor or any Other Liable Party or any event permitting the holder of any such indebtedness to accelerate the maturity thereof, whether or not such event is cured; (e) the Collateral becomes, in the sole judgment of Secured Party, unsatisfactory or insufficient in character or value; (f) Secured Party in good faith believes that the prospect of payment or performance of any of the Obligations or this Agreement is impaired; (g) any change in the management, operation, ownership or control of Debtor or any Other Liable Party; (h) any attachment, levy or execution against Debtor and/or any Other Liable Party that is not released within 48 hours; (i) Debtor's or any Other Liable Party's affairs so change as to, in Secured Party's sole discretion, increase the credit risk involved and Secured Party thereby becomes insecure as to the performance of this Agreement or any other agreement with Debtor or such Other Liable Party; (j) Debtor shall incur, create, assume, cause or suffer to exist any mortgage, trust, lien, security interest, pledge, hypothecation or other encumbrance (other than Secured Party's interest therein) or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral, this Agreement, or any of Secured Party's interests under this Agreement or any of the Obligations; (k) Debtor shall sell, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral; (l) failure of Debtor to obtain or maintain insurance on the Collateral satisfactory to Secured Party in its sole discretion; or (m) any of the Obligations, this Agreement, the security interest or any provision hereof for any reason attributable to Debtor ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Debtor or Debtor shall deny that it has any further liability or obligation thereunder.

12. The term "Debtor" as used in this Agreement shall be construed as the singular or plural to correspond with the number of persons executing this instrument as Debtor. "Secured Party" and "Debtor" as used in this Agreement include the heirs, executors or administrators, successors, legal representatives, receivers, and assigns of those parties. If more than one person executes this Agreement as Debtor, their obligations under this Agreement shall be joint and several. Unless the context otherwise requires, terms used in this Agreement which are defined in the Uniform Commercial Code are used with the meaning as therein defined. THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. No termination, modification, waiver or amendment of or to this Agreement shall be effective unless in writing signed by Debtor and an officer (assistant vice president or higher) of Secured Party. If any provision of this Agreement is rendered or declared invalid, illegal or ineffective by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision shall only invalidate such provision to the extent so rendered or declared invalid, illegal or ineffective and shall not impair, invalidate or nullify the remainder of this Agreement which shall remain in full force and effect. THE PARTIES INTEND THAT THIS AGREEMENT AND EACH OF ITS TERMS BE VALID AND ENFORCEABLE AS WRITTEN AND, ACCORDINGLY, AGREE THAT THE VALIDITY AND ENFORCEABILITY OF THIS AGREEMENT AND EACH OF ITS TERMS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DEBTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS AGREEMENT WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF SECURED PARTY'S LOCATION AS SET FORTH IN THIS AGREEMENT.

13. Any notice or demand to Debtor hereunder or in connection herewith may be given and shall conclusively be deemed and considered to have been given and received upon the deposit thereof in the U.S. Mail, in writing, duly stamped and addressed to Debtor at the address set forth in this Agreement or at such other address of Debtor as Debtor shall have designated by notice in writing delivered to Secured Party. Actual notice to Debtor, however given or received, shall always be effective. DEBTOR, AS A MATERIAL INDUCEMENT FOR SECURED PARTY TO MAKE LOANS OR OTHER FINANCIAL ACCOMMODATIONS AVAILABLE TO DEBTOR, HEREBY: IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR DEBTOR AND IN DEBTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY DISPUTE WITH HOLDER OR ANY OF HOLDER'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, INCLUDING WITHOUT LIMITATION ANY MATTER RELATING TO OR ARISING UNDER THIS OR ANY OTHER EXISTING OR FUTURE AGREEMENT WITH HOLDER, PROVIDED THAT HOLDER MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION; WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO DEBTOR AT DEBTOR'S ADDRESS AS PROVIDED HEREIN. THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL OF ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, CROSS-CLAIM, DEFENSE OR OFFSET INVOLVING DEBTOR, SECURED PARTY OR ANY PERSON CLAIMING ANY RIGHT OR INTEREST ACQUIRED FROM, THROUGH OR UNDER ANY OF THEM; AND DEBTOR FURTHER HEREBY WAIVES ANY AND ALL SPECIAL, EXEMPLARY, PUNITIVE AND CONSEQUENTIAL DAMAGES IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE ACTS OR OMISSIONS OF SECURED PARTY OR ANY ASSIGNEE.

14. If Secured Party is for any reason compelled to surrender any payment received pursuant to any of the Obligations, because such payment is determined to be void or voidable as a preference, fraudulent transfer, impermissible set off or recoupment, a diversion of trust funds, or for any other reason, then such Obligation(s) shall be reinstated, if necessary and shall continue in full force notwithstanding any contrary action which Secured Party or Debtor may have taken in reliance upon such payment. Any such contrary action so taken shall be without prejudice to Secured Party's rights under the Obligations and hereunder and shall be deemed to have been conditioned upon such payment having become final and irrevocable. The terms of paragraphs 1, 7, 10, 12, 13, 14 and 15 shall survive termination of this Agreement.

15. All agreements between Debtor and Secured Party, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall any interest contracted for, charged or received by Secured Party exceed the maximum amount permissible under applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to Secured Party in excess of the maximum lawful amount, the interest payable to Secured Party shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Secured Party shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of any principal and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of any principal, such excess shall be refunded to Debtor. All interest paid or agreed to be paid to Secured Party shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of any principal (including the period of any renewal or extension) so that the interest for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Debtor and Secured Party.

WITNESS (Attest if a corporation):

_____ (Title)

Subscribed and sworn to before me, the undersigned notary public, on the date above written.

_____
Notary public

DEBTOR: Charles Jeffries & Son Trucking, Inc. _____

BY: _____
Name: _____ (Title)

BY: _____
Name: _____ (Title)

© COPYRIGHT 2004, 2007 FINANCIAL FEDERAL CREDIT INC.                    FFCI SA/SA 1 (11/07)

# SCHEDULE "A"

This schedule is attached to and becomes part of a certain Security Agreement dated May 16, 2008.

| QUANTITY | YEAR | MODEL | DESCRIPTION OF COLLATERAL | SERIAL NUMBER |
|---|---|---|---|---|
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 08467Z5386 | 1JJV532W15L940119 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 08467Z5387 | 1JJV532W85L940120 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 08467Z5388 | 1JJV532WX5L940121 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 08467Z5399 | 1JJV532W15L940122 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 11467Z0553 | 1JJV532W35L940123 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 10467Z8383 | 1JJV532W55L940124 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 10467Z8762 | 1JJV532W75L940125 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 10467Z8763 | 1JJV532W95L940126 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 10467Z8765 | 1JJV532W05L940127 |
| One (1) | 2005 | | Wabash 53` Refrigerated Trailer with an attached Thermo King SB310 Refrigeration Unit, S/N: 10467Z9271 | 1JJV532W45L940129 |

Including all attachments, accessions and accessories to, and all proceeds of, all of the foregoing, including without limitation all insurance proceeds and all rental proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof.

This schedule is hereby verified correct and the undersigned acknowledge receipt of a copy.

Secured Party:
**Financial Federal Credit Inc.**

Debtor:
**Charles Jeffries & Son Trucking, Inc.**

By: _____
    Name and Title:

By: _____
    Name and Title:

Debtor:

By: _____
    Name and Title:

Common/ScASpec (11/04)

EXHIBIT F

# PROMISSORY NOTE

| $64,182.00 | Cambridge | IL | September 11, 2008 |
|---|---|---|---|
| (Total of Note) | (City) | (State) | (Date) |

FOR VALUE RECEIVED, Charles Jeffries & Son Trucking, Inc. ("Maker") promises to pay to the order of Financial Federal Credit Inc. ("Holder"), at 4225 Naperville Road Suite 265, Lisle, IL 60532, or such other place as Holder may from time to time designate in writing, the amount of Sixty-Four Thousand One Hundred Eighty-Two Dollars and No Cents ($64,182.00), payable in consecutive monthly installments, as follows:

| | | | |
|---|---|---|---|
| 1 | installments, each in the amount of | $ 5,162.00 | ; then |
| 65 | installments, each in the amount of | $ 908.00 | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments; each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | |

Said consecutive monthly installments shall commence on the 11th day of September, 2008, and continue on November 1, 2008 and on the same day of each month thereafter until the indebtedness evidenced hereby is paid in full. The Total of Note includes precomputed interest (at the "non-default interest rate") from the date hereof on the unpaid principal amount outstanding from time to time through the maturity of each installment (assuming that each installment will be received on its respective due date) (but in no event shall the rate of interest exceed any maximum permitted by applicable law). Maker shall also pay to Holder on demand, on each installment (of principal and/or interest) not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire indebtedness (whether by acceleration or otherwise), Maker shall pay, on demand, interest on the unpaid indebtedness (excluding accrued and unpaid interest and late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full. Unless prohibited by applicable law, during any period of time when Maker is in default under the terms of this Note, Maker shall pay interest on the unpaid principal amount outstanding from time to time at the maximum lawful daily rate, not to exceed 0.0666% per day, in place of the non-default interest rate set forth or implied in this Note, until the default is cured. Interest shall be calculated on the basis of a 360 day year and for the actual number of days elapsed, unless such calculation would cause the effective interest rate to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. Maker agrees to an effective rate of interest which is the rate stated or implied in this Note plus any additional sums or charges provided for herein or incident to the transaction of which this Note forms a part which are or may be deemed to be interest under applicable law, but not more than the maximum amount permissible under applicable law.

Upon nonpayment when due of any amount owing hereunder, or if default occurs under any other obligation of Maker to Holder or under any security agreement, pledge, assignment, deed of trust, or any other instrument or document executed to evidence, secure, guarantee, govern or in any way pertain to the loan evidenced by this Note or any other obligation of Maker to Holder, Holder may, at its option, without notice or demand, accelerate the maturity of the accrued and unpaid indebtedness then outstanding under this Note and declare same to be at once due and payable whereupon it shall be and become immediately due and payable. Maker, all endorsers, guarantors and any other party liable on this Note also, promise and agree to pay Holder's costs, expenses and reasonable attorneys' fees incurred in enforcing and/or collecting this Note. Maker, all endorsers, guarantors and any other party liable on this Note waive presentment for payment, demand, protest, notice of protest and notice of nonpayment, default and dishonor, notice of intent to accelerate, notice of acceleration, and further, to the extent allowed by law, waive all benefits of valuation, appraisement and exemption laws. Holder may, without notice, extend the time of payment of this Note, postpone the enforcement hereof, grant any other indulgence, add or release any party primarily or secondarily liable hereon and/or release or change any collateral securing this Note without affecting or diminishing Holder's right of recourse against Maker, all endorsers, guarantors and other parties liable on this Note, which right is hereby expressly reserved. As used in this Note, the term "Holder" includes any future holder of this Note. If more than one party signs this Note as Maker, the obligations of each of them shall be joint and several.

As a material inducement to Holder to advance funds or otherwise provide financial accommodations to or for the benefit of Maker and/or in consideration of Holder having previously done so, Maker agrees that in the event of any prepayment of any of Maker's indebtedness for borrowed money now or hereafter owing to Holder (whether evidenced hereby or otherwise), whether voluntary or involuntary, Maker shall simultaneously pay a prepayment premium equal to the sum of (a) two tenths percent (0.2%) of the principal amount then being prepaid multiplied by the number of calendar months between the date of such prepayment and the scheduled final maturity date of the indebtedness being prepaid, plus (b) three percent (3%) of the principal amount of the indebtedness then being prepaid, but not more than the maximum amount permitted by law. Any partial prepayment shall be applied first to accrued and unpaid late charges, then to any other fees or expenses payable hereunder, then to accrued and unpaid interest, with the remainder applied to reduction of principal; the amount and due date of the remaining scheduled installments shall not be affected, but the number of remaining installments will be reduced as a result of said partial prepayment.

Notwithstanding anything to the contrary in this Note or any related writing, all agreements between Maker and Holder, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall the interest contracted for, charged or received by Holder exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise been earned on the date of such acceleration, and Holder does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstance whatsoever, interest would otherwise be payable to Holder in excess of the maximum lawful amount, the

©COPYRIGHT 2006, 2007 FINANCIAL FEDERAL CREDIT INC. [TEXT CONTINUED ON REVERSE] FFCI SA/PN24 (04/07)

interest payable to Holder shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Holder shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal, such excess shall be refunded to Maker. All interest paid or agreed to be paid to Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Maker and Holder.

The proceeds from the loan evidenced by this Note are to be used for business purposes only, and no part thereof is to be used for primarily consumer, personal, family or household purposes. Maker acknowledges and agrees that Maker's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Maker in favor of Holder, whether now existing or hereafter executed.

**THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. THIS NOTE MAY NOT BE CHANGED OR TERMINATED ORALLY.**

MAKER _____     MAKER   Charles Jeffries & Son Trucking, Inc. _____

By: _____     By: _Robert C. Jeffries_ _Pres_
Name: _____ Title             Name: _____ Title

_(Witness for all Makers)_

## ENDORSEMENT

The undersigned do each (jointly and severally) unconditionally guarantee the prompt payment of the within Note at maturity or any time thereafter, or on default prior thereto, hereby waiving presentment for payment, demand, protest, notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of every kind and nature, and accepting all of its provisions and authorizing Holder, without notice to any one or more or all of us, to substitute debtors, and/or to grant one or more extensions in whole or in part, and/or to receive security or additional security for the payment hereof and/or to surrender, release or substitute any such security.

If any payment on this Note is not paid when due, then the remaining unpaid indebtedness shall, without notice or demand, become immediately due and payable, at the option of Holder, and may be recovered in any suit brought by the Holder of this Note against any one or more or all of us, at the option of Holder, whether such suit has been commenced against Maker or not, and in any such suit Maker may be joined with one or more or all of us, at the option of Holder.

The Holder of this Note shall not be required to look to any security given or held for the payment of this Note, but may proceed against any one or more or all of us immediately upon a default in payment or otherwise. Any execution may be immediately levied upon any real or personal property of the undersigned, all rights of the undersigned to have personal property last taken and sold under such execution being hereby expressly waived.

_____
(Endorser)

_____
(Endorser)

_____
(Endorser)

©COPYRIGHT 2005, 2007 FINANCIAL FEDERAL CREDIT INC.      FFCI SA/PN24 (04/07)

# SECURITY AGREEMENT

This Security Agreement dated September 11, 2008, is executed by Charles Jeffries & Son Trucking, Inc. ("Debtor") whose principal office (or residence) address is 13256 Highway 81 East, Cambridge, IL, 61238 in favor of Financial Federal Credit Inc. ("Secured Party") whose address is 4225 Naperville Road Suite 265, Lisle, IL, 60532.

1. To secure the payment and performance of all indebtedness, obligations and liabilities of Debtor to Secured Party of whatever kind, whether previously, contemporaneously, or subsequently incurred or created, whether direct or acquired from third parties, whether contingent or fixed, and whether of the same or different classes (including, without limiting the generality of the foregoing, all indebtedness, obligations and liabilities arising out of or relating to (i) advances, payments, loans, endorsements, guaranties, extensions of credit, financial accommodations and/or benefits granted or extended by Secured Party to or for the account of Debtor, (ii) notes, security agreements, lease agreements, rental agreements, installment sale contracts, bailment agreements, guaranties, and/or any other present or future agreements between Debtor and Secured Party, and/or (iii) expenses, charges, commissions and/or interest owing by Debtor to Secured Party or chargeable to Debtor by Secured Party), and all extensions, renewals and/or modifications of the foregoing (collectively, the "Obligations"), Debtor does hereby assign, transfer, pledge and grant to Secured Party a security interest/lien in/upon all property listed on any Schedule to this Agreement (the "Property"), and in all goods, inventory, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessions of and/or to all of the foregoing (collectively, including the Property, the "Collateral"). Debtor and Secured Party acknowledge that Secured Party may (but shall not be obligated to) make future loans or extensions of credit to or guaranteed by Debtor, refinance existing Obligations of or guaranteed by Debtor, or purchase from third parties loans or indebtedness of or guaranteed by Debtor, and Secured Party and Debtor agree that the Collateral shall be security for any and all such indebtedness.

2. Debtor hereby represents and warrants to Secured Party and covenants and agrees with Secured Party as follows: (a) All information supplied and statements made to Secured Party by or on behalf of Debtor relating to the Obligations or the Collateral are and shall be true, complete and accurate, whether supplied or made prior to, contemporaneously with or subsequent to the execution of this Agreement; (b) Debtor has good and marketable title to the Collateral, free and clear of any liens, security interests or encumbrances of any kind or nature whatsoever (except any claimed by Secured Party) and Debtor will warrant and defend the Collateral against all claims; (c) all Collateral listed on any Schedule to this Agreement is in Debtor's possession at the location shown above, unless a different location for a particular item is disclosed (i) on a certificate acknowledging delivery and acceptance thereof or (ii) on such Schedule, and shall at all times remain in Debtor's possession and control; (d) Debtor shall not change (i) its name, (ii) the location of any Collateral, or (iii) the location of (as applicable) Debtor's residence, principal place of business, executive office or the place where Debtor keeps its business records, without thirty (30) days prior written notice to Secured Party; (e) Debtor has full, unrestricted and lawful power and authority to sell and assign the Collateral, to grant Secured Party a security interest/lien therein/thereon as herein provided and to execute and perform this Agreement and all other instruments and agreements executed by Debtor in favor of Secured Party; (f) if an organization, Debtor is: (i) duly formed, organized, validly existing and in good standing in the state of its organization, (ii) duly qualified and in good standing in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) authorized by all requisite action of its stockholders, directors, partners, members and/or managers to execute, deliver and perform this Agreement; (g) Debtor shall cause Secured Party to have a security interest and lien in/upon the Collateral which at all times shall be duly perfected, enforceable and superior to any liens, encumbrances and interests other than Secured Party's, and Debtor shall not permit the Collateral or any portion thereof to be removed from the Continental United States, nor to be or become subject to any lien or encumbrance of any kind or nature whatsoever (except in favor of Secured Party), nor shall Debtor sell, pledge, grant any security interest in, encumber, assign, rent, lease, lend, destroy or otherwise transfer or dispose of, or permit the filing of a financing statement with respect to (except in favor of Secured Party) any Collateral, nor shall Debtor guarantee any obligation of any other person or entity except in favor of Secured Party, without the prior written consent of Secured Party in each instance; (h) Debtor shall comply (to the extent necessary to protect the Collateral and Secured Party's interest therein) with the provisions of all leases, mortgages, deeds of trust or other contracts affecting any premises where any Collateral is or may be located and with any rules, laws, orders, ordinances or statutes of any state, county, municipality or other authority having jurisdiction relating to such premises and/or the conduct of business thereon and/or use thereof; (i) Debtor shall, at Debtor's sole cost and expense, keep and maintain all Collateral in good condition and repair, and shall use and maintain the Collateral in accordance with all applicable manufacturer's specifications and warranties; (j) all Collateral shall at all times remain personalty and shall not become part of any realty to which it may be attached so that Secured Party shall have the unrestricted right (subject only to the terms of this Agreement) to remove all or any portion thereof from any premises where it may be located, and Debtor will obtain and deliver to Secured Party (in a form acceptable to Secured Party) waivers from all landlords, mortgagees and owners of such premises; (k) Debtor shall (at Debtor's expense) upon request by Secured Party, obtain, execute and deliver all assignments, certificates, financing statements or other documents, give further assurances and do all other acts and things as may be necessary to fully perfect Secured Party's interest in the Collateral and to protect, enforce or otherwise effectuate the terms of this Agreement; and (l) Secured Party has no obligation to lend or advance funds unless and until all representations, warranties, conditions and requirements contained herein have been satisfied including without limitation receipt by Secured Party of proof of ownership of the Collateral satisfactory to Secured Party in its sole discretion, and any applicable subordinations and/or lien releases as may be required by, and in a form acceptable to, Secured Party in its sole discretion. Debtor hereby irrevocably designates and appoints Secured Party as Debtor's agent and attorney-in-fact to sign and deliver all such assignments, certificates, financing statements and other documents necessary to perfect, protect, continue and/or enforce Secured Party's interest in the Collateral and to file same with the appropriate office(s). Debtor hereby authorizes Secured Party to file one or more financing statements in all appropriate locations.

3. Debtor hereby acknowledges the validity of and affirms all of the Obligations, agrees that they are and shall be secured by this Agreement and absolutely and unconditionally promises and agrees to punctually and fully pay and perform all Obligations. Debtor shall pay to Secured Party on demand, on any installment of the Obligations not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire unpaid indebtedness (whether by acceleration or otherwise) of any one or more of the Obligations, Debtor shall pay, on demand, interest on such matured indebtedness (excluding unpaid late charges) at the maximum lawful daily rate, but not to exceed 0.0665% per day, until paid in full.

4. Debtor shall insure the Collateral against all risks of loss or damage from every cause (including without limitation fire, theft, vandalism, accident, flood, earthquake and extended coverage) for not less than the full replacement value as determined by Secured Party in its sole discretion, and shall carry liability and property damage insurance covering the Collateral. All insurance shall be in form and amount and with licensed, solvent companies approved by Secured Party, and shall name Secured Party as sole loss payee. Debtor shall pay the premiums therefor and deliver said policies or duplicates to Secured Party. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Secured Party to give Secured Party 30 days prior written notice before the policy shall be modified or canceled and that Secured Party's coverage shall not be diminished or invalidated by any negligence, act or omission of Debtor. The proceeds of such insurance, at the option of Secured Party, shall be applied toward the replacement or repair of the Collateral or toward payment of the Obligations. Debtor hereby irrevocably appoints Secured Party as its attorney-in-fact and agent to make claim for, adjust, compromise, settle, receive payment of, and to sign all documents, checks and/or drafts in payment of or relating to any claim for loss of or damage to the Collateral and for any returned premiums. If any required insurance expires, is canceled or modified, or is otherwise not in full force and effect, Secured Party may but need not obtain replacement insurance. Secured Party may but need not pay the premiums for insurance and/or replacement insurance and the amount of all premiums so paid by Secured Party shall be added to Debtor's obligations hereunder and shall be reimbursed to Secured Party on demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law) from the date paid by Secured Party until fully reimbursed by Debtor.

5. Secured Party shall have the right, at any reasonable time, to inspect all or any portion of the Collateral and/or Debtor's books and records. Debtor shall assist Secured Party in making any such inspection and Debtor shall reimburse Secured Party for its costs and expenses of making up to four such inspections per year. Upon request, Debtor shall, from time to time, furnish a current financial statement to Secured Party in form and content satisfactory to Secured Party, and shall provide annual certified financial statements within five (5) days of Secured Party's request therefor.

6. If Debtor shall fail to fully and timely pay, perform and fulfill any of its Obligations, covenants or agreements to or with Secured Party and/or if Debtor shall breach any of its warranties to Secured Party under this Agreement or otherwise, Secured Party shall have the option, in its sole discretion and without any obligation, to pay, perform, fulfill or cause the payment, performance or fulfillment of same on behalf of Debtor; and all costs and expenses incurred by Secured Party in connection therewith (including but not limited to attorneys' fees, bond premiums, court costs, costs of retaking, storing, preserving, selling and/or realizing on any Collateral) shall be added to the Obligations hereby secured and shall be payable by Debtor to Secured Party upon demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0665% per day (but only to the extent permitted by law), from the date advanced by Secured Party until fully repaid. Secured Party shall have no obligation to make any demand upon or give any notice to Debtor prior to the exercise of any of its rights under this paragraph; and neither the exercise nor the failure to exercise any such rights by Secured Party shall relieve Debtor of any default or constitute a waiver of Secured Party's right to enforce strict compliance with the terms of this Agreement at any time.

7. Debtor assumes all liability and risk of loss and agrees to defend, indemnify and hold Secured Party harmless from and against all claims, liabilities, causes of action and damages of any kind, including but not limited to injury to or death of any person(s) and for loss, damage or destruction of any property and for any fines, penalties, costs, expenses and charges in any way arising out of or related to the Obligations, this Agreement, the Collateral or its use, possession, storage, maintenance, repair, transportation or operation (including without limitation all costs and expenses of investigation, all attorneys' fees, court costs, arbitration expenses and costs, and all special, consequential, compensatory and punitive damages). Debtor, at its own cost and expense, shall use, operate, maintain, repair, transport and store the Collateral in a safe and careful manner in compliance with all applicable laws, rules and regulations (including without limitation those regulating hazardous substances, the environment and public health or safety), industry standards, insurance requirements and manufacturer's specifications and service bulletins. Debtor also assumes and agrees to indemnify, pay and hold harmless Secured Party and its directors, officers, employees and agents from all expenses, losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees that Secured Party may incur or sustain in obtaining or enforcing payment or performance of any of the Obligations or exercising its rights and remedies under this Agreement or in connection with any action, proceeding or appeal arising out of or related to this Agreement, the Obligations and/or the Collateral, whether brought by Debtor or any third party. The obligations of Debtor under this paragraph shall survive termination of this Agreement.

8. If any Event of Default exists, Secured Party without notice or demand may do one or more of the following, in any order, and such remedies shall be cumulative (none of which shall be exclusive but each is in addition to any other remedy available to Secured Party): (a) Secured Party may accelerate the maturity of the Obligations and declare same to be at once due and payable whereupon they shall be immediately due and payable; (b) Secured Party may require Debtor to pay all accrued interest, late charges, collection charges, reimbursement for any and all expenses incurred by Secured Party in enforcing any of the Obligations or this Agreement and reasonable attorneys' fees; (c) Secured Party may require Debtor to deliver any or all of the Collateral at Debtor's expense to such place or places as Secured Party may designate; (d) Secured Party may repossess/take possession of any or all of the Collateral wherever found, voluntarily or involuntarily, without notice, demand or legal process (Debtor, if permitted by applicable law, hereby waiving any right to notice or a hearing), and Secured Party may enter the premises where any or all Collateral are located and disconnect, render unusable, and remove any or all Collateral without liability to Debtor arising out of such entry, taking of possession or removal, and may use such premises without charge to store or show the Collateral for sale or other disposition; (e) Secured Party may sell the Collateral by public or private sale, hold, retain the Collateral in full or partial satisfaction of the indebtedness due to Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any claims or rights of Debtor; and/or (f) Secured Party may sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether or not stated herein. Failure or delay on the part of Secured Party to exercise any right or remedy hereunder shall not operate as a waiver thereof. Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are

© COPYRIGHT 2004, 2007 FINANCIAL FEDERAL CREDIT INC.

FFCI SA/SA 1 (11/07)

sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale, plus all costs, expenses and damages incurred by Secured Party including but not limited to all legal fees whether or not suit is filed, allocable costs of in-house counsel, costs related to the repossession, reconditioning and disposition of the Collateral, and all incidental and consequential damages. No action taken by Secured Party shall release Debtor from any of its obligations to Secured Party. Debtor acknowledges and agrees that in any action or proceeding brought by Secured Party to obtain possession of any Collateral, Secured Party shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Debtor and if Debtor contests Secured Party's right to possession of any Collateral in any action or proceeding Debtor shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Debtor's unpaid obligations to Secured Party, whichever is less. The proceeds of any sale shall first be applied to the costs and expenses of Secured Party including but not limited to recovering, transporting, storing, refurbishing, and/or selling the items sold, attorneys' fees, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions. Secured Party may without prior notice to or demand upon Debtor and with or without the exercise of any of Secured Party's other rights or remedies, apply toward the payment of Debtor's obligations (at any time owing to Secured Party) any checks, drafts, notes, balances, reserves, accounts and sums belonging to or owing to Debtor and coming into Secured Party's possession and for such purpose may endorse Debtor's name on any instrument or document payable to Debtor (whether for deposit, collection, discount or negotiation). Without notice to Debtor, Secured Party may make such applications or change applications of sums previously paid and/or to be paid to Secured Party, to such Obligations as Secured Party in its sole discretion may choose. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies.

9. Protest and all demands and notices of any action taken by Secured Party under this Agreement, or in connection with any Collateral, except as otherwise provided in this Agreement, are hereby waived by Debtor, and any indulgence of Secured Party, substitution for, exchange of or release of any person liable on the Obligations is hereby consented to. Debtor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest; waives notice of the amount of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations or any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its sole discretion, without notice to Debtor. In performing any act under this Agreement or any of the Obligations, time shall be of the essence and Secured Party's acceptance of partial or delinquent payments or performance, or failure or delay to exercise any right or remedy, shall not be a waiver of any obligation of Debtor or right of Secured Party nor constitute a waiver of any subsequent default.

10. This Agreement, Secured Party's rights hereunder and/or any of the Obligations may be assigned from time to time by Secured Party, and in any such case the assignee shall be entitled to all of the rights, privileges and remedies herein granted to Secured Party; and Debtor hereby waives and agrees not to assert against any assignee any defense, setoff, claim, recoupment or counterclaim Debtor may have against Secured Party or any prior assignee. Debtor shall not assign this Agreement nor any of Debtor's rights or obligations hereunder.

11. Debtor shall be in default hereunder upon the occurrence of any of the following (each an "Event of Default"): (a) Debtor or any endorser, guarantor, surety, accommodation party or other person liable for the payment or performance of any of the Obligations ("Other Liable Party") fails to pay when due any sum due to Secured Party (whether hereunder or under any other Obligation to Secured Party) or to timely perform any obligation, covenant, term or provision of this Agreement or any other instrument and/or agreement now or hereafter existing between the parties, or there exists any Event of Default thereunder; (b) any warranty, representation or statement made to Secured Party by or on behalf of Debtor or any Other Liable Party is false in any respect when made or thereafter becomes false or is breached; (c) Debtor's or any Other Liable Party's death, dissolution, termination of existence, insolvency, business failure, assignment for the benefit of creditors, bulk transfer, proceeding under any bankruptcy or insolvency law, being declared judicially incompetent, voluntary or involuntary consent to the appointment of a receiver, trustee, conservator, liquidator or legal guardian for them or any or all of their property; (d) a default under any indebtedness of Debtor or any Other Liable Party or any event permitting the holder of any such indebtedness to accelerate the maturity thereof, whether or not such event is cured; (e) the Collateral becomes, in the sole judgment of Secured Party, unsatisfactory or insufficient in character or value; (f) Secured Party in good faith believes that the prospect of payment or performance of any of the Obligations or this Agreement is impaired; (g) any change in the management, operation, ownership or control of Debtor or any Other Liable Party; (h) any attachment, levy or execution against Debtor and/or any Other Liable Party that is not released within 48 hours; (i) Debtor's or any Other Liable Party's affairs so change as to, in Secured Party's sole discretion, increase the credit risk involved and Secured Party thereby becomes insecure as to the performance of this Agreement or any other agreement with Debtor or such Other Liable Party; (j) Debtor shall incur, create, assume, cause or suffer to exist any mortgage, trust, lien, security interest, pledge, hypothecation or other encumbrance (other than Secured Party's interest therein) or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral, this Agreement, or any of Secured Party's interests under this Agreement or any of the Obligations; (k) Debtor shall sell, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral; (l) failure of Debtor to obtain or maintain insurance on the Collateral satisfactory to Secured Party in its sole discretion; or (m) any of the Obligations, this Agreement, the security interest or any provision hereof for any reason attributable to Debtor ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Debtor or Debtor shall deny that it has any further liability or obligation thereunder.

12. The term "Debtor" as used in this Agreement shall be construed as the singular or plural to correspond with the number of persons executing this instrument as Debtor. "Secured Party" and "Debtor" as used in this Agreement include the heirs, executors or administrators, successors, legal representatives, receivers, and assigns of those parties. If more than one person executes this Agreement as Debtor, their obligations under this Agreement shall be joint and several. Unless the context otherwise requires, terms used in this Agreement which are defined in the Uniform Commercial Code are used with the meaning as therein defined. THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. No termination, modification, waiver or amendment of or to this Agreement shall be effective unless in writing signed by Debtor and an officer (assistant vice president or higher) of Secured Party. If any provision of this Agreement is rendered or declared invalid, illegal or ineffective by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision shall only invalidate such provision to the extent so rendered or declared invalid, illegal or ineffective and shall not impair, invalidate or nullify the remainder of this Agreement which shall remain in full force and effect THE PARTIES INTEND THAT THIS AGREEMENT AND EACH OF ITS TERMS BE VALID AND ENFORCEABLE AS WRITTEN AND, ACCORDINGLY, AGREE THAT THE VALIDITY AND ENFORCEABILITY OF THIS AGREEMENT AND EACH OF ITS TERMS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DEBTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS AGREEMENT WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF SECURED PARTY'S LOCATION AS SET FORTH IN THIS AGREEMENT.

13. Any notice or demand to Debtor hereunder or in connection herewith may be given and shall conclusively be deemed and considered to have been given and received upon the deposit thereof in the U.S. Mail, in writing, duly stamped and addressed to Debtor at the address set forth in this Agreement or at such other address of Debtor as Debtor shall have designated by notice in writing delivered to Secured Party. Actual notice to Debtor, however given or received, shall always be effective. DEBTOR, AS A MATERIAL INDUCEMENT FOR SECURED PARTY TO MAKE LOANS OR OTHER FINANCIAL ACCOMMODATIONS AVAILABLE TO DEBTOR, HEREBY: IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR DEBTOR AND IN DEBTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY DISPUTE WITH HOLDER OR ANY OF HOLDER'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, INCLUDING WITHOUT LIMITATION ANY MATTER RELATING TO OR ARISING UNDER THIS OR ANY OTHER EXISTING OR FUTURE AGREEMENT WITH HOLDER, PROVIDED THAT HOLDER MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION; WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO DEBTOR AT DEBTOR'S ADDRESS AS PROVIDED HEREIN. THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL OF ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, CROSS-CLAIM, DEFENSE OR OFFSET INVOLVING DEBTOR, SECURED PARTY OR ANY PERSON CLAIMING ANY RIGHT OR INTEREST ACQUIRED FROM, THROUGH OR UNDER ANY OF THEM; AND DEBTOR FURTHER HEREBY WAIVES ANY AND ALL SPECIAL, EXEMPLARY, PUNITIVE AND CONSEQUENTIAL DAMAGES IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE ACTS OR OMISSIONS OF SECURED PARTY OR ANY ASSIGNEE.

14. If Secured Party is for any reason compelled to surrender any payment received pursuant to any of the Obligations, because such payment is determined to be void or voidable as a preference, fraudulent transfer, impermissible set off or recoupment, a diversion of trust funds, or for any other reason, then such Obligation(s) shall be reinstated, if necessary and shall continue in full force notwithstanding any contrary action which Secured Party or Debtor may have taken in reliance upon such payment. Any such contrary action so taken shall be without prejudice to Secured Party's rights under the Obligations and hereunder and shall be deemed to have been conditioned upon such payment having become final and irrevocable. The terms of paragraphs 1, 7, 10, 12, 13, 14 and 15 shall survive termination of this Agreement.

15. All agreements between Debtor and Secured Party, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall any interest contracted for, charged or received by Secured Party exceed the maximum amount permissible under applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to Secured Party in excess of the maximum lawful amount, the interest payable to Secured Party shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Secured Party shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of any principal and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of any principal, such excess shall be refunded to Debtor. All interest paid or agreed to be paid to Secured Party shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of any principal (including the period of any renewal or extension) so that the interest for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Debtor and Secured Party.

WITNESS (Attest if a corporation):

_____ (Title)

DEBTOR: Charles Jeffries & Son Trucking, Inc.

BY: _____ _____ (Title)
Name:

Subscribed and sworn to before me, the undersigned notary public, on the date above written.

BY: _____ _____ (Title)
Name:

_____
Notary public

© COPYRIGHT 2004, 2007 FINANCIAL FEDERAL CREDIT INC.                    FFCI SA/SA 1(11/07)

## SCHEDULE "A"

This schedule is attached to and becomes part of a certain Security Agreement dated September 11, 2008.

| QUANTITY | YEAR | MODEL | DESCRIPTION OF COLLATERAL | SERIAL NUMBER |
|---|---|---|---|---|
| One (1) | 2008 | | Wabash 53' Refrigerated Trailer with an attached Carrier Niagara X-2100A Refrigeration Unit S/N: LAL91015686 | 1JJV532W78L129249 |

Including all attachments, accessions and accessories to, and all proceeds of, all of the foregoing, including without limitation all insurance proceeds and all rental proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof.

This schedule is hereby verified correct and the undersigned acknowledge receipt of a copy.

Secured Party :                                   Debtor :
Financial Federal Credit Inc.              Charles Jeffries & Son Trucking, Inc.

By: _____      By: _Robert C. Jeffries Pres._____
    Name and Title:                              Name and Title:
                                            Debtor :

                                           By: _____
                                           Name and Title:

Common/ScASpec (11/04)

EXHIBIT G

# PROMISSORY NOTE

| $138,331.20 | Cambridge | IL | October 9, 2008 |
|---|---|---|---|
| (Total of Note) | (City) | (State) | (Date) |

FOR VALUE RECEIVED, Charles Jeffries & Son Trucking, Inc. ("Maker") promises to pay to the order of Financial Federal Credit Inc. ("Holder"), at 4225 Naperville Road Suite 265, Lisle, IL 60532, or such other place as Holder may from time to time designate in writing, the amount of One Hundred Thirty-Eight Thousand Three Hundred Thirty-One Dollars and 20 Cents ($138,331.20), payable in consecutive monthly installments, as follows:

| | | | |
|---|---|---|---|
| 1 | installments, each in the amount of | $ 10,885.20 | ; then |
| 66 | installments, each in the amount of | $ 1,831.00 | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | |

Said consecutive monthly installments shall commence on the 9th day of October, 2008, and continue on November 23, 2008 and on the same day of each month thereafter until the indebtedness evidenced hereby is paid in full. The Total of Note includes precomputed interest (at the "non-default interest rate") from the date hereof on the unpaid principal amount outstanding from time to time through the maturity of each installment (assuming that each installment will be received on its respective due date) (but in no event shall the rate of interest exceed any maximum permitted by applicable law). Maker shall also pay to Holder on demand, on each installment (of principal and/or interest) not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire indebtedness (whether by acceleration or otherwise), Maker shall pay, on demand, interest on the unpaid indebtedness (excluding accrued and unpaid interest and late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full. Unless prohibited by applicable law, during any period of time when Maker is in default under the terms of this Note, Maker shall pay interest on the unpaid principal amount outstanding from time to time at the maximum lawful daily rate, not to exceed 0.0666% per day, in place of the non-default interest rate set forth or implied in this Note, until the default is cured. Interest shall be calculated on the basis of a 360 day year and for the actual number of days elapsed, unless such calculation would cause the effective interest rate to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. Maker agrees to an effective rate of interest which is the rate stated or implied in this Note plus any additional sums or charges provided for herein or incident to the transaction of which this Note forms a part which are or may be deemed to be interest under applicable law, but not more than the maximum amount permissible under applicable law.

Upon nonpayment when due of any amount owing hereunder, or if default occurs under any other obligation of Maker to Holder or under any security agreement, pledge, assignment, deed of trust, or any other instrument or document executed to evidence, secure, guarantee, govern or in any way pertain to the loan evidenced by this Note or any other obligation of Maker to Holder, Holder may, at its option, without notice or demand, accelerate the maturity of the accrued and unpaid indebtedness then outstanding under this Note and declare same to be at once due and payable whereupon it shall be and become immediately due and payable. Maker, all endorsers, guarantors and any other party liable on this Note also promise and agree to pay Holder's costs, expenses and reasonable attorneys' fees incurred in enforcing and/or collecting this Note. Maker, all endorsers, guarantors and any other party liable on this Note waive presentment for payment, demand, protest, notice of protest and notice of nonpayment, default and dishonor, notice of intent to accelerate, notice of acceleration, and further, to the extent allowed by law, waive all benefits of valuation, appraisement and exemption laws. Holder may, without notice, extend the time of payment of this Note, postpone the enforcement hereof, grant any other indulgence, add or release any party primarily or secondarily liable hereon and/or release or change any collateral securing this Note without affecting or diminishing Holder's right of recourse against Maker, all endorsers, guarantors and other parties liable on this Note, which right is hereby expressly reserved. As used in this Note, the term "Holder" includes any future holder of this Note.. If more than one party signs this Note as Maker, the obligations of each of them shall be joint and several.

As a material inducement to Holder to advance funds or otherwise provide financial accommodations to or for the benefit of Maker and/or in consideration of Holder having previously done so, Maker agrees that in the event of any prepayment of any of Maker's indebtedness for borrowed money now or hereafter owing to Holder (whether evidenced hereby or otherwise), whether voluntary or involuntary, Maker shall simultaneously pay a prepayment premium equal to the sum of (a) two tenths percent (0.2%) of the principal amount then being prepaid multiplied by the number of calendar months between the date of such prepayment and the scheduled final maturity date of the indebtedness being prepaid, plus (b) three percent (3%) of the principal amount of the indebtedness then being prepaid, but not more than the maximum amount permitted by law. Any partial prepayment shall be applied first to accrued and unpaid late charges, then to any other fees or expenses payable hereunder, then to accrued and unpaid interest, with the remainder applied to reduction of principal; the amount and due date of the remaining scheduled installments shall not be affected, but the number of remaining installments will be reduced as a result of said partial prepayment.

Notwithstanding anything to the contrary in this Note or any related writing, all agreements between Maker and Holder, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall the interest contracted for, charged or received by Holder exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise been earned on the date of such acceleration, and Holder does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstance whatsoever, interest would otherwise be payable to Holder in excess of the maximum lawful amount, the

©COPYRIGHT 2005, 2007 FINANCIAL FEDERAL CREDIT INC. **[TEXT CONTINUED ON REVERSE]** FFCI SA/PN24 (04/07)

interest payable to Holder shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Holder shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal, such excess shall be refunded to Maker. All interest paid or agreed to be paid to Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Maker and Holder.

The proceeds from the loan evidenced by this Note are to be used for business purposes only, and no part thereof is to be used for primarily consumer, personal, family or household purposes. Maker acknowledges and agrees that Maker's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Maker in favor of Holder, whether now existing or hereafter executed.

THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. THIS NOTE MAY NOT BE CHANGED OR TERMINATED ORALLY.

MAKER _____ MAKER   Charles Jeffries & Son Trucking, Inc. _____

By: _____    By: *Robert C. Jeffries*          *Pres*
Name: _____ Title       Name: _____ Title

(Witness for all Makers)

## ENDORSEMENT

The undersigned do each (jointly and severally) unconditionally guarantee the prompt payment of the within Note at maturity or any time thereafter, or on default prior thereto, hereby waiving presentment for payment, demand, protest, notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of every kind and nature, and accepting all of its provisions and authorizing Holder, without notice to any one or more or all of us, to substitute debtors, and/or to grant one or more extensions in whole or in part, and/or to receive security or additional security for the payment hereof and/or to surrender, release or substitute any such security.

If any payment on this Note is not paid when due, then the remaining unpaid indebtedness shall, without notice or demand, become immediately due and payable, at the option of Holder, and may be recovered in any suit brought by the Holder of this Note against any one or more or all of us, at the option of Holder, whether such suit has been commenced against Maker or not, and in any such suit Maker may be joined with one or more or all of us, at the option of Holder.

The Holder of this Note shall not be required to look to any security given or held for the payment of this Note, but may proceed against any one or more or all of us immediately upon a default in payment or otherwise. Any execution may be immediately levied upon any real or personal property of the undersigned, all rights of the undersigned to have personal property last taken and sold under such execution being hereby expressly waived.

_____
(Endorser)

_____
(Endorser)

_____
(Endorser)

©COPYRIGHT 2005, 2007 FINANCIAL FEDERAL CREDIT INC.

# SECURITY AGREEMENT

This Security Agreement dated October 9, 2008 , is executed by Charles Jeffries & Son Trucking, Inc. ("Debtor") whose principal office (or residence) address is 13256 Highway 81 East, Cambridge, IL, 61238 in favor of Financial Federal Credit Inc. ("Secured Party") whose address is 4225 Naperville Road Suite 285, Lisle, IL, 60532.

1. To secure the payment and performance of all indebtedness, obligations and liabilities of Debtor to Secured Party of whatever kind, whether previously, contemporaneously, or subsequently incurred or created, whether direct or acquired from third parties, whether contingent or fixed, and whether of the same or different classes (including, without limiting the generality of the foregoing, all indebtedness, obligations and liabilities arising out of or relating to (i) advances, payments, loans, endorsements, guaranties, extensions of credit, financial accommodations and/or benefits granted or extended by Secured Party to or for the account of Debtor, (ii) notes, security agreements, lease agreements, rental agreements, installment sale contracts, bailment agreements, guaranties, and/or any other present or future agreements between Debtor and Secured Party, and/or (iii) expenses, charges, commissions and/or interest owing by Debtor to Secured Party or chargeable to Debtor by Secured Party), and all extensions, renewals and/or modifications of the foregoing (collectively, the "Obligations"), Debtor does hereby assign, transfer, pledge and grant to Secured Party a security interest/lien in/upon all property listed on any Schedule to this Agreement (the "Property"), and in all goods, inventory, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessions of and/or to all of the foregoing (collectively, including the Property, the "Collateral"). Debtor and Secured Party acknowledge that Secured Party may (but shall not be obligated to) make future loans or extensions of credit to or guaranteed by Debtor, refinance existing Obligations of or guaranteed by Debtor, or purchase from third parties loans or indebtedness of or guaranteed by Debtor, and Secured Party and Debtor agree that the Collateral shall be security for any and all such indebtedness.

2. Debtor hereby represents and warrants to Secured Party and covenants and agrees with Secured Party as follows: (a) All information supplied and statements made to Secured Party by or on behalf of Debtor relating to the Obligations or the Collateral are and shall be true, complete and accurate, whether supplied or made prior to, contemporaneously with or subsequent to the execution of this Agreement; (b) Debtor has good and marketable title to the Collateral, free and clear of any liens, security interests or encumbrances of any kind or nature whatsoever (except any claimed by Secured Party) and Debtor will warrant and defend the Collateral against all claims; (c) all Collateral listed on any Schedule to this Agreement is in Debtor's possession at the location shown above, unless a different location for a particular item is disclosed (i) on a certificate acknowledging delivery and acceptance thereof or (ii) on such Schedule, and shall at all times remain in Debtor's possession and control; (d) Debtor shall not change (i) its name, (ii) the location of any Collateral, or (iii) the location of (as applicable) Debtor's residence, principal place of business, executive office or the place where Debtor keeps its business records, without thirty (30) days prior written notice to Secured Party; (e) Debtor has full, unrestricted and lawful power and authority to sell and assign the Collateral, to grant Secured Party a security interest/lien therein/thereon as herein provided and to execute and perform this Agreement and all other instruments and agreements executed by Debtor in favor of Secured Party; (f) if an organization, Debtor is: (i) duly formed, organized, validly existing and in good standing in the state of its organization, (ii) duly qualified and in good standing in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) authorized by all requisite action of its stockholders, directors, partners, members and/or managers to execute, deliver and perform this Agreement; (g) Debtor shall cause Secured Party to have a security interest and lien in/upon the Collateral which at all times shall be duly perfected, enforceable and superior to any liens, encumbrances and interests other than Secured Party's, and Debtor shall not permit the Collateral or any portion thereof to be removed from the Continental United States, nor to be or become subject to any lien or encumbrance of any kind or nature whatsoever (except in favor of Secured Party), nor shall Debtor sell, pledge, grant any security interest in, encumber, assign, rent, lease, lend, destroy or otherwise transfer or dispose of, or permit the filing of a financing statement with respect to (except in favor of Secured Party) any Collateral, nor shall Debtor guarantee any obligation of any other person or entity except in favor of Secured Party, without the prior written consent of Secured Party in each instance; (h) Debtor shall comply (to the extent necessary to protect the Collateral and Secured Party's interest therein) with the provisions of all leases, mortgages, deeds of trust or other contracts affecting any premises where any Collateral is or may be located and with any rules, laws, orders, ordinances or statutes of any state, county, municipality or other authority having jurisdiction relating to such premises and/or the conduct of business thereon and/or use thereof; (i) Debtor shall, at Debtor's sole cost and expense, keep and maintain all Collateral in good condition and repair, and shall use and maintain the Collateral in accordance with all applicable manufacturer's specifications and warranties; (j) all Collateral shall at all times remain personalty and shall not become part of any realty to which it may be attached so that Secured Party shall have the unrestricted right (subject only to the terms of this Agreement) to remove all or any portion thereof from any premises where it may be located, and Debtor will obtain and deliver to Secured Party (in a form acceptable to Secured Party) waivers from all landlords, mortgagees and owners of such premises; (k) Debtor shall (at Debtor's expense) upon request by Secured Party, obtain, execute and deliver all assignments, certificates, financing statements or other documents, give further assurances and do all other acts and things as may be necessary to fully perfect Secured Party's interest in the Collateral and to protect, enforce or otherwise effectuate the terms of this Agreement; and (l) Secured Party has no obligation to lend or advance funds unless and until all representations, warranties, conditions and requirements contained herein have been satisfied including without limitation receipt by Secured Party of proof of ownership of the Collateral satisfactory to Secured Party in its sole discretion, and any applicable subordinations and/or lien releases as may be required by, and in a form acceptable to, Secured Party in its sole discretion. Debtor hereby irrevocably designates and appoints Secured Party as Debtor's agent and attorney-in-fact to sign and deliver all such assignments, certificates, financing statements and other documents necessary to perfect, protect, continue and/or enforce Secured Party's interest in the Collateral and to file same with the appropriate office(s). Debtor hereby authorizes Secured Party to file one or more financing statements in all appropriate locations.

3. Debtor hereby acknowledges the validity of and affirms all of the Obligations, agrees that they are and shall be secured by this Agreement and absolutely and unconditionally promises and agrees to punctually and fully pay and perform all Obligations. Debtor shall pay to Secured Party on demand, on any installment of the Obligations not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire unpaid indebtedness (whether by acceleration or otherwise) of any one or more of the Obligations, Debtor shall pay, on demand, interest on such matured indebtedness (excluding unpaid late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full.

4. Debtor shall insure the Collateral against all risks of loss or damage from every cause (including without limitation fire, theft, vandalism, accident, flood, earthquake and extended coverage) for not less than the full replacement value as determined by Secured Party in its sole discretion, and shall carry liability and property damage insurance covering the Collateral. All insurance shall be in form and amount and with licensed, solvent companies approved by Secured Party, and shall name Secured Party as sole loss payee. Debtor shall pay the premiums therefor and deliver said policies or duplicates to Secured Party. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Secured Party to give Secured Party 30 days prior written notice before the policy shall be modified or cancelled and that Secured Party's coverage shall not be diminished or invalidated by any negligence, act or omission of Debtor. The proceeds of such insurance, at the option of Secured Party, shall be applied toward the replacement or repair of the Collateral or toward payment of the Obligations. Debtor hereby irrevocably appoints Secured Party as its attorney-in-fact and agent to make claim for, adjust, compromise, settle, receive payment of, and to sign all documents, checks and/or drafts in payment of or relating to any claim for loss of or damage to the Collateral and/or for any returned premiums. If any required insurance expires, is canceled or modified, or is otherwise not in full force and effect, Secured Party may but need not obtain replacement insurance. Secured Party may but need not pay the premiums for insurance and/or replacement insurance and the amount of all premiums so paid by Secured Party shall be added to Debtor's obligations hereunder and shall be reimbursed to Secured Party on demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law) from the date paid by Secured Party until fully reimbursed by Debtor.

5. Secured Party shall have the right, at any reasonable time, to inspect all or any portion of the Collateral and/or Debtor's books and records. Debtor shall assist Secured Party in making any such inspection and Debtor shall reimburse Secured Party for its costs and expenses of making up to four such inspections per year. Upon request, Debtor shall, from time to time, furnish a current financial statement to Secured Party in form and content satisfactory to Secured Party, and shall provide annual certified financial statements within five (5) days of Secured Party's request therefor.

6. If Debtor shall fail to fully and timely pay, perform and fulfill any of its Obligations, covenants or agreements to or with Secured Party and/or if Debtor shall breach any of its warranties to Secured Party under this Agreement or otherwise, Secured Party shall have the option, in its sole discretion and without any obligation, to pay, perform, fulfill or cause the payment, performance or fulfillment of same on behalf of Debtor; and all costs and expenses incurred by Secured Party in connection therewith (including but not limited to attorneys' fees, bond premiums, court costs, costs of retaking, storing, preserving, selling and/or realizing on any Collateral) shall be added to the Obligations hereby secured and shall be payable by Debtor to Secured Party upon demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law), from the date advanced by Secured Party until fully repaid. Secured Party shall have no obligation to make any demand upon or give any notice to Debtor prior to the exercise of any of its rights under this paragraph; and neither the exercise nor the failure to exercise any such rights by Secured Party shall relieve Debtor of any default or constitute a waiver of Secured Party's right to enforce strict compliance with the terms of this Agreement at any time.

7. Debtor assumes all liability and risk of loss and agrees to defend, indemnify and hold Secured Party harmless from and against all claims, liabilities, causes of action and damages of any kind, including but not limited to injury to or death of any person(s) and for loss, damage or destruction of any property and for any fines, penalties, costs, expenses and charges in any way arising out of or related to the Obligations, this Agreement, the Collateral or its use, possession, storage, maintenance, repair, transportation or operation (including without limitation all costs and expenses of investigation, all attorneys' fees, court costs, arbitration expenses and costs, and all special, consequential, compensatory and punitive damages). Debtor, at its own cost and expense, shall use, operate, maintain, repair, transport and store the Collateral in a safe and careful manner in compliance with all applicable laws, rules and regulations (including without limitation those regulating hazardous substances, the environment and public health or safety), industry standards, insurance requirements and manufacturer's specifications and service bulletins. Debtor also assumes and agrees to indemnify, pay and hold harmless Secured Party and its directors, officers, employees and agents from all expenses, losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees that Secured Party may incur or sustain in obtaining or enforcing payment or performance of any of the Obligations or exercising its rights and remedies under this Agreement or in connection with any action, proceeding or appeal arising out of or related to this Agreement, the Obligations and/or the Collateral, whether brought by Debtor or any third party. The obligations of Debtor under this paragraph shall survive termination of this Agreement.

8. If any Event of Default exists, Secured Party without notice or demand may do one or more of the following, in any order, and such remedies shall be cumulative (none of which shall be exclusive but each is in addition to any other remedy available to Secured Party): (a) Secured Party may accelerate the maturity of the Obligations and declare same to be at once due and payable whereupon they shall be immediately due and payable; (b) Secured Party may require Debtor to pay all accrued interest, late charges, collection charges, reimbursement for any and all expenses incurred by Secured Party in enforcing any of the Obligations or this Agreement and reasonable attorneys' fees; (c) Secured Party may require Debtor to deliver any or all of the Collateral at Debtor's expense to such place or places as Secured Party may designate; (d) Secured Party may repossess/take possession of any or all of the Collateral wherever found, voluntarily or involuntarily, without notice, demand or legal process (Debtor, if permitted by applicable law, hereby waiving any right to notice or a hearing), and Secured Party may enter the premises where any or all Collateral are located and disconnect, render unusable, and remove any or all Collateral without liability to Debtor arising out of such entry, taking of possession or removal, and may use such premises without charge to store or show the Collateral for sale or other disposition; (e) Secured Party may sell the Collateral by public or private sale, hold, retain the Collateral in full or partial satisfaction of the indebtedness due to Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any claims or rights of Debtor; and/or (f) Secured Party may sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether or not stated herein. Failure or delay on the part of Secured Party to exercise any right or remedy hereunder shall not operate as a waiver thereof. Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are

© COPYRIGHT 2004, 2007 FINANCIAL FEDERAL CREDIT INC.

FFCI SA/SA 1 (11/07)

sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale, plus all costs, expenses and damages incurred by Secured Party including but not limited to all legal fees whether or not suit is filed, allocable costs of in-house counsel, costs related to the repossession, reconditioning and disposition of the Collateral, and all incidental and consequential damages. No action taken by Secured Party shall release Debtor from any of its obligations to Secured Party. Debtor acknowledges and agrees that in any action or proceeding brought by Secured Party to obtain possession of any Collateral, Secured Party shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Debtor and if Debtor contests Secured Party's right to possession of any Collateral in any action or proceeding Debtor shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Debtor's unpaid obligations to Secured Party, whichever is less. The proceeds of any sale shall first be applied to the costs and expenses of Secured Party including but not limited to recovering, transporting, storing, refurbishing, and/or selling the items sold, attorneys' fees, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions. Secured Party may without prior notice to or demand upon Debtor and with or without the exercise of any of Secured Party's other rights or remedies, apply toward the payment of Debtor's obligations (at any time owing to Secured Party) any checks, drafts, notes, balances, reserves, accounts and sums belonging to or owing to Debtor and coming into Secured Party's possession and for such purpose may endorse Debtor's name on any instrument or document payable to Debtor (whether for deposit, collection, discount or negotiation). Without notice to Debtor, Secured Party may make such applications or change applications of sums previously paid and/or to be paid to Secured Party, to such Obligations as Secured Party in its sole discretion may choose. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies.

9. Protest and all demands and notices of any action taken by Secured Party under this Agreement, or in connection with any Collateral, except as otherwise provided in this Agreement, are hereby waived by Debtor, and any indulgence of Secured Party, substitution for, exchange of or release of any person liable on the Obligations is hereby consented to. Debtor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest; waives notice of the amount of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations or any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its sole discretion, without notice to Debtor. In performing any act under this Agreement or any of the Obligations, time shall be of the essence and Secured Party's acceptance of partial or delinquent payments or performance, or failure or delay to exercise any right or remedy, shall not be a waiver of any obligation of Debtor or right of Secured Party nor constitute a waiver of any subsequent default.

10. This Agreement, Secured Party's rights hereunder and/or any of the Obligations may be assigned from time to time by Secured Party, and in any such case the assignee shall be entitled to all of the rights, privileges and remedies herein granted to Secured Party; and Debtor hereby waives and agrees not to assert against any assignee any defense, setoff, claim, recoupment or counterclaim Debtor may have against Secured Party or any prior assignee. Debtor shall not assign this Agreement nor any of Debtor's rights or obligations hereunder.

11. Debtor shall be in default hereunder upon the occurrence of any of the following (each an "Event of Default"): (a) Debtor or any endorser, guarantor, surety, accommodation party or other person liable for the payment or performance of any of the Obligations ("Other Liable Party") fails to pay when due any sum due to Secured Party (whether hereunder or under any other Obligation to Secured Party) or to timely perform any obligation, covenant, term or provision of this Agreement or any other instrument and/or agreement now or hereafter existing between the parties, or there exists any Event of Default thereunder; (b) any warranty, representation or statement made to Secured Party by or on behalf of Debtor or any Other Liable Party is false in any respect when made or thereafter becomes false or is breached; (c) Debtor's or any Other Liable Party's death, dissolution, termination of existence, insolvency, business failure, assignment for the benefit of creditors, bulk transfer, proceeding under any bankruptcy or insolvency law, being declared judicially incompetent, voluntary or involuntary consent to the appointment of a receiver, trustee, conservator, liquidator or legal guardian for them or any or all of their property; (d) a default under any indebtedness of Debtor or any Other Liable Party or any event permitting the holder of any such indebtedness to accelerate the maturity thereof, whether or not such event is cured; (e) the Collateral becomes, in the sole judgment of Secured Party, unsatisfactory or insufficient in character or value; (f) Secured Party in good faith believes that the prospect of payment or performance of any of the Obligations or this Agreement is impaired; (g) any change in the management, operation, ownership or control of Debtor or any Other Liable Party; (h) any attachment, levy or execution against Debtor and/or any Other Liable Party that is not released within 48 hours; (i) Debtor's or any Other Liable Party's affairs so change as to, in Secured Party's sole discretion, increase the credit risk involved and Secured Party thereby becomes insecure as to the performance of this Agreement or any other agreement with Debtor or such Other Liable Party; (j) Debtor shall incur, create, assume, cause or suffer to exist any mortgage, trust, lien, security interest, pledge, hypothecation or other encumbrance (other than Secured Party's interest therein) or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral, this Agreement, or any of Secured Party's interests under this Agreement or any of the Obligations; (k) Debtor shall sell, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral; (l) failure of Debtor to obtain or maintain insurance on the Collateral satisfactory to Secured Party in its sole discretion; or (m) any of the Obligations, this Agreement, the security interest or any provision hereof for any reason attributable to Debtor ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Debtor or Debtor shall deny that it has any further liability or obligation thereunder.

12. The term "Debtor" as used in this Agreement shall be construed as the singular or plural to correspond with the number of persons executing this instrument as Debtor. "Secured Party" and "Debtor" as used in this Agreement include the heirs, executors or administrators, successors, legal representatives, receivers, and assigns of those parties. If more than one person executes this Agreement as Debtor, their obligations under this Agreement shall be joint and several. Unless the context otherwise requires, terms used in this Agreement which are defined in the Uniform Commercial Code are used with the meaning as therein defined. THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. No termination, modification, waiver or amendment of or to this Agreement shall be effective unless in writing signed by Debtor and an officer (assistant vice president or higher) of Secured Party. If any provision of this Agreement is rendered or declared invalid, illegal or ineffective by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision shall only invalidate such provision to the extent so rendered or declared invalid, illegal or ineffective and shall not impair, invalidate or nullify the remainder of this Agreement which shall remain in full force and effect. THE PARTIES INTEND THAT THIS AGREEMENT AND EACH OF ITS TERMS BE VALID AND ENFORCEABLE AS WRITTEN AND, ACCORDINGLY, AGREE THAT THE VALIDITY AND ENFORCEABILITY OF THIS AGREEMENT AND EACH OF ITS TERMS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DEBTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS AGREEMENT WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF SECURED PARTY'S LOCATION AS SET FORTH IN THIS AGREEMENT.

13. Any notice or demand to Debtor hereunder or in connection herewith may be given and shall conclusively be deemed and considered to have been given and received upon the deposit thereof in the U.S. Mail, in writing, duly stamped and addressed to Debtor at the address set forth in this Agreement or at such other address of Debtor as Debtor shall have designated by notice in writing delivered to Secured Party. Actual notice to Debtor, however given or received, shall always be effective. DEBTOR, AS A MATERIAL INDUCEMENT FOR SECURED PARTY TO MAKE LOANS OR OTHER FINANCIAL ACCOMMODATIONS AVAILABLE TO DEBTOR, HEREBY: IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR DEBTOR AND IN DEBTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY DISPUTE WITH SECURED PARTY OR ANY OF SECURED PARTY'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, INCLUDING WITHOUT LIMITATION ANY MATTER RELATING TO OR ARISING UNDER THIS OR ANY OTHER EXISTING OR FUTURE AGREEMENT WITH SECURED PARTY, PROVIDED THAT SECURED PARTY MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION; WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO DEBTOR AT DEBTOR'S ADDRESS AS PROVIDED HEREIN. THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL OF ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, CROSS-CLAIM, DEFENSE OR OFFSET INVOLVING DEBTOR, SECURED PARTY OR ANY OF SECURED PARTY'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, OR ANY PERSON CLAIMING ANY RIGHT OR INTEREST ACQUIRED FROM, THROUGH OR UNDER ANY OF THEM; AND DEBTOR FURTHER HEREBY WAIVES ANY AND ALL SPECIAL, EXEMPLARY, PUNITIVE AND CONSEQUENTIAL DAMAGES IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE ACTS OR OMISSIONS OF SECURED PARTY OR ANY ASSIGNEE.

14. If Secured Party is for any reason compelled to surrender any payment received pursuant to any of the Obligations, because such payment is determined to be void or voidable as a preference, fraudulent transfer, impermissible set off or recoupment, a diversion of trust funds, or for any other reason, then such Obligation(s) shall be reinstated, if necessary and shall continue in full force notwithstanding any contrary action which Secured Party or Debtor may have taken in reliance upon such payment. Any such contrary action so taken shall be without prejudice to Secured Party's rights under the Obligations and hereunder and shall be deemed to have been conditioned upon such payment having become final and irrevocable. The terms of paragraphs 1, 7, 10, 12, 13, 14 and 15 shall survive termination of this Agreement.

15. All agreements between Debtor and Secured Party, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall any interest contracted for, charged or received by Secured Party exceed the maximum amount permissible under applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to Secured Party in excess of the maximum lawful amount, the interest payable to Secured Party shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Secured Party shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of any principal and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of any principal, such excess shall be refunded to Debtor. All interest paid or agreed to be paid to Secured Party shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of any principal (including the period of any renewal or extension) so that the interest for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Debtor and Secured Party.

WITNESS (Attest if a corporation):

_____
                          (Title)

Subscribed and sworn to before me, the undersigned notary public, on the date above written.

_____
              Notary public

DEBTOR: Charles Jeffries & Son Trucking, Inc. _____

BY: _Robert C. Jeffries_____  _Pres_____
Name:                              (Title)

BY: _____
Name:                              (Title)

© COPYRIGHT 2004, 2007 FINANCIAL FEDERAL CREDIT INC.

FFCI SA/SA 1 (11/07)

# SCHEDULE "A"

This schedule is attached to and becomes part of a certain Security Agreement dated October 9, 2008.

| QUANTITY | YEAR | MODEL | DESCRIPTION OF COLLATERAL | SERIAL NUMBER |
|---|---|---|---|---|
| One (1) | 2009 | VS2R | Utility 53` Refrigerated Trailer with an attached Carrier Ultra XTC Refrigeration Unit S/N: KAZ90936129 | 1UYVS25399M761504 |
| One (1) | 2009 | VS2R | Utility 53` Refrigerated Trailer with an attached Carrier Ultra XTC Refrigeration Unit S/N: KAZ90936141 | 1UYVS25309M761505 |

Including all attachments, accessions and accessories to, and all proceeds of, all of the foregoing, including without limitation all insurance proceeds and all rental proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof.

This schedule is hereby verified correct and the undersigned acknowledge receipt of a copy.

Secured Party:  
Financial Federal Credit Inc.

Debtor:  
Charles Jeffries & Son Trucking, Inc.

By: _____  
    Name and Title:

By: _Robert C. Jeffries Pres_  
    Name and Title:

Debtor:

By: _____  
    Name and Title:

Common/ScASpec (11/04)

EXHIBIT H

# PROMISSORY NOTE

| $71,700.00 | Cambridge | IL | November 10, 2008 |
|---|---|---|---|
| (Total of Note) | (City) | (State) | (Date) |

FOR VALUE RECEIVED, Charles Jeffries & Son Trucking, Inc. ("Maker") promises to pay to the order of Financial Federal Credit Inc. ("Holder"), at 4225 Naperville Road Suite 265, Lisle, IL 60532, or such other place as Holder may from time to time designate in writing, the amount of Seventy-One Thousand Seven Hundred Dollars and No Cents ($71,700.00), payable in consecutive monthly installments, as follows:

| 60 | installments, each in the amount of | $ | 1,195.00 | ; then |
|---|---|---|---|---|
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | ; then |
| | installments, each in the amount of | $ | | |

Said consecutive monthly installments shall commence on the 10th day of December, 2008, and continue on January 10, 2009 and on the same day of each month thereafter until the indebtedness evidenced hereby is paid in full. The Total of Note includes precomputed interest (at the "non-default interest rate") from the date hereof on the unpaid principal amount outstanding from time to time through the maturity of each installment (assuming that each installment will be received on its respective due date) (but in no event shall the rate of interest exceed any maximum permitted by applicable law). Maker shall also pay to Holder on demand, on each installment (of principal and/or interest) not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire indebtedness (whether by acceleration or otherwise), Maker shall pay, on demand, interest on the unpaid indebtedness (excluding accrued and unpaid interest and late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full. Unless prohibited by applicable law, during any period of time when Maker is in default under the terms of this Note, Maker shall pay interest on the unpaid principal amount outstanding from time to time at the maximum lawful daily rate, not to exceed 0.0666% per day, in place of the non-default interest rate set forth or implied in this Note, until the default is cured. Interest shall be calculated on the basis of a 360 day year and for the actual number of days elapsed, unless such calculation would cause the effective interest rate to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. Maker agrees to an effective rate of interest which is the rate stated or implied in this Note plus any additional sums or charges provided for herein or incident to the transaction of which this Note forms a part which are or may be deemed to be interest under applicable law, but not more than the maximum amount permissible under applicable law.

Upon nonpayment when due of any amount owing hereunder, or if default occurs under any other obligation of Maker to Holder or under any security agreement, pledge, assignment, deed of trust, or any other instrument or document executed to evidence, secure, guarantee, govern or in any way pertain to the loan evidenced by this Note or any other obligation of Maker to Holder, Holder may, at its option, without notice or demand, accelerate the maturity of the accrued and unpaid indebtedness then outstanding under this Note and declare same to be at once due and payable whereupon it shall be and become immediately due and payable. Maker, all endorsers, guarantors and any other party liable on this Note also promise and agree to pay Holder's costs, expenses and reasonable attorneys' fees incurred in enforcing and/or collecting this Note. Maker, all endorsers, guarantors and any other party liable on this Note waive presentment for payment, demand, protest, notice of protest and notice of nonpayment, default and dishonor, notice of intent to accelerate, notice of acceleration, and further, to the extent allowed by law, waive all benefits of valuation, appraisement and exemption laws. Holder may, without notice, extend the time of payment of this Note, postpone the enforcement hereof, grant any other indulgence, add or release any party primarily or secondarily liable hereon and/or release or change any collateral securing this Note without affecting or diminishing Holder's right of recourse against Maker, all endorsers, guarantors and other parties liable on this Note, which right is hereby expressly reserved. As used in this Note, the term "Holder" includes any future holder of this Note. If more than one party signs this Note as Maker, the obligations of each of them shall be joint and several.

As a material inducement to Holder to advance funds or otherwise provide financial accommodations to or for the benefit of Maker and/or in consideration of Holder having previously done so, Maker agrees that in the event of any prepayment of any of Maker's indebtedness for borrowed money now or hereafter owing to Holder (whether evidenced hereby or otherwise), whether voluntary or involuntary, Maker shall simultaneously pay a prepayment premium equal to the sum of (a) two tenths percent (0.2%) of the principal amount then being prepaid multiplied by the number of calendar months between the date of such prepayment and the scheduled final maturity date of the indebtedness being prepaid, plus (b) three percent (3%) of the principal amount of the indebtedness then being prepaid, but not more than the maximum amount permitted by law. Any partial prepayment shall be applied first to accrued and unpaid late charges, then to any other fees or expenses payable hereunder, then to accrued and unpaid interest, with the remainder applied to reduction of principal; the amount and due date of the remaining scheduled installments shall not be affected, but the number of remaining installments will be reduced as a result of said partial prepayment.

Notwithstanding anything to the contrary in this Note or any related writing, all agreements between Maker and Holder, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall the interest contracted for, charged or received by Holder exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise been earned on the date of such acceleration, and Holder does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstance whatsoever, interest would otherwise be payable to Holder in excess of the maximum lawful amount, the

©COPYRIGHT 2005, 2007 FINANCIAL FEDERAL CREDIT INC. [TEXT CONTINUED ON REVERSE] FFCI SA/PN24 (04/07)

interest payable to Holder shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Holder shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal, such excess shall be refunded to Maker. All interest paid or agreed to be paid to Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Maker and Holder.

The proceeds from the loan evidenced by this Note are to be used for business purposes only, and no part thereof is to be used for primarily consumer, personal, family or household purposes. Maker acknowledges and agrees that Maker's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Maker in favor of Holder, whether now existing or hereafter executed.

THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. THIS NOTE MAY NOT BE CHANGED OR TERMINATED ORALLY.

MAKER _____    MAKER    Charles Jeffries & Son Trucking, Inc.

By: _____        By: _Robert C. Jeffries_____   _Pres._
Name: _____      Title          Name: _____      Title

_____
(Witness for all Makers)

## ENDORSEMENT

The undersigned do each (jointly and severally) unconditionally guarantee the prompt payment of the within Note at maturity or any time thereafter, or on default prior thereto, hereby waiving presentment for payment, demand, protest, notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of every kind and nature, and accepting all of its provisions and authorizing Holder, without notice to any one or more or all of us, to substitute debtors, and/or to grant one or more extensions in whole or in part, and/or to receive security or additional security for the payment hereof and/or to surrender, release or substitute any such security.

If any payment on this Note is not paid when due, then the remaining unpaid indebtedness shall, without notice or demand, become immediately due and payable, at the option of Holder, and may be recovered in any suit brought by the Holder of this Note against any one or more or all of us, at the option of Holder, whether such suit has been commenced against Maker or not, and in any such suit Maker may be joined with one or more or all of us, at the option of Holder.

The Holder of this Note shall not be required to look to any security given or held for the payment of this Note, but may proceed against any one or more or all of us immediately upon a default in payment or otherwise. Any execution may be immediately levied upon any real or personal property of the undersigned, all rights of the undersigned to have personal property last taken and sold under such execution being hereby expressly waived.

_____
(Endorser)

_____
(Endorser)

_____
(Endorser)

©COPYRIGHT 2005, 2007 FINANCIAL FEDERAL CREDIT INC.

# SECURITY AGREEMENT

This Security Agreement dated November 10, 2008 , is executed by Charles Jeffries & Son Trucking, Inc. ("Debtor") whose principal office (or residence) address is 13256 Highway 81 East, Cambridge, 1L, 61238 in favor of Financial Federal Credit Inc. ("Secured Party") whose address is 4225 Naperville Road Suite 265, Lisle, IL, 60532.

1. To secure the payment and performance of all indebtedness, obligations and liabilities of Debtor to Secured Party of whatever kind, whether previously, contemporaneously, or subsequently incurred or created, whether direct or acquired from third parties, whether contingent or fixed, and whether of the same or different classes (including, without limiting the generality of the foregoing, all indebtedness, obligations and liabilities arising out of or relating to (i) advances, payments, loans, endorsements, guaranties, extensions of credit, financial accommodations and/or benefits granted or extended by Secured Party to or for the account of Debtor, (ii) notes, security agreements, lease agreements, rental agreements, installment sale contracts, bailment agreements, guaranties, and/or any other present or future agreements between Debtor and Secured Party, and/or (iii) expenses, charges, commissions and/or interest owing by Debtor to Secured Party or chargeable to Debtor by Secured Party), and all extensions, renewals and/or modifications of the foregoing (collectively, the "Obligations"), Debtor does hereby assign, transfer, pledge and grant to Secured Party a security interest/lien in/upon all property listed on any Schedule to this Agreement (the "Property"), and in all goods, inventory, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessions of and/or to all of the foregoing (collectively, including the Property, the "Collateral"). Debtor and Secured Party acknowledge that Secured Party may (but shall not be obligated to) make future loans or extensions of credit to or guaranteed by Debtor, refinance existing Obligations of or guaranteed by Debtor, or purchase from third parties loans or indebtedness of or guaranteed by Debtor, and Secured Party and Debtor agree that the Collateral shall be security for any and all such indebtedness.

2. Debtor hereby represents and warrants to Secured Party and covenants and agrees with Secured Party as follows: (a) All information supplied and statements made to Secured Party by or on behalf of Debtor relating to the Obligations or the Collateral are and shall be true, complete and accurate, whether supplied or made prior to, contemporaneously with or subsequent to the execution of this Agreement; (b) Debtor has good and marketable title to the Collateral, free and clear of any liens, security interests or encumbrances of any kind or nature whatsoever (except any claimed by Secured Party) and Debtor will warrant and defend the Collateral against all claims; (c) all Collateral listed on any Schedule to this Agreement is in Debtor's possession at the location shown above, unless a different location for a particular item is disclosed (i) on a certificate acknowledging delivery and acceptance thereof or (ii) on such Schedule, and shall at all times remain in Debtor's possession and control; (d) Debtor shall not change (i) its name, (ii) the location of any Collateral, or (iii) the location of (as applicable) Debtor's residence, principal place of business, executive office or the place where Debtor keeps its business records, without thirty (30) days prior written notice to Secured Party; (e) Debtor has full, unrestricted and lawful power and authority to sell and assign the Collateral, to grant Secured Party a security interest/lien therein/thereon as herein provided and to execute and perform this Agreement and all other instruments and agreements executed by Debtor in favor of Secured Party; (f) if an organization, Debtor is: (i) duly formed, organized, validly existing and in good standing in the state of its organization, (ii) duly qualified and in good standing in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) authorized by all requisite action of its stockholders, directors, partners, members and/or managers to execute, deliver, and perform this Agreement; (g) Debtor shall cause Secured Party to have a security interest and lien in/upon the Collateral which at all times shall be duly perfected, enforceable and superior to any liens, encumbrances and interests other than Secured Party's, and Debtor shall not permit the Collateral or any portion thereof to be removed from the Continental United States, nor to be or become subject to any lien or encumbrance of any kind or nature whatsoever (except in favor of Secured Party), nor shall Debtor sell, pledge, grant any security interest in, encumber, assign, rent, lease, lend, destroy or otherwise transfer or dispose of, or permit the filing of a financing statement with respect to (except in favor of Secured Party) any Collateral, nor shall Debtor guarantee any obligation of any other person or entity except in favor of Secured Party, without the prior written consent of Secured Party in each instance; (h) Debtor shall comply (to the extent necessary to protect the Collateral and Secured Party's interest therein) with the provisions of all leases, mortgages, deeds of trust or other contracts affecting any premises where any Collateral is or may be located and with any rules, laws, orders, ordinances or statutes of any state, county, municipality or other authority having jurisdiction relating to such premises and/or the conduct of business thereon and/or use thereof; (i) Debtor shall, at Debtor's sole cost and expense, keep and maintain all Collateral in good condition and repair, and shall use and maintain the Collateral in accordance with all applicable manufacturer's specifications and warranties; (j) all Collateral shall at all times remain personalty and shall not become part of any realty to which it may be attached so that Secured Party shall have the unrestricted right (subject only to the terms of this Agreement) to remove all or any portion thereof from any premises where it may be located, and Debtor will obtain and deliver to Secured Party (in a form acceptable to Secured Party) waivers from all landlords, mortgagees and owners of such premises; (k) Debtor shall (at Debtor's expense) upon request by Secured Party, obtain, execute and deliver all assignments, certificates, financing statements or other documents, give further assurances and do all other acts and things as may be necessary to fully perfect Secured Party's interest in the Collateral and to protect, enforce or otherwise effectuate the terms of this Agreement; and (l) Secured Party has no obligation to lend or advance funds unless and until all representations, warranties, conditions and requirements contained herein have been satisfied including without limitation receipt by Secured Party of proof of ownership of the Collateral satisfactory to Secured Party in its sole discretion, and any applicable subordinations and/or lien releases as may be required by, and in a form acceptable to, Secured Party in its sole discretion. Debtor hereby irrevocably designates and appoints Secured Party as Debtor's agent and attorney-in-fact to sign and deliver all such assignments, certificates, financing statements and other documents necessary to perfect, protect, continue and/or enforce Secured Party's interest in the Collateral and to file same with the appropriate office(s). Debtor hereby authorizes Secured Party to file one or more financing statements in all appropriate locations.

3. Debtor hereby acknowledges the validity of and affirms all of the Obligations, agrees that they are and shall be secured by this Agreement and absolutely and unconditionally promises and agrees to punctually and fully pay and perform all Obligations. Debtor shall pay to Secured Party on demand, on any installment of the Obligations not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire unpaid indebtedness (whether by acceleration or otherwise) of any one or more of the Obligations, Debtor shall pay, on demand, interest on such matured indebtedness (excluding unpaid late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full.

4. Debtor shall insure the Collateral against all risks of loss or damage from every cause (including without limitation fire, theft, vandalism, accident, flood, earthquake and extended coverage) for not less than the full replacement value as determined by Secured Party in its sole discretion, and shall carry liability and property damage insurance covering the Collateral. All insurance shall be in form and amount and with licensed, solvent companies approved by Secured Party, and shall name Secured Party as sole loss payee. Debtor shall pay the premiums therefor and deliver said policies or duplicates to Secured Party. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Secured Party to give Secured Party 30 days prior written notice before the policy shall be modified or canceled and that Secured Party's coverage shall not be diminished or invalidated by any negligence, act or omission of Debtor. The proceeds of such insurance, at the option of Secured Party, shall be applied toward the replacement or repair of the Collateral or toward payment of the Obligations. Debtor hereby irrevocably appoints Secured Party as its attorney-in-fact and agent to make claim for, adjust, compromise, settle, receive payment of, and to sign all documents, checks and/or drafts in payment of or relating to any claim for loss of or damage to the Collateral and for any returned premiums. If any required insurance expires, is canceled or modified, or is otherwise not in full force and effect, Secured Party may but need not obtain replacement insurance. Secured Party may but need not pay the premiums for insurance and/or replacement insurance and the amount of all premiums so paid by Secured Party shall be added to Debtor's obligations hereunder and shall be reimbursed to Secured Party on demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law) from the date paid by Secured Party until fully reimbursed by Debtor.

5. Secured Party shall have the right, at any reasonable time, to inspect all or any portion of the Collateral and/or Debtor's books and records. Debtor shall assist Secured Party in making any such inspection and Debtor shall reimburse Secured Party for its costs and expenses of making up to four such inspections per year. Upon request, Debtor shall, from time to time, furnish a current financial statement to Secured Party in form and content satisfactory to Secured Party, and shall provide annual certified financial statements within five (5) days of Secured Party's request therefor.

6. If Debtor shall fail to fully and timely pay, perform and fulfill any of its Obligations, covenants or agreements to or with Secured Party and/or if Debtor shall breach any of its warranties to Secured Party under this Agreement or otherwise, Secured Party shall have the option, in its sole discretion and without any obligation, to pay, perform, fulfill or cause the payment, performance or fulfillment of same on behalf of Debtor; and all costs and expenses incurred by Secured Party in connection therewith (including but not limited to attorneys' fees, bond premiums, court costs, costs of retaking, storing, preserving, selling and/or realizing on any Collateral) shall be added to the Obligations hereby secured and shall be payable by Debtor to Secured Party upon demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law), from the date advanced by Secured Party until fully repaid. Secured Party shall have no obligation to make any demand upon or give any notice to Debtor prior to the exercise of any of its rights under this paragraph; and neither the exercise nor the failure to exercise any such rights by Secured Party shall relieve Debtor of any default or constitute a waiver of Secured Party's right to enforce strict compliance with the terms of this Agreement at any time.

7. Debtor assumes all liability and risk of loss and agrees to defend, indemnify and hold Secured Party harmless from and against all claims, liabilities, causes of action and damages of any kind, including but not limited to injury to or death of any person(s) and for loss, damage or destruction of any property and for any fines, penalties, costs, expenses and charges in any way arising out of or related to the Obligations, this Agreement, the Collateral or its use, possession, storage, maintenance, repair, transportation or operation (including without limitation all costs and expenses of investigation, all attorneys' fees, court costs, arbitration expenses and costs, and all special, consequential, compensatory and punitive damages). Debtor, at its own cost and expense, shall use, operate, maintain, repair, transport and store the Collateral in a safe and careful manner in compliance with all applicable laws, rules and regulations (including without limitation those regulating hazardous substances, the environment and public health or safety), industry standards, insurance requirements and manufacturer's specifications and service bulletins. Debtor also assumes and agrees to indemnify, pay and hold harmless Secured Party and its directors, officers, employees and agents from all expenses, losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees that Secured Party may incur or sustain in obtaining or enforcing payment or performance of any of the Obligations or exercising its rights and remedies under this Agreement or in connection with any action, proceeding or appeal arising out of or related to this Agreement, the Obligations and/or the Collateral, whether brought by Debtor or any third party. The obligations of Debtor under this paragraph shall survive termination of this Agreement.

8. If any Event of Default exists, Secured Party without notice or demand may do one or more of the following, in any order, and such remedies shall be cumulative (none of which shall be exclusive but each is in addition to any other remedy available to Secured Party): (a) Secured Party may accelerate the maturity of the Obligations and declare same to be at once due and payable whereupon they shall be immediately due and payable; (b) Secured Party may require Debtor to pay all accrued interest, late charges, collection charges, reimbursement for any and all expenses incurred by Secured Party in enforcing any of the Obligations or this Agreement and reasonable attorneys' fees; (c) Secured Party may require Debtor to deliver any or all of the Collateral at Debtor's expense to such place or places as Secured Party may designate; (d) Secured Party may repossess/take possession of any or all of the Collateral wherever found, voluntarily or involuntarily, without notice, demand or legal process (Debtor, if permitted by applicable law, hereby waiving any right to notice or a hearing), and Secured Party may enter the premises where any or all Collateral are located and disconnect, render unusable, and remove any or all Collateral without liability to Debtor arising out of such entry, taking of possession or removal, and may use such premises without charge to store or show the Collateral for sale or other disposition; (e) Secured Party may sell the Collateral by public or private sale, hold, retain the Collateral in full or partial satisfaction of the indebtedness due to Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any claims or rights of Debtor; and/or (f) Secured Party may sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether or not stated herein. Failure or delay on the part of Secured Party to exercise any right or remedy hereunder shall not operate as a waiver thereof. Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are

sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale, plus all costs, expenses and damages incurred by Secured Party including but not limited to all legal fees whether or not suit is filed, allocable costs of in-house counsel, costs related to the repossession, reconditioning and disposition of the Collateral, and all incidental and consequential damages. No action taken by Secured Party shall release Debtor from any of its obligations to Secured Party. Debtor acknowledges and agrees that in any action or proceeding brought by Secured Party to obtain possession of any Collateral, Secured Party shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Debtor and if Debtor contests Secured Party's right to possession of any Collateral in any action or proceeding Debtor shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Debtor's unpaid obligations to Secured Party, whichever is less. The proceeds of any sale shall first be applied to the costs and expenses of Secured Party including but not limited to recovering, transporting, storing, refurbishing, and/or selling the items sold, attorneys' fees, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions. Secured Party may without prior notice to or demand upon Debtor and with or without the exercise of any of Secured Party's other rights or remedies, apply toward the payment of Debtor's obligations (at any time owing to Secured Party) any checks, drafts, notes, balances, reserves, accounts and sums belonging to or owing to Debtor and coming into Secured Party's possession and for such purpose may endorse Debtor's name on any instrument or document payable to Debtor (whether for deposit, collection, discount or negotiation). Without notice to Debtor, Secured Party may make such applications or change applications of sums previously paid and/or to be paid to Secured Party, to such Obligations as Secured Party in its sole discretion may choose. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies.

9. Protest and all demands and notices of any action taken by Secured Party under this Agreement, or in connection with any Collateral, except as otherwise provided in this Agreement, are hereby waived by Debtor, and any indulgence of Secured Party, substitution for, exchange of or release of any person liable on the Obligations is hereby consented to. Debtor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest; waives notice of the amount of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations or any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its sole discretion, without notice to Debtor. In performing any act under this Agreement or any of the Obligations, time shall be of the essence and Secured Party's acceptance of partial or delinquent payments or performance, or failure or delay to exercise any right or remedy, shall not be a waiver of any obligation of Debtor or right of Secured Party nor constitute a waiver of any subsequent default.

10. This Agreement, Secured Party's rights hereunder and/or any of the Obligations may be assigned from time to time by Secured Party, and in any such case the assignee shall be entitled to all of the rights, privileges and remedies herein granted to Secured Party; and Debtor hereby waives and agrees not to assert against any assignee any defense, setoff, claim, recoupment or counterclaim Debtor may have against Secured Party or any prior assignee. Debtor shall not assign this Agreement nor any of Debtor's rights or obligations hereunder.

11. Debtor shall be in default hereunder upon the occurrence of any of the following (each an "Event of Default"): (a) Debtor or any endorser, guarantor, surety, accommodation party or other person liable for the payment or performance of any of the Obligations ("Other Liable Party") fails to pay when due any sum due to Secured Party (whether hereunder or under any other Obligation to Secured Party) or to timely perform any obligation, covenant, term or provision of this Agreement or any other instrument and/or agreement now or hereafter existing between the parties, or there exists any Event of Default thereunder; (b) any warranty, representation or statement made to Secured Party by or on behalf of Debtor or any Other Liable Party is false in any respect when made or thereafter becomes false or is breached; (c) Debtor's or any Other Liable Party's death, dissolution, termination of existence, insolvency, business failure, assignment for the benefit of creditors, bulk transfer, proceeding under any bankruptcy or insolvency law, being declared judicially incompetent, voluntary or involuntary consent to the appointment of a receiver, trustee, conservator, liquidator or legal guardian for them or any or all of their property; (d) a default under any indebtedness of Debtor or any Other Liable Party or any event permitting the holder of any such indebtedness to accelerate the maturity thereof, whether or not such event is cured; (e) the Collateral becomes, in the sole judgment of Secured Party, unsatisfactory or insufficient in character or value; (f) Secured Party in good faith believes that the prospect of payment or performance of any of the Obligations or this Agreement is impaired; (g) any change in the management, operation, ownership or control of Debtor or any Other Liable Party; (h) any attachment, levy or execution against Debtor and/or any Other Liable Party that is not released within 48 hours; (i) Debtor's or any Other Liable Party's affairs so change as to, in Secured Party's sole discretion, increase the credit risk involved and Secured Party thereby becomes insecure as to the performance of this Agreement or any other agreement with Debtor or such Other Liable Party; (j) Debtor shall incur, create, assume, cause or suffer to exist any mortgage, trust, lien, security interest, pledge, hypothecation or other encumbrance (other than Secured Party's interest therein) or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral, this Agreement, or any of Secured Party's interests under this Agreement or any of the Obligations; (k) Debtor shall sell, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral; (l) failure of Debtor to obtain or maintain insurance on the Collateral satisfactory to Secured Party in its sole discretion; or (m) any of the Obligations, this Agreement, the security interest or any provision hereof for any reason attributable to Debtor ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Debtor or Debtor shall deny that it has any further liability or obligation thereunder.

12. The term "Debtor" as used in this Agreement shall be construed as the singular or plural to correspond with the number of persons executing this instrument as Debtor. "Secured Party" and "Debtor" as used in this Agreement include the heirs, executors or administrators, successors, legal representatives, receivers, and assigns of those parties. If more than one person executes this Agreement as Debtor, their obligations under this Agreement shall be joint and several. Unless the context otherwise requires, terms used in this Agreement which are defined in the Uniform Commercial Code are used with the meaning as therein defined. THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. No termination, modification, waiver or amendment of or to this Agreement shall be effective unless in writing signed by Debtor and an officer (assistant vice president or higher) of Secured Party. If any provision of this Agreement is rendered or declared invalid, illegal or ineffective by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision shall only invalidate such provision to the extent so rendered or declared invalid, illegal or ineffective and shall not impair, invalidate or nullify the remainder of this Agreement which shall remain in full force and effect. THE PARTIES INTEND THAT THIS AGREEMENT AND EACH OF ITS TERMS BE VALID AND ENFORCEABLE AS WRITTEN AND, ACCORDINGLY, AGREE THAT THE VALIDITY AND ENFORCEABILITY OF THIS AGREEMENT AND EACH OF ITS TERMS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DEBTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS AGREEMENT WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF SECURED PARTY'S LOCATION AS SET FORTH IN THIS AGREEMENT.

13. Any notice or demand to Debtor hereunder or in connection herewith may be given and shall conclusively be deemed and considered to have been given and received upon the deposit thereof in the U.S. Mail, in writing, duly stamped and addressed to Debtor at the address set forth in this Agreement or at such other address of Debtor as Debtor shall have designated by notice in writing delivered to Secured Party. Actual notice to Debtor, however given or received, shall always be effective. DEBTOR, AS A MATERIAL INDUCEMENT FOR SECURED PARTY TO MAKE LOANS OR OTHER FINANCIAL ACCOMMODATIONS AVAILABLE TO DEBTOR, HEREBY: IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR DEBTOR AND IN DEBTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY DISPUTE WITH SECURED PARTY OR ANY OF SECURED PARTY'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, INCLUDING WITHOUT LIMITATION ANY MATTER RELATING TO OR ARISING UNDER THIS OR ANY OTHER EXISTING OR FUTURE AGREEMENT WITH SECURED PARTY, PROVIDED THAT SECURED PARTY MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION; WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO DEBTOR AT DEBTOR'S ADDRESS AS PROVIDED HEREIN. THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL OF ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, CROSS-CLAIM, DEFENSE OR OFFSET INVOLVING DEBTOR, SECURED PARTY OR ANY OF SECURED PARTY'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, OR ANY PERSON CLAIMING ANY RIGHT OR INTEREST ACQUIRED FROM, THROUGH OR UNDER ANY OF THEM; AND DEBTOR FURTHER HEREBY WAIVES ANY AND ALL SPECIAL, EXEMPLARY, PUNITIVE AND CONSEQUENTIAL DAMAGES IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE ACTS OR OMISSIONS OF SECURED PARTY OR ANY ASSIGNEE.

14. If Secured Party is for any reason compelled to surrender any payment received pursuant to any of the Obligations, because such payment is determined to be void or voidable as a preference, fraudulent transfer, impermissible set off or recoupment, a diversion of trust funds, or for any other reason, then such Obligation(s) shall be reinstated, if necessary and shall continue in full force notwithstanding any contrary action which Secured Party or Debtor may have taken in reliance upon such payment. Any such contrary action so taken shall be without prejudice to Secured Party's rights under the Obligations and hereunder and shall be deemed to have been conditioned upon such payment having become final and irrevocable. The terms of paragraphs 1, 7, 10, 12, 13, 14 and 15 shall survive termination of this Agreement.

15. All agreements between Debtor and Secured Party, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall any interest contracted for, charged or received by Secured Party exceed the maximum amount permissible under applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to Secured Party in excess of the maximum lawful amount, the interest payable to Secured Party shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Secured Party shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of any principal and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of any principal, such excess shall be refunded to Debtor. All interest paid or agreed to be paid to Secured Party shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of any principal (including the period of any renewal or extension) so that the interest for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Debtor and Secured Party.

WITNESS (Attest if a corporation): _____

_____ (Title)

Subscribed and sworn to before me, the undersigned notary public, on the date above written.

_____
Notary public

DEBTOR: Charles Jeffries & Son Trucking, Inc.

BY: _Robert L. Jeffries_____ _Pres_ (Title)
Name:

BY: _Robert Jof RLJ_____ _____ (Title)
Name:

© COPYRIGHT 2004, 2007 FINANCIAL FEDERAL CREDIT INC.

SCHEDULE "A"

This schedule is attached to and becomes part of a certain Security Agreement dated November 10, 2008.

| QUANTITY | YEAR | MODEL | DESCRIPTION OF COLLATERAL | SERIAL NUMBER |
|---|---|---|---|---|
| One (1) | 2009 | VS2R | Utility 53` Refrigerated Trailer with an attached Thermoking SB-310-30 Refrigeration Unit S/N: 6001041830 | 1UYVS25329U780122 |

Including all attachments, accessions and accessories to, and all proceeds of, all of the foregoing, including without limitation all insurance proceeds and all rental proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof.

This schedule is hereby verified correct and the undersigned acknowledge receipt of a copy.

Secured Party :
Financial Federal Credit Inc.

By: _____
   Name and Title:

Debtor :
Charles Jeffries & Son Trucking, Inc.

By: _Robert C. Jeffries (Pres)_____
   Name and Title:

Debtor :

By: _____
   Name and Title:

Common/ScASpec (11/04)

EXHIBIT I

# GUARANTY

**TO  FINANCIAL FEDERAL CREDIT INC**

4225 Naperville Road, Suite 265, Lisle, IL 60532
(Address)

**SUBJECT  Charles Jeffries & Son Trucking, Inc**

As a material inducement to Financial Federal Credit Inc ("FFCI") to provide one or more loans or other financial accommodations to or for the benefit of the above referenced Subject, and/or enter into or accept one or more notes loan agreements security agreements installment sale agreements lease agreements rental agreements guaranties personal property mortgages real property mortgages pledge agreements or other deferred or installment payment agreements and/or other agreements of similar tenor and/or any or all agreements relating to the assignment and/or purchase of any or all of the foregoing with or from Subject (all of the foregoing hereinafter called Obligations ) and/or to induce FFCI to purchase and/or accept one or more assignments of Obligations from Subject, and/or to induce FFCI to purchase or accept assignment(s) from any other person(s) of one or more Obligations having Subject as an obligor thereon and/or in consideration of FFCI having done any of the foregoing the undersigned (whether one or more Guarantor") agrees to be directly and unconditionally liable to FFCI (without reduction by reason of any claim defense, setoff counterclaim or recoupment of Subject or Guarantor) for the due payment and performance of all Obligations and any and all future renewals modifications amendments extensions increases and/or supplements thereof whether previously contemporaneously or subsequently created or incurred and for the due payment and performance of any and all indebtedness and/or obligations of Subject of whatever kind or character, whether direct or indirect, whether contingent or absolute whether matured or unmatured and whether now or in the future arising existing incurred contracted or owing to FFCI or acquired by FFCI by one or more assignments transfers or otherwise

Understanding that in reliance upon the following covenants and agreements financial accommodations as set forth above will be provided by FFCI to or for the benefit of Subject, Guarantor hereby covenants and agrees (a) not to assign or transfer any assets to anyone without concurrently receiving the full and fair value thereof and not to guarantee any obligation of any other person or entity except in favor of FFCI without express written consent of FFCI (b) that Guarantor s liability to FFCI hereunder is direct and unconditional and may be enforced against Guarantor without FFCI s prior resort to any other right, remedy or security and shall continue notwithstanding any repossession or other disposition of security regardless of whether same may be an election of remedies against Subject, (c) that Guarantor s liability to FFCI hereunder shall not be released impaired or satisfied for any reason until all Obligations of Subject have been fully and indefeasibly paid and performed with interest; (d) to pay FFCI s reasonable attorneys fees if FFCI refers this Guaranty to an attorney for enforcement (e) that, at FFCI s sole option and without notice any or all of Guarantor s obligations hereunder shall become immediately due and payable in the event that Guarantor or Subject shall become insolvent, make an assignment for the benefit of creditors or become the subject (or any of Guarantor s property becomes the subject) of any petition case or proceeding under any state or federal bankruptcy reorganization or insolvency law and (f) that this is a continuing guaranty which shall remain in full force and effect, regardless of the death or dissolution of Guarantor until full and indefeasible payment and performance of all Obligations and thereafter until FFCI s actual receipt of a written notice of termination of Guarantor s obligations hereunder (any such notice of termination shall be effective only as to transactions arising incurred or created after FFCI s receipt thereof)

Guarantor hereby (g) waives postpones and subordinates the payment and performance of any and all present and future indebtedness and obligations of Subject to Guarantor until all present and future indebtedness and obligations of Subject to FFCI have been fully paid and performed (h) waives any and all notices to which Guarantor may be entitled including without limitation notice of FFCI s acceptance hereof and any and all demands for payment, notices of non payment, notices of intent to accelerate and of acceleration notices of dishonor and protest to Guarantor or to Subject or to any other maker, endorser or other obligor of or on any note(s) document(s) or instrument(s) for which Guarantor may be liable hereunder (i) waives and releases, to the extent permitted by applicable law relief under any and all appraisement, stay or exemption laws or rules then in effect; and (j) waives and postpones any right to subrogation indemnity reimbursement, or recourse to or with respect to any assets or property of Subject or to any security for the Obligations until all of the Obligations have been fully and indefeasibly paid and performed, with interest. Guarantor hereby further waives any and all notice of and consents to any and all arrangements and agreements with Subject and/or any other person(s) including but not limited to arrangements and agreements for payment extension composition arrangement, subordination release or discharge of all or any part of the Obligations the release and/or surrender and/or abandonment of any or all collateral the release or addition of any maker(s) endorser(s) or other guarantor(s) the change substitution or surrender of any or all security or for any compromise or settlement, whether in the form of acceptance of partial payment, return of goods acceptance of distributions in the form of dividends or otherwise and Guarantor agrees that FFCI s doing any or all of the foregoing shall not in any way diminish or impair Guarantor s liability to FFCI hereunder In addition none of the following events shall discharge or impair Guarantor s liability to FFCI hereunder (k) any impairment, modification release or limitation of liability of or stay of lien enforcement proceedings against, Subject, its property or its estate in bankruptcy or any modification discharge or extension of the Obligations resulting from the operation of any present or future provision of the Federal Bankruptcy Code or any other similar federal or state statute or from the decision of any court, (l) FFCI s failure to use diligence in preserving the liability of any person on the Obligations (m) if Subject is not liable because the act of creating all or any part of the Obligations is ultra vires or the officers or persons creating the Obligations acted in excess of their authority or for any reason the Obligations cannot be enforced against Subject, or (n) any payment by Subject to FFCI is set aside or FFCI is required to refund such payment to Subject or any third party because of bankruptcy preference law or otherwise

Guarantor hereby grants FFCI the right to hold any and all sums due to Guarantor and/or any and all property of Guarantor now or hereafter coming into FFCI s possession as security for any end all of Guarantor s obligations to FFCI whether now or hereafter arising incurred or owed and whether arising or owed hereunder or otherwise Guarantor acknowledges and agrees that Guarantor's obligations hereunder shall be secured by any security agreement or pledge executed by Guarantor in favor of FFCI whether now existing or hereafter executed Except in Texas or in any other jurisdiction where same is prohibited by law Guarantor hereby irrevocably appoints and authorizes any attorney at law to appear for and confess judgment against Guarantor for any or all monies due FFCI from Subject, plus costs expenses and attorneys fees without any stay of execution

**AS A MATERIAL PART OF THE CONSIDERATION FOR FFCI ENTERING INTO, PURCHASING AND/OR ACCEPTING AN ASSIGNMENT OF ONE OR MORE OBLIGATIONS FROM SUBJECT OR HAVING SUBJECT AS AN OBLIGOR THEREON, GUARANTOR HEREBY IRREVOCABLY DESIGNATES AND APPOINTS FIRST FEDERAL COMMERCIAL INC., HOUSTON, TEXAS AS ATTORNEY-IN FACT AND AGENT FOR GUARANTOR, AND IN GUARANTOR S NAME, PLACE AND STEAD TO ACCEPT OR WAIVE SERVICE OF ANY PROCESS (AND FOR NO OTHER PURPOSE) WITHIN THE STATE OF TEXAS, FFCI AGREEING TO GIVE WRITTEN NOTICE OF SUCH SERVICE OR WAIVER TO GUARANTOR WITHIN THREE (3) DAYS AFTER SUCH SERVICE WAS EFFECTED OR SUCH WAIVER WAS EXECUTED BY MAILING SUCH WRITTEN NOTICE TO GUARANTOR S ADDRESS AS SET FORTH BELOW BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, AND GUARANTOR DOES HEREBY AGREE TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY MATTER ARISING HEREUNDER. PROVIDED THAT FFCI MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION GUARANTOR HEREBY WAIVES THE RIGHT TO HAVE A JURY TRIAL IN ANY ACTION, CASE OR PROCEEDING BASED ON OR RELATING HERETO**

The guaranty of Guarantor as set forth herein is a guaranty of payment and performance, and not of collection To the extent that any law limiting the amount of interest that may be contracted for charged or received is applicable to the obligations of Guarantor under this Guaranty no provision of this Guaranty shall require the payment or permit the collection of any sum in excess of the maximum lawful amount applicable to Guarantor s obligations under this Guaranty If any sum in excess of the maximum lawful amount applicable to Guarantor s obligations under this Guaranty is provided for herein then the provisions of this paragraph shall govern and Guarantor shall not be obligated to pay any sum in excess of the maximum lawful amount applicable to Guarantor s obligations under this Guaranty All interest paid or agreed to be paid to FFCI shall to the extent permitted by applicable law be amortized prorated allocated and spread throughout the full period until payment in full of the principal of the Obligations (including any period of renewal or extension thereof) so that the interest thereon for such full period shall not exceed the maximum amount permitted by applicable law The intention of Guarantor and FFCI is to comply with all laws applicable to this Guaranty and Guarantor s obligations hereunder

Guarantor acknowledges and warrants that Guarantor derived or expects to derive financial and other advantage and benefit, directly or indirectly from the Obligations and each and every advance thereof and from each and every renewal extension release of collateral or other relinquishment of legal rights made or granted or to be made or granted by FFCI to Subject in an amount not less than the amount guaranteed hereunder In consideration of the foregoing Guarantor assumes and agrees to indemnify pay and hold harmless FFCI its successors assigns affiliates directors, officers employees attorneys and agents from any and all losses costs claims actions causes of action damages of any kind liabilities expenses and attorneys fees arising out of or related to or in connection with any Obligations or this Guaranty The obligations of Guarantor under this indemnification and hold harmless agreement shall survive termination of this Guaranty

**THIS GUARANTY AND ALL DOCUMENTS EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF GUARANTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS GUARANTY WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF FFCI S LOCATION AS SET FORTH IN THIS AGREEMENT,** shall be binding upon the heirs executors administrators successors and assigns of Guarantor and shall inure to the benefit of FFCI s successors and assigns As used herein the words FFCI FFCI s or any variant thereof shall mean and include and this Guaranty shall operate in favor of and be severally enforceable by any addressee named above and/or any person or entity which is or at any time may be the parent, subsidiary or assignee thereof

**THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES** If more than one person executes this Guaranty their obligations hereunder shall be joint and several

DATE  August 27, 2003

GUARANTOR  _Robert C Jeffries_
Robert C Jeffries

Witness/Attest

BY

Address  208 Largo Lane

Cambridge, IL 61238

COPYRIGHT 2002 FINANCIAL FEDERAL CREDIT INC

**Individual Acknowledgement**

State of _____ )
                                    ) ss
County of _____ )

The undersigned a Notary Public duly qualified in and for said County and State does hereby certify that on the _____ day of _____, before me personally appeared _____, to me known and known to me to be the person named and described in and who executed the foregoing Guaranty in his/her own proper handwriting and who being first duly sworn by me stated and acknowledged that he/she has read and understands the foregoing Guaranty and executed same as his/her own free lawful and voluntary act and deed for the purposes and consideration therein expressed to which witness my hand and official seal

_____
Notary Public

My commission expires _____


**Corporate Acknowledgement**

State of _____ )
                                    ) ss
County of _____ )

The undersigned a Notary Public duly qualified in and for said County and State does hereby certify that on the _____ day of _____, before me personally appeared_____, to me known and known to me to be the person named and described in and who executed the foregoing Guaranty in his/her own proper handwriting and who being first duly sworn by me acknowledged himself/herself to be the _____of_____ _____, and who acknowledged to me that (i) he/she is such officer of the aforesaid corporation (ii) he/she was authorized to execute the foregoing Guaranty for and in the name of said corporation and to make this acknowledgement (iii) he/she has read and understands the contents of the foregoing Guaranty (iv) the foregoing Guaranty was executed and delivered on behalf of said corporation by authority of its board of directors (v) he/she executed and delivered the foregoing Guaranty as his/her free lawful and voluntary act and deed and as the free lawful and voluntary act and deed of said corporation for the purposes and consideration therein expressed to which witness my hand and official seal

_____
Notary Public

My commission expires _____

COPYRIGHT 2002 FINANCIAL FEDERAL CREDIT INC                    FFCI SA/Guaranty (4/03)

EXHIBIT J

# GUARANTY

**TO    FINANCIAL FEDERAL CREDIT INC**          4225 Naperville Road, Suite 265, Lisle, IL 60532

(Address)

**SUBJECT  Charles Jeffries & Son Trucking, Inc**

As a material inducement to Financial Federal Credit Inc ("FFCI") to provide one or more loans or other financial accommodations to or for the benefit of the above referenced Subject, and/or enter into or accept one or more notes loan agreements security agreements installment sale agreements lease agreements rental agreements guarantee personal property mortgages real property mortgages pledge agreements or other deferred or installment payment agreements and/or other agreements of similar tenor and/or any or all agreements relating to the assignment and/or purchase of any or all of the foregoing with or from Subject (all of the foregoing hereinafter called Obligations ) and/or to induce FFCI to purchase and/or accept one or more assignments of Obligations from Subject, and/or to induce FFCI to purchase or accept assignment(s) from any other person(s) of one or more Obligations having Subject as an obligor thereon and/or in consideration of FFCI having done any of the foregoing the undersigned (whether one or more  Guarantor ) agrees to be directly and unconditionally liable to FFCI (without reduction by reason of any claim defense setoff counterclaim or recoupment of Subject or Guarantor) for the due payment and performance of all Obligations and any and all future renewals modifications amendments extensions increases and/or supplements thereof whether previously contemporaneously or subsequently created or incurred and for the due payment and performance of any and all indebtedness and/or obligations of Subject of whatever kind or character whether direct or indirect, whether contingent or absolute whether matured or unmatured and whether now or in the future arising, existing incurred contracted or owing to FFCI or acquired by FFCI by one or more assignments, transfers or otherwise

Understanding that in reliance upon the following covenants and agreements financial accommodations as set forth above will be provided by FFCI to or for the benefit of Subject, Guarantor hereby covenants and agrees (a) not to assign or transfer any assets to anyone without concurrently receiving the full and fair value thereof and not to guarantee any obligation of any other person or entity except in favor of FFCI without express written consent of FFCI (b) that Guarantor s liability to FFCI hereunder is direct and unconditional and may be enforced against Guarantor without FFCI s prior resort to any other right, remedy or security and shall continue notwithstanding any repossession or other disposition of security regardless of whether same may be an election of remedies against Subject, (c) that Guarantor s liability to FFCI hereunder shall not be released, impaired or satisfied for any reason until all Obligations of Subject have been fully and indefeasibly paid and performed with interest, (d) to pay FFCI s reasonable attorneys fees if FFCI refers this Guaranty to an attorney for enforcement, (e) that  at FFCI s sole option and without notice  any or all of Guarantor s obligations hereunder shall become immediately due and payable in the event that Guarantor or Subject shall become insolvent, make an assignment for the benefit of creditors  or become the subject (or any of Guarantor s property becomes the subject) of any petition  case or proceeding under any state or federal bankruptcy reorganization or insolvency law  and (f) that this is a continuing guaranty which shall remain in full force and effect, regardless of the death or dissolution of Guarantor  until full and indefeasible payment and performance of all Obligations  and thereafter until FFCI s actual receipt of a written notice of termination of Guarantor s obligations hereunder (any such notice of termination shall be effective only as to transactions arising incurred or created after FFCI s receipt thereof)

Guarantor hereby (g) waives postpones and subordinates the payment and performance of any and all present and future indebtedness and obligations of Subject to Guarantor until all present and future indebtedness and obligations of Subject to FFCI have been fully paid and performed (h) waives any and all notices to which Guarantor may be entitled including without limitation  notice of FFCI s acceptance hereof  and any and all demands for payment, notices of non payment, notices of intent to accelerate and of acceleration notices of dishonor and protest to Guarantor or to Subject or to any other maker  endorser or other obligor of or on any note(s)  document(s) or instrument(s) for which Guarantor may be liable hereunder (i) waives and releases to the extent permitted by applicable law  relief under any and all appraisement, stay or exemption laws or rules then in effect, and (j) waives and postpones any right to subrogation  indemnity  reimbursement, or recourse to or with respect to any assets or property of Subject or to any security for the Obligations  until all of the Obligations have been fully and indefeasibly paid and performed with interest  Guarantor hereby further waives any and all notice of and consents to any and all arrangements and agreements with Subject and/or any other person(s)  including but not limited to arrangements and agreements for payment extension  composition  arrangement, subordination release or discharge of all or any part of the Obligations  the release and/or surrender and/or abandonment of any or all collateral  the release or addition of any maker(s)  endorser(s) or other guarantor(s)  the change  substitution or surrender of any or all security  or for any compromise or settlement, whether in the form of acceptance of partial payment, return of goods  acceptance of distributions in the form of dividends  or otherwise  and Guarantor agrees that FFCI s doing any or all of the foregoing shall not in any way diminish or impair Guarantor s liability to FFCI hereunder  In addition  none of the following events shall discharge or impair Guarantor s liability to FFCI hereunder  (k) any impairment, modification release or limitation of liability of  or stay of lien enforcement proceedings against, Subject, its property  or its estate in bankruptcy or any modification  discharge or extension of the Obligations resulting from the operation of any present or future provision of the Federal Bankruptcy Code or any other similar federal or state statute  or from the decision of any court; (l) FFCI s failure to use diligence in preserving the liability of any person on the Obligations  (m) if  Subject is not liable because the act of creating all or any part of the Obligations is ultra vires or the officers or persons creating the Obligations acted in excess of their authority  or for any reason the Obligations cannot be enforced against Subject  or (n) any payment by Subject to FFCI is set aside or FFCI is required to refund such payment to Subject or any third party because of bankruptcy preference law or otherwise

Guarantor hereby grants FFCI the right to hold any and all sums due to Guarantor and/or any and all property of Guarantor now or hereafter coming into FFCI s possession as security for any and all of Guarantor s obligations to FFCI whether now or hereafter arising incurred or owed  and whether arising or owed hereunder or otherwise  Guarantor acknowledges and agrees that Guarantor's obligations hereunder shall be secured by any security agreement or pledge executed by Guarantor in favor of FFCI  whether now existing or hereafter executed  Except in Texas or in any other jurisdiction where same is prohibited by law  Guarantor hereby irrevocably appoints and authorizes any attorney at law to appear for and confess judgment against Guarantor for any or all monies due FFCI from Subject, plus costs  expenses and attorneys  fees without any stay of execution

**AS A MATERIAL PART OF THE CONSIDERATION FOR FFCI ENTERING INTO, PURCHASING AND/OR ACCEPTING AN ASSIGNMENT OF ONE OR MORE OBLIGATIONS FROM SUBJECT OR HAVING SUBJECT AS AN OBLIGOR THEREON, GUARANTOR HEREBY IRREVOCABLY DESIGNATES AND APPOINTS FIRST FEDERAL COMMERCIAL INC , HOUSTON TEXAS AS ATTORNEY IN-FACT AND AGENT FOR GUARANTOR, AND IN GUARANTOR S NAME, PLACE AND STEAD TO ACCEPT OR WAIVE SERVICE OF ANY PROCESS (AND FOR NO OTHER PURPOSE) WITHIN THE STATE OF TEXAS, FFCI AGREEING TO GIVE WRITTEN NOTICE OF SUCH SERVICE OR WAIVER TO GUARANTOR WITHIN THREE (3) DAYS AFTER SUCH SERVICE WAS EFFECTED OR SUCH WAIVER WAS EXECUTED, BY MAILING SUCH WRITTEN NOTICE TO GUARANTOR S ADDRESS AS SET FORTH BELOW BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, AND GUARANTOR DOES HEREBY AGREE TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY MATTER ARISING HEREUNDER  PROVIDED THAT FFCI MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION  GUARANTOR HEREBY WAIVES THE RIGHT TO HAVE A JURY TRIAL IN ANY ACTION, CASE OR PROCEEDING BASED ON OR RELATING HERETO**

The guaranty of Guarantor as set forth herein is a guaranty of payment and performance  and not of collection  To the extent that any law limiting the amount of interest that may be contracted for  charged or received is applicable to the obligations of Guarantor under this Guaranty  no provision of this Guaranty shall require the payment or permit the collection of any sum in excess of the maximum lawful amount applicable to Guarantor s obligations under this Guaranty  If any sum in excess of the maximum lawful amount applicable to Guarantor s obligations under this Guaranty is provided for herein  then the provisions of this paragraph shall govern  and Guarantor shall not be obligated to pay any sum in excess of the maximum lawful amount applicable to Guarantor s obligations under this Guaranty  All interest paid or agreed to be paid to FFCI shall  to the extent permitted by applicable law  be amortized  prorated  allocated  and spread throughout the full period until payment in full of the principal of the Obligations (including any period of renewal or extension thereof) so that the interest thereon for such full period shall not exceed the maximum amount permitted by applicable law  The intention of Guarantor and FFCI is to comply with all laws applicable to this Guaranty and Guarantor s obligations hereunder

Guarantor acknowledges and warrants that Guarantor derived or expects to derive financial and other advantage and benefit, directly or indirectly  from the Obligations and each and every advance thereof and from each and every renewal  extension  release of collateral or other relinquishment of legal rights made or granted or to be made or granted by FFCI to Subject in an amount not less than the amount guaranteed hereunder  In consideration of the foregoing  Guarantor assumes and agrees to indemnify  pay and hold harmless FFCI  its successors  assigns  affiliates  directors  officers  employees  attorneys and agents from any and all losses  costs  claims  actions, causes of action  damages of any kind  liabilities  expenses and attorneys  fees arising out of or related to or in connection with any Obligations or this Guaranty  The obligations of Guarantor under this indemnification and hold harmless agreement shall survive termination of this Guaranty

**THIS GUARANTY AND ALL DOCUMENTS EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF GUARANTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS GUARANTY WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF FFCI S LOCATION AS SET FORTH IN THIS AGREEMENT,** shall be binding upon the heirs  executors  administrators  successors and assigns of Guarantor and shall inure to the benefit of FFCI s successors and assigns  As used herein the words FFCI  FFCI s  or any variant thereof shall mean and include and this Guaranty shall operate in favor of and be severally enforceable by any addressee named above and/or any person or entity which is o  at any time may be  the parent, subsidiary or assignee thereof

**THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES** If more than one person executes this Guaranty  their obligations hereunder shall be joint and several

DATE ___November 13, 2003___          GUARANTOR _____
                                                    Debra L  Jeffries

Witness/Attest _____          By _____

                                         Address ___208 Larigo Lane___

                                         ___Cambridge, IL  61238___

COPYRIGHT 2002 FINANCIAL FEDERAL CREDIT INC                                   FFCI SA/Guaranty (4/03)

<u>**Individual Acknowledgement**</u>

State of _____ )
                                       ) ss
County of _____ )

The undersigned a Notary Public duly qualified in and for said County and State does hereby certify that on the _____ day of _____ , before me personally appeared _____ to me known and known to me to be the person named and described in and who executed the foregoing Guaranty in his/her own proper handwriting and who being first duly sworn by me stated and acknowledged that he/she has read and understands the foregoing Guaranty and executed same as his/her own free lawful and voluntary act and deed for the purposes and consideration therein expressed to which witness my hand and official seal

_____
Notary Public

My commission expires _____'_____


<u>**Corporate Acknowledgement**</u>

State of _____ )
                                       ) ss
County of _____ )

The undersigned a Notary Public duly qualified in and for said County and State does hereby certify that on the _____ day of _____ , before me personally appeared _____ , to me known and known to me to be the person named and described in and who executed the foregoing Guaranty in his/her own proper handwriting and who being first duly sworn by me acknowledged himself/herself to be the _____ of _____ _____, and who acknowledged to me that (i) he/she is such officer of the aforesaid corporation (ii) he/she was authorized to execute the foregoing Guaranty for and in the name of said corporation and to make this acknowledgement, (iii) he/she has read and understands the contents of the foregoing Guaranty (iv) the foregoing Guaranty was executed and delivered on behalf of said corporation by authority of its board of directors (v) he/she executed and delivered the foregoing Guaranty as his/her free lawful and voluntary act and deed and as the free lawful and voluntary act and deed of said corporation for the purposes and consideration therein expressed to which witness my hand and official seal

_____
Notary Public

My commission expires _____

COPYRIGHT 2002 FINANCIAL FEDERAL CREDIT INC